Jeremy E. Deutsch
Ryan E. Mick (*admitted pro hoc*)
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019
(212) 415-9200

Attorneys for Defendant Julie Layton

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------- X

MARSH USA LLC

    Plaintiff,

v.

MICHAEL PARRISH ET AL.,

    Defendant.

Civ. No. 25-cv-6208

------------------------------------------------------------------------------- X

**DEFENDANT JULIE LAYTON'S MEMORANDUM IN OPPOSITION TO THE APPLICATION FOR INJUNCTIVE RELIEF AND EXPEDITED DISCOVERY**

# TABLE OF CONTENTS

Page

INTRODUCTION ..............................................................................................................................1

PRELIMINARY STATEMENT .......................................................................................................1

LEGAL STANDARD........................................................................................................................4

ARGUMENT.....................................................................................................................................4

    POINT I: MARSH CANNOT DEMONSTRATE IRREPARABLE INJURY ....................4

    POINT II: MARSH CANNOT DEMONSTRATE A LIKELIHOOD OF
        SUCCESS ON THE MERITS ................................................................................7

    POINT III: THE BALANCE OF THE EQUITIES TIPS IN LAYTON'S FAVOR .........10

    POINT IV: AN INJUNCTION WOULD BE FUTILE .....................................................10

CONCLUSION................................................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.X.M.S. Corp. v. Friedman*,
   948 F. Supp. 2d 319 (S.D.N.Y. 2013)......................................................................................6

*AVCO Fin. Corp. v. Commodity Futures Trading Comm'n*,
   929 F. Supp. 714 (S.D.N.Y. 1996) .........................................................................................10

*Bakemark USA LLC v. Negron*,
   2024 U.S. Dist. LEXIS 45586 (S.D.N.Y. Jan. 12, 2024)..........................................................7

*Baldwin Tech. Co. v. Printers' Serv.*,
   2016 U.S. Dist. LEXIS 10086 (S.D.N.Y. Jan. 27, 2016)..........................................................8

*Berni v. Barilla S.P.A.*,
   964 F.3d 141 (2d Cir. 2020).....................................................................................................6

*Canteen Vending Servs. v. Mfrs. & Traders Tr. Co.*,
   1998 WL 268858 (W.D.N.Y. May 18, 1998).........................................................................10

*Coscarelli v. ESquared Hosp. LLC*,
   364 F. Supp. 3d 207 (S.D.N.Y. 2019)......................................................................................6

*Dexter 345 Inc. v. Cuomo*,
   663 F.3d 59 (2d Cir. 2011).......................................................................................................7

*Dunham v. City of New York*,
   2013 WL 923236 (S.D.N.Y. Feb. 23, 2013), *adopted* 2013 WL 929029
   (S.D.N.Y. Mar. 11, 2013) .......................................................................................................10

*Elpac Ltd., v. Keenpac N. Am. Ltd.*,
   186 A.D.2d 893 (3d Dep't 1992) ...........................................................................................11

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
   559 F.3d 110 (2d Cir. 2009).....................................................................................................5

*Free Country Ltd. v. Drennen*,
   235 F. Supp. 3d 559 (S.D.N.Y. 2016)....................................................................................10

*Freedom Holdings, Inc. v. Spitzer*,
   408 F.3d 112 (2d Cir. 2005).....................................................................................................5

*Iron Mountain Info. Mgmt., Inc. v. Taddeo*,
   455 F. Supp. 2d 124 (E.D.N.Y. 2006) ...................................................................................11

*JBR, Inc. v. Keurig Green Mt., Inc.*,
   618 F. App'x 31 (2d Cir. 2015)..................................................................................................5

*JTH Tax, LLC v. Agnant*,
   62 F.4th 658 (2d Cir. 2023) ......................................................................................................4

*Kamerling v. Massanari*,
   295 F.3d 206 (2d Cir. 2002).....................................................................................................5

*McDerman v. Does*,
   2025 WL 2051622 (S.D.N.Y. July 22, 2025) .........................................................................11

*Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*,
   392 F.3d 520 (2d Cir. 2004).....................................................................................................9

*New York v. Griepp*,
   11 F.4th 174 (2d Cir. 2021) ......................................................................................................4

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010).......................................................................................................5

*Smith v. City of New York*,
   754 F. Supp. 3d 581 (S.D.N.Y. 2024).....................................................................................10

*Sterling v. Deutsche Bank Nat'l Trust Co.*,
   368 F.Supp.3d 723 (S.D.N.Y. 2019)........................................................................................4

*UGX Brands, LLC v. City of Norfolk*,
   2025 U.S. Dist. LEXIS 141580 (S.D.N.Y. July 24, 2025) ......................................................5

*Yu v. X Vision Tech. Ltd.*,
   2023 WL 6785822 (S.D.N.Y. Oct. 13, 2023) ..........................................................................6

## INTRODUCTION

Defendant Julie Layton ("Layton") respectfully submits this memorandum of law in opposition to the motion for a temporary restraining order, preliminary injunction, and request for expedited discovery (the "Motion") filed by Plaintiff Marsh USA LLC ("Marsh"). *See* Dkt Nos. 14-29.[1] Layton joins the legal arguments set forth in the opposition to the Motion filed by co-defendants Michael Parrish, Giselle Lugones and Robert Lynn, but her alleged contractual obligations are different than the other defendants, which makes Marsh's motion even more feeble as to her. Layton, a former employee at-will with *no non-compete obligation* and *no notice period*, merely has a non-solicit agreement which she is not violating (Layton Dec. at 2, 5, 6). Marsh fails to demonstrate that Layton engaged in any prior wrongdoing, and *does not even allege* that Layton is engaged in any *continuing* acts of wrongdoing from which she should be restrained. There is no evidence of any damages, much less irreparable injury. Thus, Marsh fails to meet its burden on its extraordinary request for preliminary injunctive relief. The Motion should be denied.

## PRELIMINARY STATEMENT

Layton is a former Marsh employee who resigned her employment with Marsh to accept a position with Howden (Layton Dec. at 2). In connection with her resignation from Marsh, Layton returned all of her Marsh devices, took no Marsh confidential information or trade secrets with her, and has not solicited any of her former clients, even though those client relationships predate her employment at Marsh (Layton Dec. at 4, 5, 27, 29-36).

---

[1] Layton also submits, concurrently with this memorandum, her Declaration in Opposition. References herein to "Layton Dec. at __" are references to the Declaration of Julie Layton, dated August 19, 2025, with Exhibits.

Prior to her employment at Marsh, Layton was a senior executive with Aon (Layton Dec. at 6). Aon sued Marsh in connection with Layton's restrictive covenants and Layton and Marsh were defended in that action by Gibson Dunn (Layton Dec. at 7). Gibson Dunn provided her with legal advice regarding compliance with her purported non-solicitation obligations to Aon, and Layton has attempted, to the best of her abilities, to comply with her analogous contractual obligations to Marsh (Layton Dec. at 9).

The Motion, supported as to Layton solely by reference to four paragraphs in the Declaration of Ryan Gonzalez ("Gonzalez Declaration") (Dkt No. 19), fails to show that Layton has actually done anything wrong. *There is not even an allegation* that Layton is currently engaged in, or plans to be engaged in, any identifiable conduct that violates any applicable restrictive covenant, much less wrongdoing that must be restrained in order to preserve or restore the status quo ante. Simply put, Marsh fails to even attempt to prove that Layton is causing harm of any kind to Marsh, much less harm constituting irreparable injury that justifies emergency relief.

There are no allegations that Layton has misappropriated Marsh's confidential business information. She has none, and Plaintiff does not contend otherwise. Marsh's only allegation related to confidential information is that prior to her resignation, Layton caused her direct reports to set up a Marsh Sharepoint site to house client information. (Gonzalez Dec. at 3-5; Memo Law at 10-11 (Dkt No. 15). There is no evidence offered to show that Layton ever accessed that information, downloaded it, transmitted it out of Marsh, or somehow misappropriated it, and, crucially, there is no evidence to show that Layton is *actually* using the information *currently* in any way. The evidence offered in response by Layton is unequivocal: the Marsh Sharepoint site was set up for Marsh purposes; Layton visited that site only one time after she asked that the client folders be set up on the site; no client materials of any kind had been uploaded to the site at the

time she visited it; and she never downloaded or took any materials from the site at any time (Layton Dec. at 5, 24-29). Marsh merely speculates, without reference to any declaration from any fact witness, that: "[H]er unprecedented request—sent after she was *likely* solicited by Parrish to join Howden—*suggests* she was preparing to solicit Marsh's clients to Howden." (Memo Law at 10, emphasis supplied). Layton categorically denies these assertions (Layton Dec. at 5, 24-29). Marsh's unsupported speculation will be contradicted by Marsh's own records, and, Marsh knows this because it has and maintains access and activity logs for the Sharepoint (Layton Dec. at 24-29). Marsh's unsupported speculation to the contrary does not warrant extraordinary relief.

With respect to alleged solicitation of employees, Marsh merely alleges that Layton offered one Marsh employee, Ryan Gonzalez, a position with Howden, a position that Gonzalez declined to accept (Gonzalez Dec. at 6). Layton disputes Gonzalez's mischaracterization of their single, brief telephone call. (Layton Dec. at 15-19). Regardless, Marsh offers no allegation, much less evidence, that Layton is currently soliciting any Marsh employees to resign from Marsh. Layton has assured the Court, under oath, that she is not doing so and does not plan to do so. (Layton Dec. at 14).

Marsh does not even allege that Layton has solicited any former clients. The record, with respect to Layton and Marsh's customers, is silent. Marsh's brief sheds no light on this, not even asserting that Layton has any connection to the eight unnamed clients Marsh contends have departed. (Memo Law at 10-11). Layton, on the other hand, unequivocally denies soliciting Marsh clients, or even any prior personal clients, or intending to do so during the period of her purported non-solicitation obligation. (Layton Dec. at 30-35).

Likewise, Marsh fails to even attempt to prove that Layton is causing irreparable injury. Layton has no non-competition obligation and no notice period obligation (Layton Dec. at 6).

Marsh does not contend that she should be prohibited from working for Howden. Given that there is no evidence that Layton is currently violating any of her confidentiality or non-solicitation obligations, much less evidence of irreparable harm to Marsh, there is nothing for this Court to enjoin and the Motion should be denied.

## LEGAL STANDARD

The legal standard for grant of a preliminary injunction is well-understood:

> "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. at 20.

*JTH Tax, LLC v. Agnant*, 62 F.4th 658, 666-67 (2d Cir. 2023).

> "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139–40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) ) (alteration in original).

*Sterling v. Deutsche Bank Nat'l Trust Co.*, 368 F.Supp.3d 723, 727 (S.D.N.Y. 2019) (denying motion for temporary restraining order and holding that the legal standards for grant of a temporary restraining order and a preliminary injunction are identical).

Marsh cannot meet this standard.

## ARGUMENT

### POINT I:  MARSH CANNOT DEMONSTRATE IRREPARABLE INJURY

> "It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." 11A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2948 (3d ed. 2021) (footnotes omitted); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997).

*New York v. Griepp*, 11 F.4th 174, 177 (2d Cir. 2021)

"Irreparable harm, however, is the 'sine qua non for preliminary injunctive relief.' *USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1295 (2d Cir. 1995). As such, the moving party must first demonstrate that irreparable harm would be 'likely' in the absence of a preliminary injunction 'before the other requirements for the issuance of [a preliminary] injunction will be considered.' *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1998)." *JBR, Inc. v. Keurig Green Mt., Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015). *See also Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (cleaned up) ("[t]he showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered."); *accord Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).

"To satisfy the irreparable harm requirement, plaintiffs must demonstrate that absent a preliminary injunction, they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005).

Marsh utterly fails to satisfy its burden on its motion. As described in the next section, there is no material evidence of *any* wrongdoing by Layton, *but there is not even an allegation* of any ongoing wrongdoing by Layton. *See UGX Brands, LLC v. City of Norfolk*, 2025 U.S. Dist. LEXIS 141580, at *5-6 (S.D.N.Y. July 24, 2025) ("Plaintiffs cannot, relying on these conclusory statements alone, establish irreparable harm from the lack of a preliminary injunction."); *see also Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010) ("[C]ourts must not simply presume irreparable harm. Rather, plaintiffs must show that, on the facts of their case, the failure to issue an injunction would actually cause irreparable harm.").

There is no basis to conclude that anything Layton has done or is doing is a violation of any contractual obligation to Marsh, much less that it is causing irreparable harm to Marsh. The few actions by Layton alleged by Marsh have occurred in the past and are complete (*i.e.*, a single telephone call to Gonzalez, and directing that folders on a Sharepoint site be created prior to her resignation). There is no evidence that Layton is currently violating her confidentiality or non-solicitation obligations, or that she plans to do so. To the contrary, Layton has assured the Court, under oath, that she is complying with her contractual obligations, and plans to continue to do so (Layton Dec. at 4, 5, 9, 14, 27, 29, 31, and 35-36). Marsh's witnesses are silent as to how restraining Layton will prevent actual and imminent harm to Marsh.

This dooms the Motion.[2] There is no evidence of a substantial risk of irreparable injury happening in the future and the inquiry ends there. *See*, *e.g.*, *Berni v. Barilla S.P.A.*, 964 F.3d 141, 149 (2d Cir. 2020) ("Where there is no likelihood of future harm, there is no standing to seek an injunction"); *Yu v. X Vision Tech. Ltd.*, 2023 WL 6785822, at *3 (S.D.N.Y. Oct. 13, 2023) (denying TRO application, finding failure to meet burden on showing irreparable harm stops the District Court's inquiry); *Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 221 (S.D.N.Y. 2019) ("[I]f a party fails to show irreparable harm, a court need not [ ] address the remaining elements.").

---

[2] Moreover, Marsh's complaint alleges that it is entitled to liquidated damages for a breach of the non-solicitation agreement. If Marsh truly was injured by Layton allegedly making a job offer to Ryan Gonzalez – which he rejected – then Marsh can assign a dollar value to this breach. (*See* Complaint at 79 and 140; Prayer for Relief at k and l). As described more fulling in the Parrish et al. brief, if Marsh can be compensated by payment of money, then its injury is clearly not irreparable. *See A.X.M.S. Corp. v. Friedman*, 948 F. Supp. 2d 319, 331–32 (S.D.N.Y. 2013) ("Moreover, the injury alleged to be irreparable must in fact be that-it must be actual and imminent, not merely possible, and if the harm can be remedied in money damages, that is the antithesis of irreparable harm, and such a fact requires that the Court not find an irreparable injury") (internation quotation and citation omitted).

Even in the event that Layton was violating her non-solicitation obligations with respect to customers or clients, and she is not (Layton Dec. at 35-36), that would not be sufficient to demonstrate irreparable injury to Marsh. *See Bakemark USA LLC v. Negron*, 2024 U.S. Dist. LEXIS 45586, at *61 (S.D.N.Y. Jan. 12, 2024) ("Moreover, as to each Restricted Customer that defected to Bakers Depot, BakeMark possesses the records showing that customer's sales history both before and after the Sidco acquisition, dating back to 2018. . . .BakeMark is thus in a relatively good position to quantify its losses resulting from Brian's breach of his non-compete and non-solicit covenants."); *see also Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) (affirming denial of preliminary injunction where "[t]he long history of operation by both Appellants ensures that they will be able to calculate money damages for any loss of goodwill they may have suffered.").

**POINT II:  MARSH CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS**

Not only has Marsh failed to allege (much less offer evidence of) an irreparable injury, but Marsh also cannot demonstrate a likelihood of success on the merits on its claims against Layton, who has stated under oath that she is not in breach of her obligations and intends to comply with them (Layton Dec. at 4, 5, 9, 14, 27, 29, 31, and 35-36).  Layton joins the Parrish et al. argument that Marsh's non-solicitation provisions are unenforceable on the facts of this case, but for business reasons unrelated to the validity of her non-solicitation obligations, she has and will comply with them.

For the most part, the declarations offered by Marsh in support of the Motion neglect to mention Layton in any meaningful way and, when looked at with Layton as the focus, are bereft of proof with respect to her.  To wit:

| Declaration | Paragraph #'s Referencing Layton | Comment |
|---|---|---|
| Abboud (Dkt No. 17) | 3 | Merely states that he worked with Layton, otherwise silent |
| Maffai (Dkt No. 25) | NONE | Silent |
| McClellan (Dkt No. 27) | 5 | Merely states that Layton worked in Florida office |
| Minton (Dkt No. 28) | NONE | Silent |
| Schnabolk (Dkt No. 29) | 4, 7, 15, and 16 | Merely states that Layton worked for Marsh and that "[m]ost of [her] direct reports" resigned from Marsh |
| Dahan-Roxin (Dkt No. 18) | NONE | Silent |
| Lynn (Dkt No. 24) | NONE | Silent |
| Martino (Dkt No. 26) | NONE | Silent |

Only the Gonzalez Declaration (Dkt No. 19) discusses Layton, but even that fails to allege any actual misconduct. He merely states:

– He reported to Layton (paragraph 2);

– On June 26, 2025, a month prior to resigning from Marsh, Layton directed ten Marsh employees to upload to an internal Marsh Sharepoint drive certain confidential information regarding unnamed Marsh clients (paragraphs 3 and 4);

– The directive to upload this information was unusual and not in keeping with Layton's management style (paragraph 5);

– On July 18, Layton offered Gonzalez a job at Howden (paragraph 6); and,

– Layton called Gonzalez on July 19, but they did not speak (paragraph 10).

That is the sum total of the "evidence" offered by Marsh with respect to Layton and is totally refuted by Layton (Layton Dec. at 15-29). It is palpably insufficient. *See Baldwin Tech. Co. v. Printers' Serv.*, 2016 U.S. Dist. LEXIS 10086, at *10 (S.D.N.Y. Jan. 27, 2016) ("'In non-compete cases, such as this one, the irreparable harm analysis and the likelihood of success on the merits analysis are closely related and often conflated.' *IBM Corp. v. Visentin*, No. 11 Civ. 00399, 2011

U.S. Dist. LEXIS 15342, 2011 WL 672025, at *7 (S.D.N.Y. Feb. 16, 2011) (quoting *IBM Corp. v. Papermaster*, No. 08 Civ. 09078, 2008 U.S. Dist. LEXIS 95516, 2008 WL 4974508, at *6 (S.D.N.Y. Nov. 21, 2008)), aff'd, 437 F. App'x 53.").

It is striking to note what is absent from the Gonzalez Declaration. There is no evidence or allegation that Layton took any of the Sharepoint information. (*See* Complaint at 113-14, Dkt No. 1). No witness even suggests that this information has left Marsh's care, custody, and exclusive control, much less that it has been taken or used by Layton, and Marsh has complete access to information regarding use of its Sharepoint site. There isn't even an allegation that the Sharepoint site folders were actually ever populated with information of any kind.

Likewise, there is no evidence that Layton solicited any of the clients with which she worked at Marsh. Neither Gonzalez nor any other witness asserts that she has done so. Layton has unequivocally represented that she has not solicited any of the clients she worked with at Marsh, and that she does not intend to do so for the duration of her restrictive covenant obligation, and explained why (Layton Dec. at 30-36).

Ultimately, the best argument that Marsh could muster as to any prior wrongdoing is that Layton offered one employee—Gonzalez—a job at her new employer. Layton denies this. (Layton Dec. at 13-19). Regardless, Gonzalez testified that he declined the offer, precluding proof of damages. Damages are an essential element of a claim of breach of contract. Therefore, there can be no likelihood that Marsh will prevail. *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 525 (2d Cir. 2004) ("To establish a prima facie case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach.").

### POINT III:  THE BALANCE OF THE EQUITIES TIPS IN LAYTON'S FAVOR

The equities tip in favor of Layton.  There is no showing that she possesses or is using confidential Marsh business information to solicit her former clients.  She states unequivocally that she neither has confidential Marsh information nor is she soliciting clients or employees (Layton Dec. at 29, 31, 35-36).  The balance of the equities, where Marsh is attempting to restrain her future employment, tips in favor of Ms. Layton with implications for her current and future employment and personal welfare.  *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 568 (S.D.N.Y. 2016) ("As for the balance of the equities, there is no dispute that a temporary restraining order prohibiting Vander Wyden from selling to Free Country's customers for the fall 2017 season would effectively mean that Vander Wyden could not work for his new employer.  This has implications not only for Vander Wyden's personal welfare, but future employment prospects as well.") (internal citation omitted).

### POINT IV:  AN INJUNCTION WOULD BE FUTILE

"A temporary restraining order can only be granted against harm that will occur in the future; it is an order directed against action that is threatened to occur and serves to prevent the action.  A temporary restraining order cannot provide a remedy for an alleged wrong that has already occurred.  Because plaintiff alleges only that he was injured by past conduct and does not allege that he is threatened by any future conduct, there is no basis for the issuance of temporary restraining order." *Dunham v. City of New York*, 2013 WL 923236, at *1 (S.D.N.Y. Feb. 23, 2013), *adopted*, 2013 WL 929029 (S.D.N.Y. Mar. 11, 2013); *see also Smith v. City of New York*, 754 F. Supp. 3d 581, 584 (S.D.N.Y. 2024); *AVCO Fin. Corp. v. Commodity Futures Trading Comm'n*, 929 F. Supp. 714, 719 (S.D.N.Y. 1996); *Canteen Vending Servs. v. Mfrs. & Traders Tr. Co.*, 1998 WL 268858, at *1 (W.D.N.Y. May 18, 1998) ("[A]n allegation that the former employee breached his duty of loyalty while employed by his former employer does not, in and of itself,

provide a basis for granting injunctive relief following termination of the employment relationship."); *Elpac Ltd., v. Keenpac N. Am. Ltd.*, 186 A.D.2d 893, 894 (3d Dep't 1992) (denying injunctive relief where alleged misconduct had already occurred); *Iron Mountain Info. Mgmt., Inc. v. Taddeo*, 455 F. Supp. 2d 124, 142 (E.D.N.Y. 2006) (alleged breaches "cannot be remedied by the grant of injunctive relief as it is not continuing conduct").

There has been no evidence demonstrating that Layton is engaged in any continuing behavior for the Court to enjoin. There is no proof of any kind that Layton is doing any of the things that Marsh requests the Court order her to stop doing. Indeed, Layton makes clear, under oath, that she is not engaged in the behavior that Marsh seeks to restrain and never has been, and Marsh's declarants offer no evidence to the contrary (Layton Dec. at 4, 5, 9, 14, 27, 29, 31, and 35-36). In other words, there is no status quo ante to preserve as the "ante" – the state of affairs before Layton resigned (which resignation was lawful and is not alleged to be wrongful) – remains unchanged as to her. Courts do not issue injunctions as precautions or warnings. Injunctions are grave remedies which impose significant personal liberty and freedom restrictions on the subject of the injunction because the Court, in its discretion, has found on the basis of the evidence put before it by the moving party, that the enjoined party, if not enjoined, will cause irreparable injury to the moving party. Here, there is no proof that Layton is performing illegal or improper acts which would, if not checked, cause irreparable harm to Marsh. Under the circumstances, where Marsh fails to meet its most basic burden to prove that Layton is harming it, it would be both inappropriate and futile to issue an injunction against Layton. *McDerman v. Does*, 2025 WL 2051622, at *2 (S.D.N.Y. July 22, 2025) (denying TRO on grounds of futility).

## CONCLUSION

For the foregoing reasons, Layton respectfully requests that the Motion be denied as against her in all respects.

Dated: New York, New York
August 21, 2025

**DORSEY & WHITNEY LLP**

By _____
JEREMY E. DEUTSCH (JD3868)
deutsch.jeremy@dorsey.com
RYAN E. MICK (*admitted pro hac*)
mick.ryan@dorsey.com
51 West 52nd Street
New York, NY 10019
(212) 415-9200

Attorneys for Defendant Julie Layton