UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARSH USA LLC,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL PARRISH ET AL.,<br><br>    Defendants. | Civ. No. 25-cv-6208<br><br><br>August 20, 2025 |

## DECLARATION OF ROBERT LYNN

Pursuant to 28 U.S.C. § 1746, I, Robert Lynn, declare as follows:

1. I am over the age of twenty-one and believe in and understand the obligations of an oath. I have personal knowledge of the facts set forth in this Declaration.

2. Earlier this month, I, along with many of the same professionals that left Aon for Marsh four years ago, decided to pursue a better employment opportunity with Howden US Services, LLC. I tendered my written resignation as a Regional Sales Leader for the Marsh Florida Zone on July 21, 2025.

3. I received a cease-and-desist letter from Marsh on July 22, 2025. A true and correct copy of the letter is attached as **Exhibit 1**. The letter made unfounded accusations about my conduct and demanded that I cease and desist from further activities to plan for my transition to Howden.

4. I have subsequently reviewed the Complaint and motion seeking injunctive relief, along with the materials Marsh filed in support. This includes specific statements made by Sarah Dahan-Roxen in her declaration filed in support of Marsh's effort to have an injunction entered against me. Marsh's accusations about the details surrounding my resignation and departure are incorrect in nearly all respects.

5. I have over 35 years commercial insurance industry experience, nearly all that experience comes from my employment with Aon and Marsh. I have worked with Michael Parrish for more than 20 years. We have worked together at Aon and then at Marsh.

6. During my decades working with Parrish, I have considered him both a friend, colleague, mentor, and a leader. For much of the time, I have reported directly to him. We work well together and have been able to build a successful team of professionals and clients.

7. In 2021 I joined Marsh after nearly 30 years of employment with Aon. Mike Parrish also joined Marsh at the same time. The complications from an unsuccessful merger between Aon and Willis prompted my decision to seek alternative employment.

8. During my interview process with Marsh, I expressed concerns with the firm running independent operating models - Marsh and MMA - competing for the same or similar clients in the market. I was assured by Jeff Alpaugh and Martin South that this has not been a problem and didn't expect it to become one. The statements proved to be categorically false. Almost immediately the channel conflicts between Marsh and MMA began, creating an internal obstacle to successfully grow the Marsh book of business.

9. Unfortunately, the acquisition of McGriff by MMA greatly exacerbated the issue. I learned the entity offers a significantly better sales incentive compensation plan for its employees and was granted full access to the same Marsh specialty resources my team accesses for their clients and prospects. Members of my team frequently expressed their frustrations with the MMC operating model.

10. Earlier this year, I learned that Marsh was contemplating reductions of local staff in favor of offshore service support as part of its cost reduction measures. This will certainly be disruptive to our clients and our team's our efforts to focus on servicing and developing business.

11. In spring of 2025, I had a discussion with Jim Hayes at Howden about an employment opportunity. When Parrish told me he had elected to pursue the opportunity Howden presented to him, I eventually made my own decision to do the same. At no point during my discussion with Howden did I reveal the positions of or the compensation paid to any of my Marsh colleagues. Nor was it a condition of any offer Howden made to me that any of my colleagues or clients leave with me if I joined Howden.

12. Long before I contemplated a position with Howden, I had privately decided to leave Marsh on or before my 5th anniversary with the firm for alternative opportunities that would allow me to utilize my years of experience to focus on growing a business and mentoring the

next generation of insurance professionals without the burden of internal Marsh operational challenges.

13. As indicated above much of my team expressed their frustration with the operating model at Marsh, including the challenges of meeting the sales goal in the face of Marsh's internal obstacles and channel conflicts. We all realized Marsh did not present a sustainable model for the needed growth.

14. I had several team members approach me about offers they received from Howden. These team members are capable and seasoned professionals. I told them that I could not comment on their offers or tell them what to do in response and that it was entirely their own decision to make.

15. The suggestions and innuendo in the declaration of Sarah Dahan-Roxin that I asked her about joining Howden are false. I told Ms. Dahan-Roxin that I was giving my 60-day notice to Marsh and told her why I was making the decision. I told her I was not soliciting her in any way, shape, or form. I told her it would be entirely her decision.

16. During the 60-day notice period, I remain employed by Marsh. Accordingly, I respond to client calls as received. I have not solicited any of my clients to leave Marsh in favor of Howden. Even without doing so, I know several have expressed an intention to follow me to Howden.

17. Many of these clients are personal friends of mine. I socialize with them outside of work. They trust me with their insurance needs as a professional and a friend. They rely upon me for insurance brokerage services and that does not depend upon the brokerage firm that I am working at. I know their business and they know me. And that is why they have allowed me to service their accounts even well before I joined Marsh.

18. In February 2025, Marsh required me to acknowledge new terms for restrictive covenants as part of an award grant tied to my compensation. A true and correct copy of the terms of the 2025 Restrictive Covenant Agreement (the "2025 RCA") is attached as **Exhibit 2**. The 2025 RCA stated that it superseded and replaced all prior agreements, including all prior non-competition and non-solicitation agreements concerning prior awards. The 2025 RCA did not include a non-competition restriction.

19. My employment with Howden is set to commence on September 22, 2025, in recognition of my 60-day notice period set forth in my agreement with Marsh. Marsh's accusations that I set about a plan to raid, take, or do any of the other nefarious acts described in its Complaint are false.

20. I see that Marsh has made vague accusations that I have taken or used confidential or proprietary information concerning my clients. That is not true.

21. I have tried to engage in the process of an orderly transition. Marsh has refused to engage in that process. In fact, through my counsel, I proposed to coordinate with the appropriate people at Marsh to ensure an orderly transition of my clients and team out of the company; immediately returned Marsh's computer and other equipment per its demand; sought instruction on what information Marsh wanted me to either return or destroy because it believed the information to be confidential or proprietary; and sought direction on Marsh's expectations during the 60-day resignation period. A true and correct copy of the letter that I instructed my counsel to send to Marsh's counsel is attached as **Exhibit 3**.

22. I received nothing from Marsh answering these questions. Instead, Marsh's counsel responded with demands that I agree to be bound by requirements that I believe to be superseded, unlawful, or overbroad. Marsh responded by suing me in federal court in New York using the same law firm and lawyers who directly represented me in the litigation that followed by departure from Aon to join Marsh.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on August 20, 2025

_____
Robert Lynn