UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x

MARSH USA LLC,

                       Plaintiff,

    -against-

MICHAEL PARRISH, GISELLE LUGONES, ROBERT
LYNN, and JULIE LAYTON,

                       Defendants.

MEMORANDUM DECISION

25 Civ. 6208 (GBD)

------------------------------------------x

GEORGE B. DANIELS, United States District Judge:

Before this Court is Plaintiff Marsh USA LLC's ("Marsh") Application for a Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery. (The "Application," ECF No. 14.) Marsh's Application seeks injunctive relief to, *inter alia*, bar Defendants Michael Parrish, Giselle Lugones, Robert Lynn and Julie Layton (collectively, "Defendants") from soliciting Marsh's employees and clients, and using or disclosing Marsh's confidential information. (*Id.*)[1] On August 7, 2025, this Court set a briefing schedule for the Application and issued an Order for Defendants to show cause as to why a preliminary injunction should not be entered. (ECF No. 62.)

Defendants submitted a Memorandum of Law and other supporting papers in opposition to Marsh's Application on August 21, 2025. (ECF Nos. 80–82.) Marsh submitted a Memorandum of Law and rebuttal declarations in further support of its Application on August 28, 2025. (ECF. Nos. 107–111.) This Court held a hearing regarding Marsh's Application on September 4, 2025.

---

[1] Marsh also seeks injunctive relief to bar Defendants from engaging in certain competitive activities enumerated in Marsh's Revised Proposed Order. This court denies injunctive relief with regard to such competitive activities. Further, Marsh seeks expedited discovery in advance of an evidentiary hearing. By order of this Court on September 18, 2025, the above-captioned case was referred to Magistrate Judge Gary Stein for discovery and pre-trial supervision.

Subsequently, Marsh submitted a revised proposed order for preliminary injunction. (The "Revised Proposed Order," ECF No. 120-1.) Defendants also submitted their version of a proposed order for preliminary injunction if one is to be issued. (Def. Proposed Order for Preliminary Injunction, ECF Nos. 122–123.) Marsh's Application is granted to the limited extent of enjoining Defendants from soliciting Marsh clients and employees or utilizing and disclosing Marsh's confidential information.

## I. LEGAL STANDARDS

"[A] preliminary injunction is an extraordinary remedy never awarded as of right." *Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (per curiam) (citation omitted). To obtain a preliminary injunction, the moving party must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Additionally, where the proposed injunction "will alter rather than maintain the status quo the movant must show clear or substantial likelihood of success." *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000) (citation and internal quotation marks omitted).

## II. PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION

First, regarding likelihood of success on the merits, at issue is Marsh's claim that the Defendants breached contractual obligations set forth in the restrictive covenant agreements Defendants each entered to obtain employment with Marsh. These include obligations (i) not to solicit certain Marsh employees; (ii) not to solicit certain Marsh clients; and (iii) not to misuse Marsh's confidential information, as defined in the respective agreements. (*See* ECF Nos. 20-2 & 20-3 (Parrish); ECF Nos. 20-8 & 20-9 (Lugones); ECF Nos. 20-15 & 20-16 (Lynn); ECF Nos. 20-20 & 20-21 (Layton), hereafter collectively the "Employment Agreements.")

2

Marsh has demonstrated that it is likely to succeed on certain of its claims for breach of Defendants' non-solicitation and non-disclosure covenants. A breach of contract claim requires: "(1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from that breach." *Nat'l Market Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004). Marsh is likely to succeed in establishing these elements. Each defendant signed the Employment Agreements. The Non-Solicitation Agreement prohibits Defendants, during and for: one year after their employment, from directly or indirectly soliciting certain Marsh employees to leave Marsh. (Mufson Decl., Exs. 3, 9, 17, 23 § 3, ECF No. 16.) There is evidence that Defendants solicited Marsh employees to leave Marsh and join them at Howden US Services, LLC ("Howden"), a Marsh competitor. (*See* Maffai Decl. ¶ 3, ¶ 5, ECF No. 25; Gonzalez Decl. ¶ 6, ECF No. 23; Minton Decl. ¶ 3, ECF No. 28.) The record shows that Defendants did so by contacting Marsh colleagues to announce their departure to Howden, sharing higher compensation and promotions being offered by Howden, and offering to connect them to Howden. (*See* Layton Decl. ¶¶ 13, 16, ECF No. 81; Lugones Decl. ¶ 17, ECF No. 82-8; R. Lynn Decl. ¶¶ 13–15, ECF No. 82-11; Parrish Decl. ¶ 22, ECF No. 82-5; *see also* Gonzalez Decl. ¶ 6; Maffai Decl. ¶ 5; Dahan-Roxin Decl. ¶ 6, ECF No. 22.)

Marsh has also shown it is likely to succeed on its claim that Defendants breached their Confidentiality Agreements by accessing Marsh's confidential client and employee information in relation to their anticipated move from Marsh to Howden. Confidential information is defined to include both "personnel information" and "client information". (Mufson Decl. Exs. 3, 9, 17, 23, ECF No. 20.) Defendants' Confidentiality Agreements prohibit them from directly or indirectly using, disseminating, or disclosing Marsh's confidential information except as required to carry out their duties as Marsh employees. (*Id.*)

3

Defendants argue that to the extent Marsh believes the Defendants possess confidential information about Marsh, Marsh is "protected by the terms of its Confidentiality Agreements." (Def.'s Mem., ECF No. 82 at 22.) But Marsh cites declarations showing Defendants accessed and "misused in their solicitation efforts" pricing models, renewal timelines, growth strategies, and detailed employee compensation and benefits. (*See* Schnabolk Dec. ¶¶ 9, 17–19, ECF No. 29; McClellan Decl. ¶ 4, 6, ECF No. 27; Gonzalez Decl. ¶ 4; Pl. Mem., ECF No. 15 at 15-16; Compl. ¶ 52, ECF No. 1.) In an analogous case, a court held that Marsh demonstrated a likelihood of success on claims that an employee breached a confidentiality agreement when the former employee created "personal" spreadsheets containing Marsh client information, targeted Marsh clients, and such clients left Marsh within days of the employee's resignation. *MMA LLC*, No. 1:24-cv-9914, 2025 WL 304500 at *5-6 (S.D.N.Y. 2025). Likewise, Marsh underscores that defendant Layton instructed her direct reports to place confidential client information in a newly created SharePoint for her use a month before the departure of clients and employees of Marsh and its affiliates. (Gonzalez Decl. ¶ 4.) Such actions, not for Marsh's benefit and never before taken by defendant Layton, bolster the likelihood of Marsh's success on a claim regarding breach of the Confidentiality Agreement.

Defendants also argue that Marsh lacks a protectable interest, making the various agreements "entirely unenforceable." (Defs.' Mem. 15–16, ECF No. 82.) Multiple courts have held, however, that employers have a legitimate interest in protecting their workforce from targeted solicitation. *See, e.g.*, *Marsh USA Inc. v. Karasaki*, No. 08 Civ. 4195, 2008 WL 4778239, at *16-17 (S.D.N.Y. 2008); *Natsource LLC v. Paribello*, 151 F. Supp. 2d 465, 469 (S.D.N.Y. 2001). Similar efforts by other former Marsh employees have been deemed to likely violate similar contractual provisions. *See Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc.*, No. 1:24-

cv-9914, 2025 WL 304500, at *6 (S.D.N.Y. 2025); *Marsh USA Inc. v. Karasaki*, No. 08 Civ. 4195, 2008 WL 4778239, at *20 (S.D.N.Y. 2008). Marsh has presented direct and circumstantial evidence of over 90 coordinated employee resignations (*see* Schnabolk Decl. ¶ 6), conduct that implicates Marsh's protectable interests.

Marsh has also demonstrated the likelihood that it would suffer irreparable harm, absent injunctive relief, from damage to its client relationships and use and/or disclosure of its confidential information. Besides the more than 90 Marsh employees who immediately followed Defendants to Howden (*id.*), at least eight clients of Marsh also accompanied Defendants. (McClellen Decl. ¶ 10.) Defendants refute plaintiff's claims of irreparable harm, noting that Marsh's Application is based largely on alleged actions completed in the past and before the date of Defendants' resignations. (ECF No. 82 at 11.) This characterization ignores the full record. Defendant Layton has begun her employment with Howden (Hr'g Tr. 7:14, Sept. 4, 2025), whereas Defendants Parrish, Lynn, and Lugones have submitted resignations to Marsh and are currently still Marsh employees in their notice periods. They do not dispute that they intend to start employment at Howden on September 22, 2025, and intend to provide the same or similar insurance broking services as they did at Marsh. (ECF No. 120-1 Ex. A.) Since Marsh submitted its Application, an additional nine clients have left for Howden, bringing the total number of clients that have departed to seventeen. (Second Schnabolk Decl. ¶¶ 7–8, ECF No. 111.) Ten of these clients were tied to Defendant Lugones (*id.*), who detailed plans to "transition" certain Marsh clients to Howden in her declaration. (Lugones Decl. ¶¶ 23, 26–32.)

Marsh has further demonstrated that it will continue suffering irreparable harm due to the risk of Defendants' use and disclosure of its confidential information. There is evidence that Defendants possess knowledge of Marsh's confidential business strategies and information,

5

including details about Marsh employees and clients. (*See supra* page 4). Irreparable harm may be established where, as here, there is a substantial risk that the Defendant will use and/or disclose Plaintiff's confidential information. *See, e.g., Estee Lauder Cos. Inc. v. Batra*, 430 F. Supp. 2d 158, 179 (S.D.N.Y. 2006).

Lastly, the balance of equities and public interest favor a limited preliminary injunction. To obtain a preliminary injunction, a plaintiff must show that the balance of equities—the harm to plaintiff from denial of the injunction as against the harm to defendant from granting it—tips in the plaintiff's favor. *See e.g. Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Serv.*, 769 F.3d 105, 110 (2d Cir. 2014). On balance, Marsh has demonstrated that it will likely suffer further irreparable harm, absent injunctive relief, through the loss of client relationships, employees, and disclosure of its confidential information. Further, there is "undoubtedly a public interest in enforcing valid contracts including such restrictive covenants as they may contain." *HRB Res. LLC v. Schon*, No. 6:19-cv-0339, 2019 WL 4015256, at *3 (N.D.N.Y. Apr. 25, 2019). Public interest weighs in favor of enforcing valid and binding contracts like the Employment Agreements between Marsh and the Defendants. Defendants argue that the relief Marsh seeks would harm the public interest and "stifle competition." (ECF No. 82 at 1, 30.) But, as Plaintiff specifies in its Revised Proposed Order, it moves this Court to enter a "status quo preliminary injunction." (ECF No. 120-1 Ex. A.) Such an injunction would be narrowly tailored to mirror the defendants' existing obligations[2] (*see* R. Lynn Decl. ¶¶ 14–15, Layton Mem. 11, Lugones Decl. ¶

---

[2] Defendants also argue that damages are a sufficient remedy if plaintiff prevails. (Defs' Mem. ECF No. 82 at 13-14) However, not all of Marsh's potential injury can be quantified by damages alone. The Employment Agreements Defendants entered concede expressly that "damages cannot be readily ascertained and will not make the Company whole or fully remedy [a] breach" Compl. ¶ 7 and monetary damages for breach of their restrictive covenants "would not be readily calculable." *Id.* ¶ 73.

6

19, Parrish Decl. ¶¶ 21–23). It would "preserve the *status quo ante* and prevent irreparable harm until" further adjudication of this lawsuit. *Lagemann v. Spence*, 2019 WL 4014846, at *2 (S.D.N.Y. Jan. 24, 2019).

### III.  CONCLUSION

Having considered the parties' submissions and arguments, this Court hereby grants in part Marsh's Application for a preliminary injunction. In particular, this Court grants Marsh's Application for a preliminary injunction enjoining each defendant from, directly or through others, (1) communicating with current Marsh employees regarding employment with Howden, or any form of solicitation thereof, (2) communicating with existing Marsh clients regarding provision of services or products by Howden, or any form of solicitation thereof, and (3) any use or disclosure of Marsh's confidential information. This Court denies further injunctive relief sought by Marsh with regard to prohibiting Defendant Parrish, Defendant Lugones and Defendant Lynn from engaging in competitive activities.

Dated: SEP 1 8 2025
New York, New York

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge