**CARLTON FIELDS**

ATTORNEYS AT LAW

**Chrysler Building**
405 Lexington Avenue | 36th Floor
New York, New York 10174-0002
212.785.2577 |  fax 212.785.5203
www.carltonfields.com

November 14, 2025

The Honorable Gary Stein
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re: *Marsh USA LLC v. Parrish et al.*, No. 1:25-cv-06208-GBD-GS
**Request for Conference on Motion to Compel Deposition and Preservation**

Dear Judge Stein:

Pursuant to Federal Rules of Civil Procedure 30 and 37(a), Michael Parrish, Giselle Lugones, and Robert Lynn (the "Defendants") move to compel (a) the deposition of Martin South, an executive at Marsh who actively recruited the Defendants to Marsh in 2020-2021 and now is Marsh's CEO, (b) Marsh's confirmation that all relevant information on South's personal devices has been imaged and preserved. South has personal knowledge of unique information central to claims and defenses in this case, including the nature and depth of Defendants' relationships with their clients; his knowledge that these clients are "personal clients" of the Defendants under New York law; Marsh's lack of any "protectible interest" in these relationships; and the industry standard for the movement of individuals and teams from one insurance broker to another. Further, Marsh is seeking equitable relief and has brought claims that sound in equity, such as unfair competition and faithless servant claims. To receive equity one must do equity, and Defendants are entitled to obtain information that could support various equitable defenses, such as unclean hands, equitable estoppel, waiver, and *in pari delicto*. In addition, South's testimony about his and Marsh's recruitment of the Defendants from Aon Risk Services, Inc. ("Aon"), including his guidance regarding the scope of permissible conduct in connection with the move from one insurance broker to another, will undermine Marsh's request for punitive damages, as it will show that they lacked malicious intent. The parties engaged in good faith in several meet-and-confers but could not resolve the issue, so the Defendants request a discovery conference on their motion.

LEGAL STANDARD

A party may take a deposition of any person or party and seek information regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). While the party seeking discovery has the burden to prove relevance, a plaintiff resisting a deposition or seeking a protective order bears the burden to show good cause. *Edmar Fin. Co., LLC v. Currenex, Inc.*, 347 F.R.D. 641, 646 (S.D.N.Y. 2024); *Wei Su v. Sotheby's, Inc.*, 2019 WL 4053917, at *1 (S.D.N.Y. Aug. 28, 2019) (party opposing deposition has burden to show good cause).

"Highly-placed executives are not immune from discovery." *Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 122 (S.D.N.Y. 2015). Federal courts have consistently found that executives are only "safeguarded" from depositions where they have no "unique evidence" or "personal knowledge of the claims at issue." *Id.* at 122–23; *Six W. Retail Acquisition v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001); *Chevron Corp. v. Donziger*, No. 11

CIV. 0691 LAK JCF, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013) (allowing deposition of CEO with relevant knowledge even though "[t]he extent to which" that knowledge was unique "is not clear"). "[T]hat the [executive] has a busy schedule" or claims no unique knowledge of relevant facts "is simply not a basis for foreclosing otherwise proper discovery." *Consolidated Rail Corp. v. Primary Indus. Corp.,* 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993). When executives make such claims, the claims are subject to testing by the examining party. *Scott*, 306 F.R.D. at 122–23; *Less v. Taber Instrument Corp.,* 53 F.R.D. 645, 647 (W.D.N.Y. 1971).

## DISCUSSION

### I.  South would offer relevant testimony.

South's testimony on his role in recruiting the Defendants' and their clients is likely to yield evidence on whether they are "personal clients." In late 2020 and in 2021, South orchestrated the Defendants' move from Aon to Marsh with their clients. At the time, South was President of Marsh's U.S. and Canada regions. (Later, in 2022, he was promoted to President and CEO of Marsh.) In 2021, South shared his intent to recruit Parrish's team, meeting with Parrish and indicating that Marsh was "targeting [him] because of the team [he] had operating under [him]." Parrish Decl. ¶ 5 (Dkt. 82-4). South had direct conversations with the Defendants about the strategy and logistics of moving themselves and their clients. He did so despite the Defendants' covenants with Aon, thus suggesting he thought Aon lacked a protectible interest. South was familiar with the client book the Defendants were bringing from Aon. In 2021, for example, when recruiting Lugones, South said he "recognized the valuable client relationships that [she] had developed and the loyalty those clients had to [her]" noting that Marsh "expected that clients would follow [her] to a new brokerage firm if [she] elected to leave." Lugones Decl. ¶ 6 (Dkt. 82-8). And South caused Lugones to contact her personal clients on his behalf, and to introduce him to those clients, so that he could help her solicit them to Marsh. *See, e.g.*, Exhibit A (texts between South and Lugones). Parrish, Lugones, and Lynn also reported directly to South after they were hired, giving him more knowledge of their client relationships. *See* Mufson Decl., Ex. 1, 7, 14, 39, 41, 42, 43 (Dkt. 20-1). As Marsh knows, it has no legitimate interest in preventing the Defendants from soliciting or servicing their "personal clients"—*i.e.*, clients developed as a result of defendants' own independent efforts, rather than being generated and maintained primarily by Marsh. *See BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 393 (N.Y. 1999); *Marsh USA Inc. v. Schuhriemen*, 183 F. Supp. 3d 529, 537 (S.D.N.Y. 2016). South's testimony on recruitment from Aon and the Defendants' client relationships is likely to yield evidence on defenses.

South's testimony is also relevant to whether the Defendants have various equitable defenses, including unclean hands, equitable estoppel, waiver, and *in pari delicto*. Marsh describes Defendants' move to Howden US Services LLP ("Howden") as a "methodical raid . . . under cover of darkness," and alleges that Defendants defied a duty of loyalty by "aggressively solicit[ing]" Marsh employees. Yet South directed Marsh to engage in the precise conduct it alleges when recruiting the Defendants from Aon. At the time, Marsh's position was that the transition between employers was a natural consequence of businesses competing to attract top talent. In fact, to ensure that Parrish complied with Parrish's commitments to Aon, his former employer, South directly communicated with Aon employees and with Parrish's clients to facilitate their migration to Marsh. But now that the Defendants have left Marsh, Marsh has

reversed course. Marsh alleges that a course of conduct that was healthy competition and grounds for South's promotion is now improper. Thus, South's testimony could contain material relevant to the defenses noted above, including an *in pari delicto* defense. *See Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 464 (N.Y. 2010) (*in pari delicto* doctrine mandates that courts not intercede to resolve a dispute between two parties that share fault."); *Teneyck, Inc. v. Rosenberg*, 957 N.Y.S.2d 845 (N.Y. Sup. Ct. 2013), *aff'd*, 111 A.D.3d 529, 975 N.Y.S.2d 335 (N.Y. App. Div., 1st Dept., 2013) (applying the *in pari delicto* doctrine to faithless servant claim). South's testimony could also undermine Marsh's request for punitive damages, as the move from Aon and his approval of it tends to show that the Defendants' conduct was not malicious or vindictive and did not "evince a high degree of moral turpitude and demonstrate[s] such wanton dishonesty as to imply a criminal indifference to civil obligations." *Ross v. Louise Wise Servs.*, 8 N.Y.3d 478, 489 (N.Y. 2007). In addition, South's personal experience navigating industry norms suggests that Marsh did not have a protectible interest and is relevant to Marsh's arguments regarding breach of the faithless servant doctrine and unfair competition.

**II.     South is not immunized from deposition by his executive role.**

Given the relevance of South's testimony and his unique, personal knowledge of the Defendants' personal clients and their onboarding, hiring, and contract development, South should be subject to deposition. The "apex" doctrine prevents harassment of a high-level corporate executives when that person has no or little relevant information about a case, and it is designed to prevent one party from immediately seeking to depose the highest person in an organization simply for leverage in the case. *See, e.g.*, *Scott*, 306 F.R.D. at 122. Here, however, South has plainly relevant, unique information that predates his promotion to President and CEO of Marsh. While Defendants anticipate deposing other employees prior to South, Defendants know South was the person who retained decision-making power, had familiarity with Defendants' personal clients, and was personally involved in both the reasons why Defendants joined Marsh and subsequently left for Howden. The lower-ranking employees do not have the same familiarity with critical elements of this litigation that South has, and his unique, personal knowledge justifies his deposition on relevant subjects.

**III.    Marsh has rebuffed the Defendants' reasonable requests.**

Defendants have asked Marsh to confirm that South will be made available for deposition and that information on his personal devices has been imaged and preserved. Despite repeated conferrals on these issues in the last few weeks over videoconference (including in the N.Y. state-court case) and email. Marsh has refused to confirm either point. Instead, it has hedged its replies and made disingenuous follow-up inquiries under the guise of seeking clarity to straightforward requests. The Defendants raise this issue now so that there is no delay in setting the deposition and obtaining information from South.

## CONCLUSION

Defendants request a discovery conference with the Court to hear Defendants' motion compelling Marsh to make Martin South available for deposition, to confirm that South's data on his personal devices has been imaged and preserved.

The Honorable Gary Stein
November 14, 2025
Page 4

                                             Respectfully submitted,

                                             CARLTON FIELDS, P.A.

                                             _____
                                             Michael L. Yaeger

cc: All parties of record, by ECF