# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x

MARSH USA LLC,

                          Plaintiff,

           v.

MICHAEL PARRISH, GISELLE
LUGONES, ROBERT LYNN, and JULIE
LAYTON,

                        Defendants.

: : : : : : : : : : : : :

Case No. 25-cv-6208

------------------------------------------------------ x

## DEFENDANT JULIE LAYTON'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF MARSH USA LLC'S PROPOSED ORDER TO SHOW CAUSE FOR CONTEMPT OF THE COURT'S PRELIMINARY INJUNCTION

**DORSEY & WHITNEY LLP**

*Attorneys for Defendant Julie Layton*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .....................................................................................................1

FACTUAL BACKGROUND.......................................................................................................2

LEGAL ARGUMENT..................................................................................................................8

    I.          THE ORDER IS NOT CLEAR AND UNAMBIGUOUS......................................9

    II.        LAYTON'S DISCOVERY AND PROMPT RETURN OF A SINGLE
               DOCUMENT DOES NOT CONSTITUTE CLEAR AND CONVINCING
               PROOF OF NONCOMPLIANCE.........................................................................11

    III.      LAYTON DILIGENTLY ATTEMPTED TO COMPLY IN A
               REASONABLE MANNER AND HER GOOD FAITH ATTEMPT TO
               COMPLY WITH AN ORDER DOES NOT CONSTITUTE CONTEMPT .........13

    IV.     MARSH FAILS TO DEMONSTRATE THAT ANY SANCTIONS ARE
               APPROPRIATE....................................................................................................17

    V.          SPECIAL, EXPEDITED DISCOVERY IS NOT WARRANTED.......................19

CONCLUSION............................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AdvantaCare Health Partners, LP v. Access IV*,
No. C 03-04496 JF, 2004 U.S. Dist. LEXIS 16835 (N.D. Cal. Aug. 17, 2004)..........19, 25, 26

*Aminov v. Berkshire Hathaway Guard Ins.*
Cos., 21-CV-479-DG-SJB, 2022 U.S. Dist. LEXIS 48473 (E.D.N.Y. Mar. 3,
2022) ...................................................................................................................................................23

*Benthos Master Fund, Ltd. v. Etra*,
20-CV-3384(VEC), 2022 U.S. Dist. LEXIS 229076 (S.D.N.Y. Dec. 20, 2022)...............17, 25

*Brown v. Kelly*,
No. 05-civ-5442, 2007 U.S. Dist. LEXIS 39527 (S.D.N.Y. May 31, 2007) ...........................18

*Cal. Artificial Stone Paving Co. v. Molitor*,
113 U.S. 609, 5 S. Ct. 618, 28 L. Ed. 1106, 1885 Dec. Comm'r Pat. 295
(1885)...................................................................................................................................................14

*Calyon v. Mizuho Sec. USA Inc.*,
07 Civ. 02241(RO)(DF), 2007 U.S. Dist. LEXIS 36961 (S.D.N.Y. May 18,
2007) ...................................................................................................................................................24

*Chevron Corp. v. Donziger*,
425 F. Supp. 3d 297 (S.D.N.Y. 2019).......................................................................................24

*Debruhl v. Keyes*,
23-cv-06324(GRB)(JMW), 2025 U.S. Dist. LEXIS 24801 (E.D.N.Y. Feb. 10,
2025) ...............................................................................................................................................9, 18

*GlaxoSmithKline, LLC v. Brooks*,
No. 8:22-cv-00364-PWG, 2022 U.S. Dist. LEXIS 82421 (D. Md. May 5,
2022) ...................................................................................................................................................11

*Gucci Am. v. Bank of China*,
768 F.3d 122 (2d Cir. 2014)........................................................................................................9

*Hart Schaffner & Marx v. Alexander's Dep't Stores, Inc.*,
341 F.2d 101 (2d Cir. 1965) (per curiam)..............................................................................14

*Heritage of Pride, Inc. v. Matinee NYC Inc.*,
14 Civ. 4165(CM), 2014 U.S. Dist. LEXIS 102571 (S.D.N.Y. July 23, 2014)...................2, 15

*International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*,
  389 U.S. 64, 19 L. Ed. 2d 236, 88 S. Ct. 201 (1967)..............................................................14

*Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*,
  2017 U.S. Dist. LEXIS 221970 (S.D.N.Y. Sept. 27, 2017)..............................................12, 13

*King v. Allied Vision, Ltd.*,
  65 F.3d 1051 (2d Cir. 1995)............................................................................................. *passim*

*Lashify, Inc. v. Qingdao Network Tech. Co., Ltd.*,
  25-cv-4183(LJL), 2025 U.S. Dist. LEXIS 227194 (S.D.N.Y. Nov. 18, 2025) .........................9

*Latino Officers Ass'n v. City of New York*,
  519 F. Supp. 2d 438 (S.D.N.Y. 2007), *aff'd* 558 F.3d 159 (2d Cir. 2009) ..............................18

*Levin v. Tiber Holding Corp.*,
  277 F.3d 243 (2d Cir. 2002)......................................................................................................9

*LoanDepot.com, LLC v. CrossCountry Mortg., LLC*,
  22 Civ. 5971(LGS), 2023 U.S. Dist. LEXIS 100230 (S.D.N.Y. June 8, 2023)......................23

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd*,
  885 F.2d 1 (2d Cir. 1989)........................................................................................................20

*Matthews Int'l Corp. v. Lombardi*,
  2:20-CV-89-NR, 2021 U.S. Dist. LEXIS 91521 (W.D. Pa. May 13, 2021)...........................11

*Murrell v. Cooper Tire & Rubber Corp.*,
  No. 2:05-CV-252 TS, 2006 U.S. Dist. LEXIS 67147 (D. Utah Sep. 19, 2006) .....................22

*Next Invs., LLC v. Bank of China*,
  12 F.4th 119 (2d Cir. 2021) .............................................................................................9, 10

*Nike, Inc. v. Wu*,
  No. 13 Civ. 8102(CM), 2020 U.S. Dist. LEXIS 9102 (S.D.N.Y. Jan. 17, 2020)........15, 18, 20

*Panix Promotions, Ltd. v. Lewis*,
  2004 U.S. Dist. LEXIS 3504, [01 Civ.2709 (HB)],[…] 2004 WL 421937
  (S.D.N.Y. Mar. 5, 2004) .........................................................................................................13

*Perez v. Danbury Hosp.*,
  347 F.3d 419 (2d Cir. 2003)......................................................................................................9

*Schreiber v. Friedman*,
  15-CV-6861 (CBA)(JO), 2017 U.S. Dist. LEXIS 228087 (E.D.N.Y. Aug. 15,
  2017) .......................................................................................................................................25

*Sra Insurance Agency, LLC v. Virtus LLC*,
  No. 21-2181-DDC-JPO,2021 U.S. Dist. LEXIS 87626 (D. Kan. May 7, 2021).....................21

*Sweigert v. Goodman*,
  No. 1:18-cv-08653 (VEC) (SDA), 2021 U.S. Dist. LEXIS 180040, 2021 WL
  4295262 (S.D.N.Y. Sept. 21, 2021)........................................................................................9

*Titra California, Inc. v. Titra Film*,
  [98 Civ. 0234(KMW)(FM)] [] 2001 WL 1382587 (S.D.N.Y. Nov. 6, 2001) .........................14

*Vancza v. Marist Coll.*,
  1:21-CV-01262(GTS/CFH), 2023 U.S. Dist. LEXIS 124888 (N.D.N.Y. July
  20, 2023) ................................................................................................................................24

*Vuitton et Fils S.A. v. Carousel Handbags*,
  592 F.2d 126 (2d Cir. 1979)..................................................................................................20

*Weitzman v. Stein*,
  98 F.3d 717 (2d Cir.1996)......................................................................................................20

*Wojnarowicz v. Am. Family Ass'n*,
  772 F. Supp. 201 (S.D.N.Y. 1991) .........................................................................................12

*Zino Davidoff SA v. CVS Corp.*,
  No. 06-cv-15332, 2008 U.S. Dist. LEXIS 36548, 2008 WL 1775410
  (S.D.N.Y. Apr. 17, 2008)........................................................................................................18

**Other Authorities**

Fed. R. Civ. P. 34(a) ....................................................................................................................23

## PRELIMINARY STATEMENT

Defendant Julie Layton ("*Layton*") respectfully submits this memorandum of law in opposition to plaintiff Marsh USA LLC's ("*Marsh*") motion for civil contempt against her (the "*Motion*") for allegedly violating the Court's September 18, 2025 Preliminary Injunction Order (Dkt. # 129) (the "*Order*"). Marsh seeks to hold Layton in contempt for producing a single photograph, which Marsh contends is "Marsh property," shortly after the September 23, 2025 deadline set forth in the Order for the return of Marsh's Confidential Information and property (the "*Deadline*")[1]. Marsh contends that this photograph constitutes "Marsh property."[2]

Layton took diligent steps to comply with the Order. Shortly after the Deadline, Layton discovered that her electronic discovery vendor had inadvertently failed to load certain photographs from her iPhone for her team's initial review. Layton's team directed the vendor to load such photographs and promptly reviewed each one. Layton then returned one of the photographs to Marsh in a good faith effort to comply with the Order, not in contumacious disregard of it. Marsh's Motion amounts to "'gotcha' tactics that were designed [from the beginning] to set up a contempt application—which happens to be a style of litigation that this Court finds offensive." *Heritage of Pride, Inc. v. Matinee NYC Inc.*, 14 Civ. 4165CM), 2014 U.S. Dist. LEXIS 102571, at *2 (S.D.N.Y. July 23, 2014).

Marsh does not allege that Layton used the photograph to compete with Marsh or to solicit employees or clients. It also does not contend that Layton currently possesses any Marsh

---

[1] Counsel for Layton requested a short extension of three days from counsel for Marsh due to a medical issue, the religious holiday, and the weekend, all coming in the five days that the Court set for compliance. Counsel for Marsh consented. *See* Mufson Decl., Ex. 10 (Dkt. # 164-10).

[2] While Marsh notes that Layton produced 20 documents, it complains as a basis for its contempt Motion about only one of them – a document that Marsh fails to include with its Motion papers but is a photograph of a spreadsheet. The same content reflected in the single document cited by Marsh in its contempt Motion appears in six of the 20 documents produced by Layton; in total, Layton produced eleven documents with unique content. *See* Johnson Decl. ¶ 8 n. 1.

Confidential Information or property which she refuses to turn over, or that she is using or disseminating Marsh's confidential information or property.  Marsh does not argue that the photograph had any commercial value (it does not).  Instead, Marsh brought this Motion to punish Layton for her efforts to comply with the Order by continuing to diligently search for and return Marsh property; not for any alleged harmless and technical failure to abide by the Order.  Marsh's rhetoric is not a substitute for the evidence Marsh is required to adduce to meet its heavy burden of proof by clear and convincing evidence on this Motion.  Marsh neither suffered harm nor prejudice by Layton's good faith, albeit belated, production.  Instead, Marsh has seized on this opportunity in the hopes that this Court will turn this contretemps into a compensable event for Marsh, and likely to deter additional employees from leaving Marsh under the threat of litigation. The Court should look past Marsh's litigation tactics and deny its Motion in its entirety.

## FACTUAL BACKGROUND

Layton resigned from Marsh on July 21, 2025 and commenced employment with Howden on July 22, 2025.  Marsh commenced suit against her on July 30, 2025, alleging that she violated her fiduciary duties and her restrictive covenants with Marsh.  Marsh obtained a preliminary injunction against Layton on September 18, 2025.  In issuing a preliminary injunction, the Court credited Marsh's allegations that Layton had acted unusually by directing her employees to upload client documents to a Marsh controlled SharePoint cloud drive prior to her resignation, and that such directions were not for the benefit of Marsh.  *See* Dkt. #130 at 4 (the "*Decision*").  However, Marsh conducted a forensic analysis of Layton's Marsh computer, phone and email account and did not find evidence that she misappropriated any confidential information from Marsh.  *See* Schnabolk Decl. ¶¶ 11-14 (Dkt. # 155) (providing that analysis of Layton's SharePoint showed that Layton *accessed* a "Risk Management team Florida" folder on two occasions in June 2025 and four other documents on the SharePoint in July 2025, without identifying any documents that

were misappropriated). In short, Marsh neither alleges nor offers any evidence that Layton misappropriated any confidential Marsh information, including any information from the Marsh SharePoint drive. If Layton had downloaded, printed or sent to her personal email account any of Marsh's confidential information, Marsh would have uncovered this through its forensic analysis of Layton's Marsh devices and accounts. Layton unequivocally denies taking any confidential information from Marsh's SharePoint. *See* Layton Aug. Decl. ¶¶ 5, 21-29 (Dkt. # 81)[3].

It was against this backdrop that the Court held: "There is evidence that Defendants possess knowledge of Marsh's confidential business strategies and information, including details about Marsh employees and clients." Decision at 5-6. The Court enjoined Layton from "any use or disclosure of Marsh's confidential information," Decision at 7, and ordered that:

> Each Defendant is further prohibited from directly or indirectly using, disseminating, or disclosing to any third party (including any other person, organization, or entity, including but not limited to Howden and its employees and agents) Confidential Information and Trade Secrets. Defendants must return all Marsh property, including Confidential Information and Trade Secrets, on the last day of his or her employment or within five (5) days of this Order, whichever date is later.

Order at 3.

The Court afforded Layton only five days to comply with the Order. These five days fell over a weekend, a major religious holiday, and a hospital stay for Layton. Marsh granted her a three-day extension to comply with the Order. *See* Mufson Decl., Ex. 10 (Dkt # 164-10). Layton's counsel worked as diligently as possible to comply with the Order, collecting her personal phone, including any messaging applications, her iCloud account, and her personal email account, and a team of Dorsey attorneys and electronic discovery specialists immediately began analyzing the

---

[3] "Layton Aug. Decl." refers to the August 21, 2025 Declaration of Julie Layton (Dkt. # 81). "Layton Nov. Decl." refers to the November 28, 2025 Declaration of Julie Layton dated November 28, 2025 submitted herewith.

information that was collected.[4]  Marsh's contention that "[b]asic search terms run across Defendants' personal devices would have uncovered these documents for Defendants to return by the deadline," and that "[t]he ease with which these documents could have been identified strengthens the conclusion that Defendants failed to use reasonable diligence" (Motion at 17-18), is simply wrong with respect to Layton.  The sole document upon with Marsh premises this Motion against Layton is a photograph which was inadvertently not included in the review data base by the electronic discovery vendor.  Unbeknownst to Layton's counsel, the vendor only loaded the photographs which had been attached to transmissions – *i.e.*, to text messages or emails—but not photographs otherwise standing alone in her iPhone.  When it was discovered that certain photographs had not been loaded for review, they were promptly loaded and Layton's counsel then manually reviewed them .  All of her iPhone data has now been confirmed as loaded into the Relativity database.  Johnson Decl. ¶¶ 19 -21.[5]

The Court incorporated into the Order the definitions "Confidential Information" and "Trade Secrets" from Layton's Confidentiality Agreement with Marsh.  These definitions are far from clear.  During the September 4, 2025 hearing on the preliminary injunction, even the Court struggled with the universe of materials falling within Marsh's definition of "Confidential Information," and how the Court would "identify a violation and enforce a general order." *See* Hearing Tr. at 16.  Counsel for Marsh was unable to assist in this respect, stating unhelpfully that Defendants know what confidential information they have. *See* Hearing Tr. at 16-18.  There was no discussion at the preliminary injunction hearing or in Marsh's application for a preliminary

---

[4] Layton returned her Marsh phone and laptop when resigned from Marsh in July 2025.  Her counsel therefore was unable to search such devices.

[5] References to "Johnson Decl." are references to the Declaration of Kathryn Johnson, dated December 1, 2025, and submitted herewith.

injunction as to the meaning of "Marsh property."  The term "Marsh property" is not defined in any of Layton's agreements with Marsh.  The Court also did not define the term in either the Order or Decision.  Layton's Confidentiality Agreement with Marsh sets forth the materials that she is obligated to return to Marsh. *See* Confidentiality Agreement § 4 (Dkt. # 16-21).  These materials are broken down into two categories – inchoate confidential information and physical "property" such as laptops and phones.  The Confidentiality Agreement does not use or define the term "Marsh property."

The clear concern of the Court was to prevent any defendant from using Marsh's confidential information to obtain a competitive advantage over Marsh .  The focus was on the confidential information aspect and less so on the competition.  After all, the Court expressly declined to prohibit defendants from competing with Marsh. *See* Decision at 7.  Bearing in mind the context of the harm that the Court was protecting against—the misuse of Confidential Information and Trade Secrets—Layton's counsel focused its efforts on searching for Confidential Information and Trade Secrets.

On Layton's end, her counsel collected, processed, and reviewed electronically stored information ("ESI") from Layton's email and iPhone. *See generally* Johnson Decl. ¶¶ 3-22. Although counsel had already begun the process of collecting Layton's ESI prior to the entry of the Order, upon receipt of the Order that was expedited to allow review prior to the deadline. *Id.* ¶¶ 3-4.  As information became available for review, counsel conducted searches and reviewed the resulting document.  With respect to Layton's email, counsel reviewed all documents to, from, cc'ing, or bcc'ing a Howden or Marsh email address, documents in which "Howden" or "Marsh" appeared in the content, documents in which terms relating to Ms. Layton's clients appeared anywhere in the content, documents in which the terms "SharePoint," "Dropbox," or "MShare"

appeared anywhere in the content, and documents in which the names of certain Marsh employees appeared anywhere in the content. *Id*. ⁋ 11.  With respect to the contents of Ms. Layton's personal mobile phone, that included review of all voicemails within a specified timeframe, documents with "Howden" or "Marsh" anywhere in the content, documents in which terms relating to Ms. Layton's clients appeared anywhere in the content, and all photographs then available in the database (which were attachments to messages) dated between July 7, 2025 and July 22, 2025. *Id*. ⁋ 14.  Layton's counsel took this additional step of reviewing all photographs in this timeframe because even where photographs contain text content, they may not be searchable.  *Id*. ⁋ 14 n. 2.  In total, Layton's counsel spent more than 22 hours reviewing the contents of her ESI prior to writing to Marsh on September 26, 2025 letter. *Id*. ⁋ 16.

Based on this review and information obtained from Layton, *see* Layton Nov. Decl. ⁋⁋ 5, counsel for Layton wrote to counsel for Marsh on September 26, 2025, and stated:

> I confirm that Ms. Layton is not in possession of any "Marsh property" and has nothing to "return" to Marsh, as she previously stated in her Declaration (Dkt. # 81).  If for some reason, as discovery progresses, we have reason to believe there is any information that would qualify under the Order that might need to be returned we will promptly notify you.  We trust your team will do the same if there is any similar belief on your end.  At this time, we confirm that Ms. Layton has complied with the requirements of the Order.

Mufson Aff. Ex. 10.

Additional ESI collected from Layton's iCloud account was processed and available for review by Layton's counsel on September 27, 2025.  Johnson Decl. ⁋ 17.  During the course of reviewing this ESI, Layton's counsel discovered that the only photographs that had been loaded into the Relativity database for review were those attached to messages sent or received by Layton. *Id*. ⁋ 19.  The missing photographs were promptly loaded into the database and those dated between March 30, 2025 and September 22, 2025  were reviewed individually, by hand, and not by reliance on text searches, although optical character recognition was performed and text searches were

conducted as a second check. *Id*. At the same time, in an excess of caution, the team re-reviewed previously reviewed materials. In that process, certain other materials were identified which Layton's counsel believed Marsh might regard as potentially confidential information which Marsh might be entitled to receive back *Id*. ⁋ 22.

These materials fall into two categories. First, the majority of the twenty documents are snippets of text conversations between Layton and other former Marsh employees concerning Marsh's winning certain new business from existing Marsh clients, along with an excerpt of an apparently employment-related agreement, the provenance of which was not clear to counsel. *Id*. ⁋ 7. In an excess of caution, these documents were segregated. Second, there are two categories of photographs and videos. Two photographs, taken in May 2025, depict the contents of a whiteboard apparently relating to a discussion of business resilience, containing non-specific content such as identifying "[b]arriers" as "compliance/red tape" and "lack of agility." *Id*. Six photographs and videos (taken in rapid succession) depict a spreadsheet showing selected accomplishments for the "[Florida] Team" in 2024 and certain projections, expressed on a percentage or round dollar value basis, about possible growth in 2025. *Id*. ⁋ 8.

Marsh has not included copies of any of these materials in support of the instant Motion, although it was clearly its responsibility to do so if it wished for this Court to determine that the one item that Marsh complains of was the subject of the Order, should have been produced, and was withheld in contempt of that Order.

On October 24, 2025, Marsh, apparently sparked by a production of documents from Layton's co-defendants, wrote to Layton. *See* Mufson Decl., Ex. 12 (Dkt. # 164-12). Layton's counsel replied to Marsh on October 30, 2025. Marsh's counsel did not press further upon

receiving Layton's response on October 30, 2025. Layton's October 30 letter included a document production that ostensibly caused Marsh to make this Motion.

## LEGAL ARGUMENT

Marsh's burden to demonstrate contempt is heavy. "To demonstrate [contempt], 'a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *Next Invs., LLC v. Bank of China*, 12 F.4th 119, 128 (2d Cir. 2021) (quoting *Gucci Am. v. Bank of China*, 768 F.3d 122, 142 (2d Cir. 2014) and *Perez v. Danbury Hosp.*, 347 F.3d 419, 423-24 (2d Cir. 2003)) (alternations in original)

To be clear, "[a]ll three elements must be met before civil contempt sanctions can be imposed." *Debruhl v. Keyes*, 23-cv-06324(GRB)(JMW), 2025 U.S. Dist. LEXIS 24801 at * 12 (E.D.N.Y. Feb. 10, 2025)(citing *Sweigert v. Goodman*, No. 1:18-cv-08653 (VEC)(SDA), 2021 U.S. Dist. LEXIS 180040, 2021 WL 4295262, at *1 (S.D.N.Y. Sept. 21, 2021)). The standard is exacting: "To find a party in contempt, it is not sufficient that the Court determine that it is more likely than not that the party has violated a court order[;] [t]he Court must find 'clear and convincing' evidence." *Lashify, Inc. v. Qingdao Network Tech. Co., Ltd.*, 25-cv-4183(LJL), 2025 U.S. Dist. LEXIS 227194 at *13 (S.D.N.Y. Nov. 18, 2025) (quoting *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002)). Marsh utterly fails to meet its burden here.

Marsh predicates its Motion, with respect to Layton, entirely on the production of a single photograph, a document Marsh fails to include with its Motion. Absent entirely from Marsh's Motion is any allegation that Layton is competing unfairly with Marsh, is using information contained in the photograph, or any other confidential information or trade secrets of Marsh, in order to solicit Marsh clients or employees, or that the photograph actually contains information that is commercially valuable.

## I.    **THE ORDER IS NOT CLEAR AND UNAMBIGUOUS**

Marsh has not met its burden to prove, by clear and convincing evidence, that the aspect

of the Order upon which it has moved for contempt, is clear and unambiguous.

> "A clear and unambiguous order is one that leaves no uncertainty in the minds of
> those to whom it is addressed, who must be able to ascertain from the four corners
> of the order precisely what acts are forbidden." *King*, 65 F.3d at 1058 (cleaned up).
> Thus, a contempt order "is inappropriate if 'there is a fair ground of doubt as to the
> wrongfulness of the [alleged contemnor's] conduct.'" *Latino Officers Ass'n*, 558
> F.3d at 164 (quoting *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618,
> 5 S. Ct. 618, 28 L. Ed. 1106, 1885 Dec. Comm'r Pat. 295 (1885)).  Ambiguities in
> the order's language and persisting questions about legal limits on the court's power
> can each defeat a contempt motion.  *See, e.g., King*, 65 F.3d at 1059 (linguistic
> ambiguity); *Gotham Registry*, 514 F.3d at 292 (legal ambiguity).

*Next Invs., LLC v. Bank of China*, 12 F.4th 119, 131 (2d Cir. 2021).

The central ambiguity is that "Marsh property" is not defined anywhere in any relevant or

related document.  It is not defined in the Order, the Confidentiality Agreement, the Order to Show

Cause, in Marsh's memorandum of law on this Motion, in the underlying application for the

injunction, and finally, it was never even discussed at the hearing.  Johnson Decl. ¶ 10.  The Court,

in fact, struggled with the definition of Confidential Information and Marsh's counsel declined to

help.  See Hearing Tr. at 16-21.  Given that it is not defined, is the photograph "Marsh property"

within the meaning – both the spirit and the letter -- of the Order?  Marsh and Layton disagree.

Ms. Layton's counsel made a good faith attempt to interpret the meaning of the term

"Marsh property" to mean something that would either confer or deprive someone of a competitive

advantage.  Johnson Decl. ¶ 10.   This interpretation is reasonable and consistent with the letter

and the spirit of the Decision.  Marsh, by contrast, offers no definition for the term "Marsh

property." *See* Motion at 14-15.  If Marsh now asserts, as it appears to do, that anything with the

word "Marsh" on it would constitute Marsh property, that would be an absurd interpretation and

would seek to require, for instance, the return of anything with the word "Marsh" printed on it,

including information which is public information or which Layton possesses lawfully, such as any Marsh Annual Report.  That cannot be the intention of the Court, which clearly sought to require the return of Confidential Information and Trade Secrets, materials which might provide a competitive advantage to Layton or hinder Marsh in competition.  *See* Decision at 7.  This interpretation is also consistent with the small five-day window that the Court ordered for return of the "Marsh property."  Marsh seems to think otherwise and contends that any and all items that merely bear the word "Marsh" should have been returned during this five-day period.  Under Marsh's expansive view of the term "Marsh property," Layton would have been obligated to return her employment agreement with Marsh, paystubs, information about health insurance she obtained through Marsh, and even Marsh swag.  *See* Motion at 17.  That simply cannot be right.[6]

The information contained in the photograph at issue was historical in nature and could not provide anyone with a current competitive advantage (and Marsh does not claim that it could). Marsh may deem it to be its property but (1) it reflects historic results all of which would have been bound up in the 2024 public financial reporting that would have taken place already by the time the picture was taken in July 2025 and (2) even Marsh does not contend that the photograph would provide Layton with a competitive advantage, or dull Marsh's competitive edge.  This cannot be the type of information, this detritus on the corporate information highway, that the

---

[6] The cases Marsh cites to support its argument that the Order is clear are inapposite.  *See* Motion at 15 (citing *Matthews Int'l Corp. v. Lombardi*,2:20-CV-89-NR, 2021 U.S. Dist. LEXIS 91521, at *2-3, 5-6 (W.D. Pa. May 13, 2021) (holding order for defendants to return all of plaintiff's "documents and information that is in Defendants' possession, custody, or control," and to execute a "'joint remediation protocol to purge Defendants' systems of all of [plaintiff]'s information" was not reasonably ambiguous enough to justify interpreting it as applying to physical documents only, particularly where the documents at issue were "primarily—if not exclusively—electronically stored information and the "customary and reasonable understanding of 'all documents and information'" under the Federal Rules of Civil Procedure includes ESI); *GlaxoSmithKline, LLC v. Brooks*, No. 8:22-cv-00364-PWG, 2022 U.S. Dist. LEXIS 82421, *28-29 (D. Md. May 5, 2022) (deciding motion for contempt where the issue of whether the order contemnor failed to comply with was "clear and unambiguous" was *not* raised, and applying a test for civil contempt that did not include as an element that the order the contemnor failed to comply with be "clear and unambiguous," as is required in this District, and instead noting in *dicta* that the court's "instruction" to defendant was "clear and unequivocal").

Court intended to capture within the scope of the Order even if Marsh pretends that it is (and by

so doing, Marsh is engaging in precisely the sort of "gotcha" tactics disfavored by the Second

Circuit and this Court).

Marsh asserts, in tacit acknowledgement that the Order contained definitional

uncertainties, that if there was any lack of clarity, that Layton (and the other defendants) "needed

to seek clarification of the Court's order prior to the deadline." (Memo in Support at 16). That is

not the law. Layton was under no such obligation where the ambiguity and uncertainty

surrounding the interpretation of "Marsh property" must be construed in her favor:

> I note, however, that the Actava Defendants' failure to "seek clarification" from the
> Court before entering into the Referral Agreement, [], would not, standing alone,
> establish their lack of diligence. To be sure, an enjoined party genuinely unsure of
> its obligations may petition the court "for a modification, clarification, or
> construction" of the order, *see, e.g.*, *CBS Broad Inc*., 814 F.3d at 99-100 (quoting
> *McComb v. Jacksonville Paper Co*., 336 U.S. 187, 192, 69 S. Ct. 497, 93 L. Ed.
> 599 (1949)), and perhaps would be well advised, in some cases, to do so. But the
> Actava Defendants had no affirmative duty to file such a petition before testing
> their own interpretation of the Stipulated Injunction. To the contrary: "[t]he
> longstanding, salutary rule in contempt cases is that ambiguities and omissions in
> orders redound to the benefit of the person charged with contempt." *A.V. by
> Versace*, 87 F. Supp. 2d at 291 (quoting *Drywall Tapers*, 889 F. 2d at 400
> (Mahoney, J., concurring in part and dissenting in part)).

*Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 2017 U.S. Dist. LEXIS 221970 at

*43, n. 17 (S.D.N.Y. Sept. 27, 2017).

## II.    LAYTON'S DISCOVERY AND PROMPT RETURN OF A SINGLE DOCUMENT DOES NOT CONSTITUTE CLEAR AND CONVINCING PROOF OF NONCOMPLIANCE

Marsh has the burden to prove, by clear and convincing evidence, that Layton's post-

deadline discovery and production of one single photograph – the only conduct that Marsh

complains of – is "clear and convincing proof of noncompliance" with the Court's Order in both

spirit and letter.

The case law is clear that a mistake or an inadvertent failure on the part of an enjoined party, particularly under the circumstances present here, does not constitute noncompliance with a court's order.    *Wojnarowicz v. Am. Family Ass'n*, 772 F. Supp. 201, 202 (S.D.N.Y. 1991)(denying plaintiff's motion for contempt on the grounds that defendants action was a "mistake[] from which no malevolence may be presumed.").    Marsh does not argue that Layton is in violation of any of the non-competition or non-solicitation components of the Order. Critically, Marsh also does not claim that Layton misappropriated any SharePoint materials.    And for good reason—she did not.    Marsh has not offered any evidence from its forensic analysis of Layton's Marsh devices and accounts that shows that she downloaded, printed, sent to her personal email account, or otherwise possessed, took or misappropriated any of the information that she directed her subordinates to upload to the Marsh SharePoint drive.

Ms. Layton produced one photograph, in several copies, after it was belatedly discovered due to a mistake made by an e-discovery vendor.    It is clear, however, that:  the photograph was never sent to anyone else by way of message or email; that it was promptly disclosed; and, that it was removed from Layton's phone such that she no longer has possession of it.    *See* Johnson Decl. ₽ 20; Jarboe Decl. ₽₽ 3-7.[7]    Given that no allegation was made that Layton used the photograph in any way to compete with Marsh, there can be no serious argument that Marsh has met its burden of proof to show, by clear and convincing evidence, that Layton failed to comply with the spirit of the Order, if not the letter, which is clearly designed to prohibit Layton from taking commercial advantage of Marsh Confidential Information and Trade Secrets.    Given her substantial compliance with the Order, a finding that she violated the Order, or that Marsh carried its burden to show that

---

[7] References to "Jarboe Decl." are references to the Declaration of Alexander Jarboe, dated November 26, 2025, and submitted herewith.

she did, would be erroneous. *See Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 16-CV-1318(GBD)(BCM), 2017 U.S. Dist. LEXIS 221970 at *26 (S.D.N.Y. Sept. 27, 2017) ("Some courts also consider whether the defendant's conduct 'clearly and unambiguously violated the spirit of the . . . Order.' [(alteration in original)] *Panix Promotions, Ltd. v. Lewis*, 2004 U.S. Dist. LEXIS 3504, [01 Civ.2709 (HB)],[…] 2004 WL 421937, at *5 (S.D.N.Y. Mar. 5, 2004) (declining to hold defendant in contempt where he violated the 'letter' of the order, which restricted him from engaging in financial transactions that could dilute his liquidity, but where his conduct, 'in hindsight, increased his net worth'). *See also Titra California, Inc. v. Titra Film*, [98 Civ. 0234(KMW)(FM)] [] 2001 WL 1382587, at *5 (S.D.N.Y. Nov. 6, 2001) ('[I]t is the spirit of the order, not the letter, than must be obeyed.').")

With the return of the single photograph, Layton is, to the best of her knowledge, in full compliance with the letter and the spirit of the Order (assuming that she was ever out of compliance), and no contempt finding should lie. Marsh fails to meet its heavy burden to show otherwise.

## III.    LAYTON DILIGENTLY ATTEMPTED TO COMPLY IN A REASONABLE MANNER AND HER GOOD FAITH EFFORTS DO NOT CONSTITUTE CONTEMPT

Marsh must show, by clear and convincing evidence, that Layton did not diligently attempt to comply in a reasonable manner with the injunction. *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) ("In analyzing a contempt order, we recognize that such an order is [a] 'potent weapon,' *International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76, 19 L. Ed. 2d 236, 88 S. Ct. 201 (1967), to which courts should not resort "where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct," *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618, 28 L. Ed. 1106, 5 S. Ct. 618 (1885). A contempt order is warranted only where the moving party establishes by clear and convincing evidence that the

alleged contemnor violated the district court's edict. *See Hart Schaffner & Marx v. Alexander's Dep't Stores, Inc.*, 341 F.2d 101, 102 (2d Cir. 1965) (per curiam)").

Here, the Johnson Declaration sets out the steps taken to diligently attempt to comply with the Order in a reasonable manner. *See* Johnson Decl. ¶¶ 4-26. It also sets forth how Layton came to learn that this attempt had fallen short over this one photograph, details the process put in place to review and re-review data and information to both check compliance and ensure compliance with the Order, and then the prompt turnover of materials to Marsh after removing them from Ms. Layton's ability to access. "[P]erfect compliance is not required; substantial compliance will defeat a motion for contempt of court." *Heritage of Pride, Inc. v. Matinee NYC Inc.*, 14 Civ. 4165(CM), 2014 U.S. Dist. LEXIS 102571, at *2 (S.D.N.Y. July 23, 2014). This is sufficient to demonstrate Ms. Layton's diligent attempt to comply in a reasonable manner and Marsh fails to show otherwise.

> The Banks cannot be held in contempt as long as they made "diligent and energetic efforts to comply in a reasonable manner" with the Discovery Orders. *Chao*, 514 F.3d at 293. "Although the Second Circuit has not been squarely confronted with the question of what constitutes 'reasonable diligence,' it has noted that 'substantial compliance' is the appropriate standard in evaluating noncompliance in a contempt case." *Yurman Studio, Inc. v. Castaneda*, No. 07-cv-1241, 2009 U.S. Dist. LEXIS 13870, 2009 WL 454275, at *2 (S.D.N.Y. Feb. 23, 2009) (quoting *Latino Officers Ass'n of the City of New York v. City of New York*, 519 F. Supp. 2d 438, 446 n.43 (S.D.N.Y. 2007). Therefore, reasonable diligence does not require that Banks to "exhaust all means available" to them, *Chao*, 514 F.3d at 293; indeed, demonstrably inadequate efforts may be sufficient to avoid contempt sanctions, provided they are the product of a nonparty's "reasonably effective methods of compliance," *Zino Davidoff SA v. CVS Corp.*, No. 06-cv-15332, 2008 U.S. Dist. LEXIS 36548, 2008 WL 1775410, at *8 (S.D.N.Y. Apr. 17, 2008); see also *Coan v. Dunne*, 602 B.R. 429, 443 (D. Conn. 2019) ("Perfect compliance is not required to avoid a finding of contempt.") (internal quotation marks omitted).

*Nike, Inc. v. Wu*, No. 13-cv-8102, 2020 U.S. Dist. LEXIS 9102, at *76 (S.D.N.Y. Jan. 17, 2020).

Marsh utterly fails to show, by clear and convincing evidence, that Layton did not diligently attempt to comply with the Order in a reasonable manner. In addressing this third prong

of the test for civil contempt sanctions, Marsh's only argument directed at Layton merely references her representation to Marsh on September 26, 2025 that she was not in possession of any Marsh property—a representation she believed to be true at the time, which was based on diligent searches of her ESI, and her counsel's statement to Marsh on October 31, 2025, in connection with its return of additional documents pursuant to the Order, that if they identified any further information that might constitute Marsh property during course of discovery, they would return it. *See* Motion at 17-19.  The diligent collection, imaging and search of Layton's personal phone and email account, and Layton's good faith representation to Marsh that based on such efforts she did not possess any Marsh property, demonstrated her diligent attempt *to comply* with the Order, not a failure to do so.  Moreover, her counsel's assurance to Marsh that, if any additional documents were uncovered during the discovery process that might constitute Marsh property, it would return them, similarly demonstrates Layton's good faith efforts *to comply* with the Order— and not, as Marsh contends, a failure to do so.

Beyond referencing the two representations by Layton and her counsel, Marsh otherwise fails to distinguish Layton's conduct from that of the other defendants in this case.  Marsh's failure to distinguish between the conduct of the various defendants is evident in the arguments it makes, including that: "Any reasonable search would have identified the documents Defendants later produced.  Many are clearly labeled "Marsh" and plainly include Marsh's Confidential Information concerning its Florida Zone Business, clients, and prospects."  Motion at 17. However, this argument simply does not apply to the single photograph that Layton produced in October, which is neither "clearly labeled 'Marsh,'" nor contains Marsh's Confidential Information.  Additionally, with respect to Layton, Marsh wrongly argues that "Defendants do not say why they chose to initiate a review of their electronic devices only *after* the Court's order."

Motion at 18. Marsh is wrong. Layton did initiate a review of her electronic devices and accounts prior to the Court's Order. *See* Johnson Decl. ⁋ 3. Marsh's failure to distinguish between the conduct of the individual defendants on this Motion, and its use of "group pleading," in effect, to lump all of the defendants' conduct together in an attempt to create a basis for the Court to hand down a collective punishment is highly inappropriate. Marsh cannot prevail on this Motion because it fails to identify with any precision any basis for the Court to find that Ms. Layton, *individually*, failed to attempt to diligently comply with the Order. Instead, Marsh asks the Court to hold Layton in contempt based largely on the alleged actions of the *other defendants*. Marsh also asks the Court to hold Layton in civil contempt for the belated production of a photograph that Marsh deliberately chose not to include in its Motion for the Court's review. That, in and of itself, is a clear failure by Marsh to meet its burden of persuasion on this Motion.

Marsh cites to a single readily distinguishable case to support its argument that Layton supposedly failed to diligently comply with the Order. Marsh argues that the supposed "ease" with which Layton's photograph could have been identified "strengthens the conclusion that [she] failed to use reasonable diligence." *See* Motion at 18 (citing *Benthos Master Fund, Ltd. v. Etra*, 20-CV-3384(VEC), 2022 U.S. Dist. LEXIS 229076, at *9 n.20 (S.D.N.Y. Dec. 20, 2022)). However, the circumstances under which the court in *Benthos* held the defendant in contempt are a far cry from the present facts. In *Benthos*, the court ordered the incarceration of the defendant, who failed, repeatedly, to make post-judgment disclosures of assets notwithstanding the imposition of several fines. *Benthos*, 2022 U.S. Dist. LEXIS 229076, at *2 (S.D.N.Y. Dec. 20, 2022). The court concluded the defendant's representations about his assets were not credible in light of his lavish spending and that he failed to make a reasonably diligent effort to comply with court orders. *Id*. at *40-42. The Court then jailed him. *Id*. at *42. None of the circumstances in *Benthos* are

present here.  Without it, Marsh cites no law in support of its burden to show that Layton failed to diligently attempt to reasonably comply with the Order.

No contempt has been demonstrated here.  Indeed, the only thing that Marsh has shown is that Ms. Layton has taken careful good faith steps to comply with her obligations under the Order, and that, if there were any compliance error, she has since brought herself into compliance through the production of the photograph at issue and other materials.  A finding of contempt under these circumstances would be wholly inappropriate.  *See Debruhl v. Keyes*, 2025 U.S. Dist. LEXIS 24801 at * 13 (E.D.N.Y. Feb. 10, 2025) ("Importantly, courts often analyze whether the contemnor has since brought themselves into compliance with the order at issue after violating it.  *Latino Officers Ass'n v. City of New York*, 519 F. Supp. 2d 438, 446 (S.D.N.Y. 2007), *aff'd* 558 F.3d 159 (2d Cir. 2009) (declining to find the defendants in civil contempt where, despite the 'initial failure' of their compliance efforts, they 'were reasonably diligent and energetic in attempting to comply . . . and have since brought themselves into substantial compliance with [the order at issue]'" [(alterations in original)])).

## IV.    SANCTIONS ARE NOT APPROPRIATE

Marsh requests an award of both coercive sanctions "[t]o procure compliance," and compensatory sanctions in the form of attorneys' fees.  Motion at 20; *see also* 26-29.  Neither are warranted.  *Nike, Inc. v. Wu*, 2020 U.S. Dist. LEXIS 9102, at *83 (S.D.N.Y. Jan. 17, 2020) ("Likewise, because Assignee has failed to present clear and convincing evidence that the Banks' compliance efforts were not reasonably diligent, the Court finds that coercive contempt sanctions aimed at the Banks' future behavior are inappropriate.  *See Zino Davidoff*, 2008 U.S. Dist. LEXIS 36548, [] at *14; *see also Brown v. Kelly*, No. 05-civ-5442, 2007 U.S. Dist. LEXIS 39527,[], at *5 (S.D.N.Y. May 31, 2007) ("Punitive civil sanctions are not permitted ...."[(alteration in original)]).

A fine of $10,000.00 a day, per defendant, shocks the conscience.  This would amount to a fine of $3,650,000.00 per year simply because Ms. Layton, after exercising reasonable diligence, belatedly identified and returned a single document—a document which Marsh does not claim that Layton's possession of caused it any damage or harm whatsoever.  This is an absurd suggestion.  A coercive sanction is not warranted here where Ms. Layton took reasonable and diligent steps to comply with the Order in the first instance, and upon belatedly discovering the single photograph, promptly cured her alleged failure to return the document by the deadline set forth in the Order.[8]  Layton's counsel have set forth in detail (i) the diligent steps Layton took to comply with the Order both before and after September 26, 2025, (ii) the basis for Layton's representation to Marsh on September 26th that she was not in possession of any Marsh property—a representation she believed to be true at the time, and (iii) the reason for her belated return of the photograph—an inadvertent error by an electronic discovery vendor.  Marsh does not provide any basis to suggest that Layton will not remain in compliance with the Order going forward.  In other words, there is no risk of continued harm here.  Nor has Marsh identified any harm, actual or potential.  An award of any amount, much less an award of $10,000.00 a day would be an abuse of discretion, as the Second Circuit has held.  *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1063 (2d Cir. 1995) ("In the instant case, the $10,000 per day fine is wholly unrelated to any damages King may have incurred due to New Line's noncompliance with the Decree.  Moreover, to award the fine to King as compensation is redundant, given the award of net profits as a measure of King's damages.  In

---

[8] The cases Marsh relies upon where courts imposed monetary fines as sanctions for civil contempt bear no resemblance to the present facts and should be disregarded. *See* Motion at 22; *see, e.g., AdvantaCare Health Partners, LP v. Access IV*, No. C 03-04496 JF, 2004 U.S. Dist. LEXIS 16835, at *3, *5-6, *16, *21 (N.D. Cal. Aug. 17, 2004) (imposing $20,000 sanction for civil contempt on defendants for misappropriating and permanently deleting thousands files, spoliating evidence and engaging in "affirmative misconduct," "willfulness, fault and bad faith").

summary, because 'no proof of loss was offered on behalf [of King], no evidence of actual injury due to [New Line's] activities was shown and there was no evidence that awarding the contempt sanction to [King] would have additional coercive effect on defendant's behavior,' the district court abused its discretion in awarding the fines to King. *Terry*, 886 F.2d at 1354." [(alteration in original)])

An award of attorneys' fees for Marsh on this Motion would lack any foundation in law as there is no basis upon which the Court can find that Layton, if held in contempt, acted willfully under the circumstances. Such a finding is required in this Circuit and District. *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1063 (2d Cir. 1995) ("In order to award fees, the district court had to find that New Line's contempt was willful. See Sweater Bee, 885 F.2d at 8; Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d 126, 130 (2d Cir. 1979)"); *Nike, Inc. v. Wu*, 2020 U.S. Dist. LEXIS 9102, at *83 (S.D.N.Y. Jan. 17, 2020). ("In the absence of willfully contumacious conduct or other conduct evincing the contemnor's bad faith, an award of fees and costs is inappropriate. *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd*, 885 F.2d 1, 8 (2d Cir. 1989) (internal quotation marks and citation omitted); *see also Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir.1996). It should go without saying, then, that a party bringing an unsuccessful contempt motion cannot expect to recover the fees incurred in preparing such a motion."). If anything, given the clear bad faith exhibited by Marsh in bringing this Motion, attorneys' fees, in an exercise of the Court's discretion, should be awarded to Layton.

## V.    **SPECIAL EXPEDITED DISCOVERY IS NOT WARRANTED**

The Court should deny Marsh's request for special, expedited discovery to determine Layton's compliance with the Order because it is not warranted here. Marsh's request is premised solely upon Layton's belated production of a single photograph that was not captured by her team's initial review due to an oversight by an e-discovery vendor. This is not a case where a defendant

refused to turn over confidential information or was caught misappropriating it in violation of a court order.  Notably, Marsh does not even attempt to argue how Layton could have used the information contained in the photograph to unfairly compete with Marsh.  Layton has at all times acted in good faith and taken reasonable and diligent steps to comply with the Order.  There is no basis for the Court to conclude, based on her conduct, that expedited discovery is needed to verify her compliance with the Order.

Marsh fails to point to a single case where a court ordered expedited discovery or a compelled forensic analysis under similar circumstances.  Marsh cites two readily distinguishable, out-of-circuit cases to support its request for special, expedited discovery.  First, in *Sra Insurance Agency, LLC v. Virtus LLC*, the court granted limited expedited discovery because the defendant agreed to a stipulated preliminary injunction order, then violated it twice the very next day by soliciting clients, and lied to the court about his improper client solicitation.  No. 21-2181-DDC-JPO, 2021 U.S. Dist. LEXIS 87626, at *8, *13-14 (D. Kan. May 7, 2021).[9]  Here, in contrast, Layton was not caught violating a preliminary injunction order she stipulated to, and she has never lied to the Court or anyone else about her compliance with the Order.  Indeed, upon discovering that her vendor had failed to load certain photographs for her team's initial review, Layton's team promptly reviewed and returned them to Marsh in an effort to *comply* with the Order, knowing full well that Marsh would likely attempt in bad faith to weaponize her belated return of the materials.  Additionally, contrary to Marsh's inflammatory accusations, Layton never made any knowing misrepresentations to Marsh regarding her compliance with the Order.

---

[9] In *Sra Insurance Agency*, the plaintiff provided the court with proposed interrogatories and document requests, which the court found to be "narrowly tailored" and authorized their service upon the defendant.  2021 U.S. Dist. LEXIS at *18, *22.  Here, Marsh chose not to provide the Court with the specific discovery requests it seeks to propound on Layton, and the expedited discovery it requests is by no means narrowly tailored: forensic analysis, depositions and an unspecified number of document requests.  *See* Motion at 21-22.

Second, in *Murrell v. Cooper Tire & Rubber Corp.*, the defendant failed to comply with a discovery order, and then failed to respond to an order to show cause why she should not be held in contempt for having failed to comply with the discovery order. No. 2:05-CV-252 TS, 2006 U.S. Dist. LEXIS 67147, at *1-2 (D. Utah Sep. 19, 2006). In light of the defendant's failure to responding to the order to show cause or any information from her regarding her failure to comply with the discovery order, the court, without engaging in any analysis, ordered the defendant to appear for a deposition to answer questions about her compliance with the discovery order and to return any confidential material obtained in the litigation. *Id*. at *4. Unlike in *Murrell*, here, there is no need for Marsh to depose Layton regarding her compliance with the Order because Layton and her counsel explain in detail in the steps she took to comply with it. *See* Johnson Decl. ¶¶ 3-26; Jarboe Decl. ¶¶ 3-8; Layton Nov. Decl. ¶¶ 2-5. The Court should deny Marsh's request for special expedited discovery.

Marsh previously sough expedited discovery in connection with its application for a preliminary injunction, *see* Plaintiff's Memorandum of Law at 26-27 (Dkt. # 15), and the Court declined to grant Marsh expedited discovery then, see Order. The only thing that has changed since then is that Layton has taken diligent steps to comply with the Order. Her counsel has informed Marsh that if any additional information that may constitute Marsh property is uncovered in discovery, it will promptly return it to Marsh. Nothing here warrants an order permitting Marsh to engage in special expedited discovery, much less conduct a forensic examination of Layton's personal devices and accounts. The parties are currently engaged in normal party discovery, and if Marsh is truly concerned about Layton's compliance with the Order, it may test her compliance in the course of normal party discovery.

Even if the Court were to order expedited discovery (it should not), Marsh's request that

the Court order Layton to turnover her personal devices and accounts—including her iPhone and her Gmail account and iCloud accounts—for Marsh to image and review is particularly outrageous and should be denied.  There is a heightened sensitivity to a request such as this, given that it invades personal privacy rights and even privileges, such as the spousal privilege or the attorney-client privilege.[10]  Marsh certainly articulates no grounds here for imaging her personal device or accounts and obtaining unfettered access to that data.

Courts recognize that "[f]orensic examinations of computers and cell phones are generally considered a drastic discovery measure because of their intrusive nature."  *LoanDepot.com, LLC v. CrossCountry Mortg., LLC*, 22 Civ. 5971(LGS), 2023 U.S. Dist. LEXIS 100230, at *26 (S.D.N.Y. June 8, 2023).  "[C]ompelled forensic imaging is not appropriate in all cases, and courts must consider the significant interests implicated by forensic imaging before ordering such procedures."  *Aminov v. Berkshire Hathaway Guard Ins.* Cos., 21-CV-479-DG-SJB, 2022 U.S. Dist. LEXIS 48473, at *2 (E.D.N.Y. Mar. 3, 2022).  Marsh cannot meet its heavy burden to compel a forensic examination of Layton's electronic devices and accounts with baseless speculation that Layton *might* be in possession of additional unspecified Marsh property.  Indeed, Marsh argues that the Court should order special, expedited discovery because Marsh "lacks the information to know whether additional Marsh property resides with Defendants."  Motion at 21.  However, it is well established that "[m]ere suspicion or speculation that an opposing party may be withholding discoverable information is insufficient to support an intrusive examination of the opposing party's electronic devices or information system."  *Vancza v. Marist Coll.*, 1:21-CV-01262(GTS/CFH), 2023 U.S. Dist. LEXIS 124888, at *5-6 (N.D.N.Y. July 20, 2023) ("[A] Court must consider the

---

[10] See Fed. R. Civ. P. 34(a) advisory committee's note to 2006 amendment ("Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy.  The addition of testing and sampling to Rule 34(a) with regard to . . . electronically stored information is not meant to create a routine right of direct access to a party's electronic information system ….").

significant privacy and confidentiality concerns implicated, including that the electronic information might contain confidential . . . private personal information that is wholly unrelated to the litigation.")(alteration in original) (internal quotation marks and citations omitted).

In any event, a compelled forensic analysis of Layton's personal devices and accounts is entirely unnecessary and inappropriate because Layton's counsel already performed a forensic analysis of her personal devices and accounts and conducted detailed searches of her ESI pursuant to the Order. *See* Johnson Decl. ⁋⁋ 3-26. Marsh also conducted a forensic analysis of Layton's Marsh devices and accounts and was unable to find any evidence that she took or misappropriated any Marsh documents or information. *See* Schnabolk Decl. ⁋⁋ 11-14.

Marsh cannot meet its burden to demonstrate, by clear and convincing evidence, that Layton has engaged in any misconduct related to the photograph at issue, much less make a "[c]lear showing of discovery misconduct [which] is needed to make a compelled forensic examination permissible." *Vancza*, 2023 U.S. Dist. LEXIS 124888 at *6.. (internal quotation marks). *See also Calyon v. Mizuho Sec. USA Inc.*, 07 Civ. 02241(RO)(DF), 2007 U.S. Dist. LEXIS 36961, at *17 (S.D.N.Y. May 18, 2007) (denying plaintiff's motion to compel production of defendant's computer hard drives for forensic inspection where the court was "not yet faced with any failure by the defendants to conduct a thorough forensic search of their computers, or to produce any and all relevant documents, files, metadata, and even hidden data fragments that [plaintiff] may request"). *Cf, Chevron Corp. v. Donziger*, 425 F. Supp. 3d 297, 301-02 (S.D.N.Y. 2019) (ordering forensic imaging of defendant's devices after indications that defendant erased or withheld responsive documents); *Schreiber v. Friedman*, 15-CV-6861 (CBA)(JO), 2017 U.S. Dist. LEXIS 228087, at *16 (E.D.N.Y. Aug. 15, 2017) (allowing forensic examination when there was

substantial evidence that defendants "spoliated evidence, hid evidence, and failed to comply with the Court's orders"). No such circumstances exist here.

Tellingly, Marsh relies on a total of two cases, with facts that bear no resemblance to the present circumstances, to support its request for a forensic examination. In *Benthos Master Fund, Ltd. v. Etra*, the court imprisoned the defendant twice as a coercive sanction and ordered him to surrender his cell phones to the plaintiff for a forensic examination. No. 20-CV-3384 (VEC), 2022 U.S. Dist. LEXIS 229076, at *47 (S.D.N.Y. Dec. 20, 2022). The court imposed those sanctions on the defendant because he had failed to comply with multiple court orders over the course of several years, despite the imposition of multiple civil fines, made repeated misrepresentations to the court, and engaged in other misconduct such as concealing his assets to evade payment of a judgment. *Id*. at *8, *44-45. None of the circumstances animating the court's imposition of sanctions in *Benthos* are present here. *Benthos* therefore does not support Marsh's request for a compelled forensic analysis.

The only other case Marsh cites in support of its request for a forensic analysis is *AdvantaCare Health Partners, LP v. Access IV*, No. C 03-04496 JF, 2004 U.S. Dist. LEXIS 16835 (N.D. Cal. Aug. 17, 2004). In *AdvantaCare*, before resigning, the defendants accessed their former employer AdvantaCare's network, copied thousands of files containing confidential and proprietary information, including a patient database, and tried to conceal their misconduct by deleting files from the company's hard drive. *Id*. at *3. On the same day that the court issued a temporary restraining order and directed the defendants to produce forensic copies of their hard drives for inspection, the defendants purchased a sophisticated computer file deletion program to surreptitiously delete over 13,000 misappropriated files, many of which AdvantaCare was unable to recover, before turning over their hard drives for forensic analysis. *Id*. at *5-6. The court held

that the defendants' conduct demonstrated "willfulness, fault and bad faith," and that their conduct prejudiced AdvantaCare on the merits of its case. *Id* at \*21. It therefore permitted AdvantaCare to examine the defendants' hard drives to ensure that its files were removed. *Id*. at \*26, \*32.

The defendants' willful misconduct and spoliation of evidence in *AdvantaCare* is not in any way analogous to Layton's good faith, diligent efforts to comply with the Order. Marsh's forensic analysis of Layton's Marsh devices and accounts did not uncover any evidence that she copied or deleted any information from Marsh's systems or its SharePoint, or that she attempted to conceal any misconduct. Marsh does not claim that Layton's belated return of a single photograph prejudiced Marsh on the merits of its case. Marsh also does not point to any facts to suggest that Layton knowingly possessed or accessed any Marsh property after the Deadline. Instead, Layton belatedly produced a single photograph that her e-discovery vendor failed to upload for her team's review prior to the Deadline. Under the circumstances, an invasive forensic examination of Layton's personal devices and accounts would be wholly inappropriate. Marsh's request for a forensic analysis should be denied.

## CONCLUSION

Marsh has failed to meet its heavy burden and the Motion should be denied in all respects.

Dated:  New York, New York
        December 1, 2025

**DORSEY & WHITNEY LLP**

By: */s/ Jeremy E. Deutsch*
    Jeremy E. Deutsch
    Krista E. Bolles
51 West 52nd Street
New York, NY 10019
(212) 415-9238
deutsch.jeremy@dorsey.com
bolles.krista@dorsey.com

-and-

Ryan E. Mick (*pro hac vice*)
Kathryn A. Johnson (*pro hac vice*)
50 South 6th Street, Suite #1500
Minneapolis, MN 55402
(612) 492-6613
mick.ryan@dorsey.com
johnson.kate@dorsey.com

*Attorneys for Defendant Julie Layton*