**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARSH USA LLC,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL PARRISH, GISELLE LUGONES, ROBERT LYNN, AND JULIE LAYTON,<br><br>Defendants. | Case No. 1:25-cv-06208-GBD-GS |

**PLAINTIFF MARSH'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF ITS PROPOSED ORDER TO SHOW CAUSE**
**FOR CONTEMPT OF THE COURT'S PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1
ARGUMENT ........................................................................................................... 1
I. Defendants Are in Contempt of the Preliminary Injunction. ........................................ 1
A. The Court's Order Was Clear and Unambiguous. ................................................. 1
B. Defendants Retained at least 440 Documents a Month Past the Deadline. ...................... 4
C. Defendants' "Good Faith" Is a Mirage—And Not a Valid Defense. ............................... 7
II. Marsh's Proposed Remedies Are Appropriate. ......................................................... 9
A. Additional Discovery Is Needed to Confirm Defendants' Compliance. .......................... 9
B. A Coercive Fine Is Warranted. ............................................................................ 10
C. Marsh's Request for Attorneys' Fees Is Proper. ....................................................... 10
CONCLUSION ........................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Aspira of N.Y., Inc. v. Bd. of Ed.*,
423 F. Supp. 647 (S.D.N.Y. 1976) ........ 8

*Benthos Master Fund, Ltd. v. Etra*,
2022 WL 17819592 (S.D.N.Y. Dec. 20, 2022) ........ 9

*Citibank, N.A. v. McPartland*,
2023 WL 4424352 (S.D.N.Y. July 7, 2023) ........ 9

*Matter of Dickinson*,
763 F.2d 84 (2d Cir. 1985) ........ 10

*GlaxoSmithKline, LLC v. Brooks*,
2022 WL 1443735 (D. Md. May 6, 2022) ........ 2

*Haroun v. ThoughtWorks, Inc.*,
2020 WL 6828490 (S.D.N.Y. Oct. 7, 2020) ........ 9

*Heritage of Pride, Inc. v. Matinee NYC Inc.*,
2014 WL 3703871 (S.D.N.Y. July 23, 2014) ........ 5

*King v. Allied Vision, Ltd.*,
65 F.3d 1051 (2d Cir. 1995) ........ 10

*Marsh v. Parrish* ("*Parrish*"),
2025 WL 2676389 (S.D.N.Y. Sept. 18, 2025) ........ 6

*Matthews Int'l Corp. v. Lombardi*,
2021 WL 1929266 (W.D. Pa. May 13, 2021) ........ 2

*N.Y. State Nat'l Org. for Women v. Terry*,
886 F.2d 1339 (2d Cir. 1989) ........ 10

*NLRB v. J.P. Stevens & Co.*,
563 F.2d 8 (2d Cir. 1977) ........ 7

*Nolan v. Primagency, Inc.*,
2008 WL 650387 (S.D.N.Y. Mar. 3, 2008) ........ 8

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*,
369 F.3d 645 (2d Cir. 2004) ........ 1, 7

*SEC v. Musella*,
818 F. Supp. 600 (S.D.N.Y. 1993) ........ 8

*SRA Ins. Agency, LLC v. Virtus LLC*,
2021 WL 1840065 (D. Kan. May 7, 2021) ........ 9

*Weitzman v. Stein*,
98 F.3d 717 (2d Cir. 1996) ........ 10

## PRELIMINARY STATEMENT

Defendants' response briefs are a remarkable attempt to deflect responsibility that underscore the need for coercive relief. They do not deny failure to comply with the Court's Order. Rather, they point fingers at the Court for issuing an "Unclear and Ambiguous" order, Parrish Br. (ECF 184) at 17; *see* Layton Br. (ECF 180) at 9; at Marsh for a purported "refusal to facilitate" their compliance, Parrish Br. at 12; and even at their own counsel, Parrish Decl. (ECF 186) ¶ 11; Layton Decl. (ECF 183) ¶ 7. The Court should not indulge Defendants' excuses. They retained hundreds of documents that are plainly Marsh property and replete with Marsh's Confidential Information for a month past the Court's deadline—and likely continue to retain Marsh's property today. Meanwhile, Defendants are working in senior roles for Marsh's direct competitor, risking the exact harms that this Court sought to avert by requiring that such documents be returned. A course correction via contempt is not only proper, but necessary.

## ARGUMENT

### I. Defendants Are in Contempt of the Preliminary Injunction.

Marsh's burden in this motion is to establish only three facts: "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004). While Defendants incorrectly attempt to graft on other requirements, Marsh has demonstrated Defendants' contempt under each element of the established test.

#### A. The Court's Order Was Clear and Unambiguous.

This Court ordered each Defendant to "return all Marsh property, including Confidential Information and Trade Secrets, on the last day of his or her employment or within five (5) days of this Order, whichever date is later." ECF 129 at 3. Until filing these responses, Defendants never

sought clarification from the Court and never voiced to Marsh that they were struggling to apply the Court's clear directive. Nevertheless, Defendants now assert, for the first time, that the Order was "Unclear and Ambiguous." Parrish Br. 17; *see* Layton Br. 9. This transparent *post hoc* attempt at deflection is belied by the plain text of the Order and Defendants' own conduct.

Defendants' principal complaint is that the Court "incorporated, but did not define, the term 'Marsh property.'" Parrish Br. 17; *see* Layton Br. 9. Other courts have affirmed that similar language is clear on its face.[1] Here, "Marsh property" plainly covered Defendants' work product, which they generated for Marsh's commercial benefit and for which they were compensated handsomely. Defendants' alternative readings are illogical. Parrish, Lugones, and Lynn claim to have narrowly interpreted "Marsh property" as "physical property like cell phones, laptops, and other equipment"—though they acknowledge in the next breath that "[a]ll such physical items" had been "returned to Marsh before this case was filed," Parrish Br. 17–18, leaving no need for the Court to command such return. Further, since the Court stated that Marsh property "includ[es] Confidential Information," which is intangible, "Marsh property" cannot mean physical property only. ECF 129 at 3. Layton complains that the term could apply to "her employment agreement with Marsh, paystubs, information about health insurance she obtained through Marsh, and even Marsh swag." Layton Br. 10. But those non-commercial items are clearly *her* personal property that Layton had no contractual duty to return.

The belatedly returned documents also qualify as Marsh's Confidential Information, which the Court was clear must be returned, and for which Defendants' Confidentiality Agreements provided a detailed definition: "'Confidential Information and Trade Secrets' are items of

---

[1] *See Matthews Int'l Corp. v. Lombardi*, 2021 WL 1929266, at *1–2 (W.D. Pa. May 13, 2021) ("all documents and information that belong to, or originated from," the former employer); *GlaxoSmithKline, LLC v. Brooks*, 2022 WL 1443735, at *10 (D. Md. May 6, 2022) ("all [employer] property in her possession").

information relating to the Company, its products, services, clients, suppliers, vendors, business partners, and employees that derive independent economic value, actual or potential, from not being generally known or available to the general public, but have been developed, compiled or acquired by the Company at its effort and expense, and which the Company has made reasonable efforts to protect its confidentiality." *E.g.*, Parrish Confidentiality Agreement (ECF 16-3) at 6.[2]

Defendants self-servingly misconstrue this definition so narrowly that *every* document they returned is either commercially valueless or non-secret. Parrish Decl. ¶¶ 6–8; Lugones Decl. (ECF 187) ¶ 6; Lynn Decl. (ECF 188) ¶ 9; Layton Decl. ¶ 6. But neither the Confidentiality Agreements nor the Court's Order gave Defendants unfettered discretion to decide which business documents Marsh had an interest to protect. To eliminate any confusion, the Agreements went on to specify eight categories of documents that qualify as "Confidential Information and Trade Secrets" under this definition, ECF 16-3 at 6–7—and, by extension, under the Court's Order, ECF 129 at 2 n.1. The documents returned by Defendants indisputably fall within those categories. For example:

- Parrish's text conversation with a prospective Marsh client regarding business that Marsh would attempt to capture, Mufson Aff. (ECF 164) ¶ 11.g, contained "client information, such as . . . leads and referrals to prospective clients." ECF 16-3 at 6, item (a)(iii).
- Lugones's slide decks outlining renewal strategies for Marsh clients, Mufson Aff. ¶ 11.e, contained "client information, such as . . . specific client needs and requirements, specific client risk characteristics, policy expiration dates, policy terms and conditions, [and] information regarding the markets or sources with which insurance is placed." ECF 16-9 at 6, item (a)(iii). And her spreadsheet of "new" and "expanded" Marsh clients, Mufson Aff. ¶ 14.b, contained "client information, such as the identity of the Company's clients . . . [and] the amounts paid by such clients to the Company." ECF 16-9 at 6, item (a)(iii).
- Lynn's strategy deck, Mufson Aff. ¶ 11.d, contained "financial and business information relating to the Company, such as . . . strategies and plans for future business, new business, product or other development, . . . and new marketing ideas." ECF 16-16 at 6, item (a)(i).

[2] Parrish, Lugones, and Lynn cite a long string of cases to argue against a trade secret claim. Parrish Br. 19–22. These cases are irrelevant, as Marsh has not claimed these documents are "Trade Secrets," i.e., "items of Confidential Information that meet the requirements of applicable trade secret law." *E.g.*, ECF 16-3 at 6. Marsh need only show that the documents are Marsh property or Confidential Information.

- Layton's image of team growth data and revenue statistics, Mufson Aff. ¶ 13, contained "financial and business information relating to the Company, such as information with respect to . . . profits [and] sales." ECF 16-21 at 6, item (a)(i).

Further, the record shows Defendants were *not* genuinely confused by the Court's Order. Parrish, Lugones, and Lynn were able to identify documents "relating to Marsh's business," and they immediately recognized the need to "confirm deletion of this material . . . from their devices." Marsh Ex. 11 (ECF 164-11). Layton was able to identify "materials which Marsh might regard as 'Marsh property,'" which she likewise "removed from [her] device." Marsh Ex. 14 (ECF 164-14) at 2. The problem was not confusion about *what* Defendants needed to return, but rather their severe delay in searching for it. Counsel for Parrish, Lugones, and Lynn ran searches "[b]eginning on September 19," McCoy Decl. (ECF 185) ¶ 18, and knew this review was not complete when they told Marsh on September 22 "[t]hey have nothing to return besides the laptops and the phones," Marsh Ex. 9 (ECF 164-9) at 1.[3] Counsel for Layton only reviewed her mobile phone data "between March 1, 2025 and July 30, 2025," Johnson Decl. (ECF 181) ¶¶ 14, 17, meaning Layton's review was also incomplete when counsel told Marsh on September 26 that she was "not in possession of any 'Marsh property,'" Marsh Ex. 10 (ECF 164-10).

Defendants did not struggle to interpret an ambiguous order. By their own admission, they had not even *seen* the documents at issue when the Court's deadline expired. Any purported ambiguity in the Order is a *post hoc* justification; it is not the cause of Defendants' contempt.

### B. Defendants Retained at least 440 Documents a Month Past the Deadline.

Tellingly, no Defendant argues that the Court's deadline was ambiguous. Each was required to return "all Marsh property" by September 23, i.e., "within five (5) days of this Order."

[3] Counsel ran these searches in response to Marsh's September 15 discovery requests. *See* Parrish Br. 14, 22. The claim that these requests created "competing obligations" with the preliminary injunction, *id.* at 22, is unavailing. A court order would clearly supersede a document request. And Defendants were able to meet both obligations: it was via a discovery production that Defendants returned the documents to Marsh on October 21. Marsh Ex. 11.

ECF 129 at 3. Though Defendants criticize the short deadline, McCoy Decl. ¶ 14; Layton Br. 3, that constraint was of their own making. Defendants were contractually obligated to return these materials "[i]mmediately upon the termination of employment." *E.g.*, ECF 16-3 ¶ 4.a. Marsh informed Defendants of their duties on July 22 and 24 and directed them to the eight categories of Confidential Information listed in their Agreements. Marsh Exs. 1–4 (ECF 164-1 to 164-4). Defendants had almost two months *before* issuance of the Order to image their personal devices and identify the documents they were required to return. Yet, Parrish, Lugones, and Lynn waited until September 19 (prompted only by Marsh's discovery requests) to start their review, McCoy Decl. ¶ 18, and Layton did not begin collections until September 16, Johnson Decl. ¶ 3. Once September arrived, the Court's urgency was genuine because Defendants were set to begin work at Howden. Without asking the Court or informing Marsh of their plan, Defendants granted themselves a month-long, and apparently still continuing, extension of the Court-ordered deadline. There is no "'gotcha'" tactic, *Heritage of Pride, Inc. v. Matinee NYC Inc.*, 2014 WL 3703871, at *1 (S.D.N.Y. July 23, 2014); Layton Br. 1, in holding Defendants accountable when they have ignored Marsh's requests since July and the Court's preliminary injunction since September.

Parrish, Lugones, and Lynn argue that Marsh withheld "requisite participation" in telling them how to comply. Parrish Br. 23–24. Even though the Court did not order *any* action by Marsh—it stated that "*Defendants* must return all Marsh property," ECF 129 at 3 (emphasis added)—Marsh did, in fact, participate. When Defendants first attempted, in July, to punt responsibility to Marsh to "provide a list of specific documents that Marsh would consider trade secret or confidential business information," Marsh Ex. 5 (ECF 164-5) at 2, Marsh promptly clarified that Defendants "are in the best position to know what they took or retained that belongs to Marsh," and directed them to the "eight categories of documents that must be returned" per the

Confidentiality Agreements, Marsh Ex. 6 (ECF 164-6) at 2. Parrish, Lugones, and Lynn's claim that they are "unable to certify compliance" without more information from Marsh, Parrish Br. 23, is also belied by their certification on September 22 containing no such caveat, Marsh Ex. 9 at 1.

Layton attempts to minimize the late production as "a mistake made by an e-discovery vendor," and argues that she is now "in full compliance with the letter and the spirit of the Order." Layton Br. 12–13. But her attorney declaration reveals that Layton's noncompliance goes well beyond her late discovery of photographs.[4] Layton's counsel evidently "limited [its] review" of her mobile phone data only "to documents dated between March 1, 2025 and July 30, 2025," on the logic that "there would have been no possibility of any Howden related contact before March 1, 2025." Johnson Decl. ¶ 14; *see id.* ¶ 17 (same date parameters for review of iCloud account). Whether or not documents would reflect "Howden related contact" has nothing to do with the Court's Order that she "return all Marsh property." ECF 129 at 3. Layton cannot invoke the "spirit" of the Order, either, Layton Br. 13—which was to avoid the "substantial risk that the Defendant[s] will use and/or disclose Plaintiff's confidential information," *Parrish*, 2025 WL 2676389, at *3 (S.D.N.Y. Sept. 18, 2025)—when she has unilaterally retained Marsh property that happens to predate her interactions with Howden. Layton likely still has Marsh property on her device from February 2025 and earlier; therefore, she is not in full or even substantial compliance.

Defendants also argue that Marsh does not allege *other* violations of the Order from prohibited employee and client solicitation or disclosure of Confidential Information and Trade Secrets. Parrish Br. 24; Layton Br. 12. Marsh certainly alleged those harms in its Complaint, Compl. (ECF 1) ¶¶ 120–185, and the Court has credited Marsh's preliminary evidence.[5] Further,

---

[4] Layton did not previously advise Marsh of the mistake by her vendor, having "decline[d]" to answer the questions Marsh posed in October. Marsh Ex. 14 at 3. The mistake by Layton's vendor is excusable, and Marsh accepts her explanation as to that issue. Other inadequacies of Layton's review process continue to support a finding of contempt.
[5] *E.g., Parrish*, 2025 WL 2676389, at *2 (crediting evidence on the SharePoint site that Layton discusses at length).

Marsh is not discounting the possibility that Defendants have wrongfully accessed, used, or disseminated the 440 documents at issue. At this point in discovery, Marsh simply lacks the information to know how Defendants have used those documents—which Marsh intends to test through expedited discovery. Marsh Br. 21 (listing topics). Regardless, Defendants' failure to "return all Marsh property" by the Court's deadline is a standalone basis for contempt. Marsh need not show different violations, before meaningful discovery, to prevail on this motion.

### C. Defendants' "Good Faith" Is a Mirage—And Not a Valid Defense.

Lastly, Defendants gesture to their "good faith efforts." Parrish Br. 24; Layton Br. 13. However, "the long-standing rule is that good faith or lack of willfulness is not a defense that the petitioner must negate." *NLRB v. J.P. Stevens & Co.*, 563 F.2d 8, 16 (2d Cir. 1977). "The rule is a salutary one, for the purpose of a motion for civil contempt . . . 'is not to punish intentional misconduct, but rather to enforce compliance with an order of the court and to remedy any harm inflicted on one party by the other party's failure to comply.'" *Id.* What Marsh must show is that Defendants have not "diligently attempted to comply in a reasonable manner," *Paramedics Electromedicina Comercial*, 369 F.3d at 655—and the efforts they have described fall well short.

Counsel's declaration for Parrish, Lugones, and Lynn reveals that they stumbled into these documents while working on Marsh's discovery requests—not as part of a reasonable, diligent effort to comply with the Order by September 23. The only steps their counsel took in response to the Order were to "confirm[] with Defendants that all Marsh property in the form of devices had been returned," "that Defendants did not have traditional client files or work papers in their home offices," and that "they did not store working client or shadow files" on "personal devices . . . portable storage devices, thumb drives, or other media." McCoy Decl. ¶ 16. Defendants acknowledge that they used their personal devices for work. *E.g.*, Parrish Decl. ¶ 10 (Parrish was

"permitted to use [his] personal device for work for Marsh over the past four years."). Yet, apparently, they failed to search those devices until Marsh served discovery. "Beginning on September 19," counsel ran searches "as a starting point to capture information that may be responsive to the discovery requests that Marsh served on September 15, 2025." McCoy Decl. ¶ 18. Parrish, Lugones, and Lynn knew that review was not complete on September 22, and they still told Marsh they had "nothing to return besides the laptops and the phones." Marsh Ex. 9 at 1.

Counsel for Layton self-imposed an unreasonable five-month responsive time period on her mobile phone data, only reviewing "documents dated between March 1, 2025 and July 30, 2025." Johnson Decl. ¶¶ 14, 17. Without reviewing the remainder—and without advising Marsh of the parameters they had unilaterally set—counsel then told Marsh, unequivocally, that Layton was "not in possession of any 'Marsh property.'" Marsh Ex. 10.[6] Having failed to review ESI over a majority of her time in Marsh's employment, Layton cannot claim reasonable diligence.

Defendants' "sense of nonurgency border[s] on indifference." *Aspira of N.Y., Inc. v. Bd. of Ed.*, 423 F. Supp. 647, 654 (S.D.N.Y. 1976). As of this filing, Defendants have had two and a half months *past* the Court's deadline to complete their return of Marsh property, as Marsh has been asking since July. Parrish, Lugones, and Lynn claim they are "unable to certify compliance," Parrish Br. 23, and Layton fails to acknowledge that she still has not reviewed mobile data prior to March 2025. Defendants' ongoing noncompliance removes any doubt: they cannot "demonstrate a diligent attempt to comply" where they are "still not in compliance with this Court's past orders." *Nolan v. Primagency, Inc.*, 2008 WL 650387, at *3 (S.D.N.Y. Mar. 3, 2008).[7]

---

[6] This was not Layton's first false statement, either. In initial disclosures on August 29—weeks *before* her counsel "began working . . . to collect [her] ESI for review," Johnson Decl. ¶ 3—Layton stated she was "not in possession of any Marsh materials." Marsh Ex. 7 (ECF 164-7) at 3.

[7] Defendants also suggest they should not be held in contempt because they "left it to [counsel] to perform the digital review." *See e.g.*, Parrish Decl. ¶ 11; Layton Decl. ¶ 7 (same). "But advice of counsel has never been a defense to contempt." *SEC v. Musella*, 818 F. Supp. 600, 606 (S.D.N.Y. 1993). Any grievances Defendants may have about their counsel's diligence are not for Marsh to address.

## II. Marsh's Proposed Remedies Are Appropriate.

The choice of contempt sanctions is committed to the Court's "broad discretion." *Citibank, N.A. v. McPartland*, 2023 WL 4424352, at *4 (S.D.N.Y. July 7, 2023). Marsh invites the Court to order such relief as it sees fit, Marsh Br. 25, and submits that its three requests are appropriate.

### A. Additional Discovery Is Needed to Confirm Defendants' Compliance.

Additional discovery is warranted because "Defendants are in sole possession of the evidence" regarding the documents they retained and how they may have been misused for Howden's benefit. *SRA Ins. Agency, LLC v. Virtus LLC*, 2021 WL 1840065, at *6 (D. Kan. May 7, 2021). Parrish, Lugones, and Lynn claim that Marsh seeks "discovery on discovery." Parrish Br. 25. This critique is misplaced; Marsh seeks credible verification of Defendants' compliance with the preliminary injunction, which is not the sort of "collateral" discovery that courts in this district have scrutinized. *Haroun v. ThoughtWorks, Inc.*, 2020 WL 6828490, at *1 (S.D.N.Y. Oct. 7, 2020). Marsh's requests go to potential misuse or misappropriation of Confidential Information, which *is* "directly relevant to a claim or defense." *Id.*; *see* Marsh Br. 21–22.

Layton argues against special discovery because "she has never lied to the Court or anyone else about her compliance with the Order." Layton Br. 20. But Layton twice represented that she did not have Marsh property: first in initial disclosures, Marsh Ex. 7 at 3, and again after the preliminary injunction, Marsh Ex. 10. Layton's unqualified statements were false: she had not started her document review as of the first and had not completed it as of the second. Courts have ordered discovery in these circumstances. *See Benthos Master Fund, Ltd. v. Etra*, 2022 WL 17819592, at *7, *19 (S.D.N.Y. Dec. 20, 2022) (noting contemnor's "documented pattern of making false statements during this case," and ordering "a forensic examination"). Scope and privilege can be addressed through a discovery plan; Marsh does not seek "unfettered access" to personal data. Layton Br. 22; Marsh Br. 21 (proposing to engage "a third-party forensics firm").

### B. A Coercive Fine Is Warranted.

Daily fines are the most common contempt remedy. *See Matter of Dickinson*, 763 F.2d 84, 88 (2d Cir. 1985) (the "court's discretion clearly permits" such fines). A meaningful daily fine would be well calculated to procure compliance. Other than a lack of motivation to obey the Court's Order, nothing precludes Parrish, Lugones, and Lynn from locating and returning the categories of Confidential Information that Marsh identified in July, Marsh Exs. 1–4, nor Layton from extending her ESI review beyond her arbitrary cutoff of March 2025. By returning the 440 documents (albeit late), Defendants have shown that they are perfectly able to return Marsh property when they care to. This daily fine would impart the missing urgency.

### C. Marsh's Request for Attorneys' Fees Is Proper.

Finally, contempt remedies should "compensate [Marsh] for losses resulting from the contemnor's past noncompliance," which here means an award of attorneys' fees. *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989). *Willful* noncompliance is "not necessarily [] a prerequisite to an award of fees and costs." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996).[8] Regardless, Defendants necessitated this motion (and Marsh's costs) by retaining Marsh property far past the Court's deadline, continuing to hold more Marsh property while they are employed by a direct competitor, and "declin[ing]" to provide any assurance that swift compliance could be accomplished by lesser means. Marsh Ex. 14 at 3; *see* Marsh Ex. 13 (ECF 164-13) at 2. Each of those decisions was willful.

## CONCLUSION

The Court should find all Defendants in civil contempt and award the requested remedies.

---

[8] *Compare Weitzman*, 98 F.3d at 719 n.1 (addressing *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1063 (2d Cir. 1995)), *with* Parrish Br. 27–28 (citing *King* on remand to the district court), *and* Layton Br. 19 (also citing *King*).

Dated: December 10, 2025

New York, New York

MARSH USA LLC

By its attorneys,

By: */s/ Harris M. Mufson*

Harris Mufson
Lee R. Crain
Kelly Herbert
Amanda LeSavage
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel.: 212.351.3805
Fax: 212.817.9505
hmufson@gibsondunn.com
lcrain@gibsondunn.com
kherbert@gibsondunn.com
alesavage@gibsondunn.com

Jason C. Schwartz (*pro hac vice*)
Ryan C. Stewart (*pro hac vice*)
Amanda C. Machin (*pro hac vice*)
Catherine McCaffrey
Nicole Santora
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, D.C. 20036
jschwartz@gibsondunn.com
rstewart@gibsondunn.com
amachin@gibsondunn.com
cmccaffrey@gibsondunn.com
nsantora@gibsondunn.com

Karl G. Nelson (*pro hac vice*)
Rachel W. Robertson (*pro hac vice*)
Brian Richman
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
knelson@gibsondunn.com
rrobertson@gibsondunn.com
brichman@gibsondunn.com

*Attorneys for Plaintiff Marsh USA LLC*