UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MARSH USA LLC,

                              Plaintiff,

            -against-

MICHAEL PARRISH, *et al.*,

                              Defendants.

**25 Civ. 6208 (GBD) (GS)**

**ORDER**

------------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

Defendants Michael Parrish, Giselle Lugones, and Robert Lynn ("Defendants") have, by letter-motion, moved to compel the deposition of Martin South, the President and CEO of Plaintiff Marsh USA LLC ("Marsh"). (Dkt. No. 170 ("Deft. Ltr.")). Plaintiff has submitted a letter opposing the motion on both procedural and substantive grounds. (Dkt. No. 172 ("Pl. Ltr.")). The Court heard oral argument on the motion on December 1, 2025. (*See* Dkt. No. 177). For the reasons set forth below, the motion is **GRANTED**.

## BACKGROUND

Until this past Summer, Defendants (along with co-Defendant Julie Layton) worked for Marsh, a leading insurance brokerage and risk management firm, heading up the firm's Florida region. (Complaint, Dkt. No. 1 ("Compl."), ¶¶ 2, 5, 35). Marsh filed this action on July 29, 2025, claiming that Defendants were in the process of moving to a competitor, Howden U.S. Services, LLC ("Howden"), and orchestrating an unlawful raid of over 90 Marsh employees and numerous Marsh

clients. (*Id.* ¶¶ 2, 8-9). Marsh claims that Defendants' actions violate non-competition, non-solicitation, and confidentiality covenants in their agreements with Marsh. (*E.g.*, *id.* ¶¶ 7, 124, 146, 168). Marsh asserts claims for breach of contract, declaratory judgment, breach of the faithless servant doctrine, and unfair competition. (*Id.* ¶¶ 120-207). The Complaint seeks, *inter alia*, compensatory, punitive, exemplary, and liquidated damages, as well as disgorgement of Defendants' compensation while employed by Marsh. (*Id.* at pp. 50-51 (Prayer for Relief)).

Marsh also seeks injunctive relief (*id.* at p. 50) and, shortly after commencing the action, filed a motion for a preliminary injunction. (Dkt. No. 14). On September 18, 2025, the Honorable George B. Daniels granted Marsh's motion, enjoining Defendants from communicating with current Marsh employees or clients and from using or disclosing any of Marsh's confidential information. (Dkt. No. 130, *reported as Marsh USA LLC v. Parrish*, No. 25 Civ. 6208 (GBD), 2025 WL 2676389 (S.D.N.Y. Sept. 18, 2025)). Judge Daniels then referred this matter to the undersigned for general pretrial supervision. (Dkt. No. 131). This Court held an Initial Case Management Conference on September 29, 2025 and entered a Case Management Plan and Scheduling Order, pursuant to which the parties are now conducting discovery. (Dkt. No. 146).

Before joining Marsh, Defendants worked as a team for another insurance brokerage firm, Aon Risk Services, Inc. ("Aon"). (Dkt. No. 82 Ex. 5 ("Parrish Decl.") ¶ 3). In mid-2021, Defendants left Aon for Marsh, allegedly after being recruited by

Marsh. (Parrish Decl. ¶ 5; Dkt. No. 82 Ex. 8 ("Lugones Decl.") ¶ 6). That move led to a lawsuit by Aon against Marsh, Defendants, and others, filed in state court in Florida on or about June 24, 2021 (the "Aon Lawsuit"). *See Aon Risk Services Inc. of Florida et al. v. Marsh USA, Inc. et al.*, No. 2021-015086-CA-01 (Fla. Cir. Ct.). Similar to the allegations made by Marsh here, Aon accused the defendants of orchestrating an unlawful raid of Aon's employees and clients, in breach of non-solicitation covenants and confidentiality obligations. (Dkt. Nos. 82-2 at 15-23 & 105 at 3). In connection with the Aon Lawsuit, Marsh and Defendants Lynn and Layton were jointly represented by the same outside counsel, Gibson Dunn. (Dkt. Nos. 82-2 at 1, 34 & 105 at 3).

Defendants claim they did nothing different in moving from Marsh to Howden than they had done when moving from Aon to Marsh, and that Marsh's actions and statements in connection with Defendants' departure from Aon and the ensuing Aon Lawsuit are inconsistent with the positions now taken by Marsh in this action. (*See, e.g.*, Dkt. No. 82 at 1, 3 n.1, 24; Dkt. No. 105 at 10; Parrish Decl. ¶¶ 22, 35;). Defendants have propounded document requests of Marsh relating to their move from Aon to Marsh (Oral Argument Transcript, Dkt. No. 202 ("Tr."), at 18:6-19:12), and Lynn and Layton separately filed a motion seeking to compel Gibson Dunn to turnover the client file related to Gibson Dunn's prior representation of them (Dkt. No. 100; see Dkt. No. 215).

The instant motion is part of Defendants' efforts to defend themselves in this case by pointing to Marsh's own actions and statements related to their move away

3

from Aon and to Marsh four years ago. Defendants claim that Martin South, who at the time was President of Marsh's U.S. and Canada regions, played the primary role in recruiting them to come to Marsh in late 2020 and 2021. (Deft. Ltr. at 2; Tr. at 12:6-22). According to Defendants, South had "direct conversations with them about the strategy and logistics of moving themselves and their clients" to Aon, told Defendant Lugones that he "expected that clients would follow [her]" to Marsh if she left Aon, and helped solicit her clients to move to Marsh. (Deft. Ltr. at 2 & Ex. A (citing Lugones Decl. ¶ 6)). Further, Defendants reported directly to South after they arrived at Marsh, until South was elevated to President and CEO in 2022. (*Id.* at 2; *see, e.g.*, Dkt. No. 20 Exs. 1, 7, 15 (Defendants' offers of employment from Marsh, dated June 13, 2021, each stating "you will report to the President of US & Canada, currently Martin South")).

Thus, Defendants argue that a deposition of South is likely to yield evidence concerning their defenses that they did not act improperly, as well as equitable defenses such as unclean hands and *in pari delicto*. (Deft. Ltr. at 2). Because Marsh has so far failed to agree to produce South for deposition, Defendants ask the Court to compel him to appear. (*Id.* at 3).[1]

For its part, Marsh offers several arguments as to why South's deposition should not be compelled. Marsh argues that Defendants' motion is premature and

---

[1] Defendants' letter motion also asks the Court to require Marsh to confirm that South's personal devices have been imaged and preserved. (*Id.* at 1, 3). In its response, Marsh represented that South's phones have now been imaged and argued that this request is moot. (Marsh Ltr. at 3). At oral argument, Defendants' counsel agreed that their imaging request is now moot. (Tr. at 3:21-4:7).

4

procedurally improper, both because Defendants failed to confer in good faith before seeking relief from the Court and because Defendants have not served a deposition notice for South.  (Pl. Ltr. at 1-2).  On the merits, Marsh argues that the apex doctrine shields South from deposition, as Defendants have failed to show that South has unique or superior personal knowledge relevant to this case and have also failed to exhaust less burdensome means to obtain the information they seek.  (*Id.* at 2-3).  The Court considers these arguments below.

## DISCUSSION

### A. Marsh's Procedural Objections

The parties dispute the sufficiency of Defendants' meet-and-confer efforts prior to moving to compel South's deposition.  The matter clearly is raised in email correspondence between counsel.  (Pl. Ltr. Ex. A at 3 (Defendants' counsel asking Marsh's counsel to confirm that South "will be made available for questioning")).  However, to discharge their obligation to meet and confer before bringing a discovery motion, parties are required to discuss the matter live, either at an in-person meeting or via phone or video conference; emails alone are insufficient.  (*See* Individual Practices in Civil Cases before Magistrate Judge Gary Stein at II.C.1).  Defendants claim the parties conferred on this issue via videoconference (Deft. Ltr. at 3; Tr. at 29:23-31:4); Marsh claims that they did not (Tr. at 36:13-37:23).

The Court need not resolve this dispute.  In its letter opposing Defendants' motion, Marsh does not simply contend that the parties have not properly conferred and indicate it is open to further discussions.  Rather, Marsh's letter makes its

5

position abundantly clear: South's deposition "would serve no legitimate discovery purpose at this phase." (Pl. Ltr. at 3). In the parties' emails, Marsh stated that the events in 2021 about which Defendants seek to depose South are "irrelevant," a position restated in their letter on this motion (Pl. Ltr. at 2-3) and at oral argument (Tr. at 38:9-25). While Marsh may not have explicitly said "no" to Defendants' request—even Defendants' letter states only that Marsh "refused to confirm" that they would make South available (Deft. Ltr. at 3)—it is plain at this juncture that Marsh is opposing South's deposition.

Under these circumstances, the Court finds that further meet-and-confer efforts concerning South's deposition would be futile and would unnecessarily delay the litigation. Therefore, to the extent Defendants' conferral efforts were wanting, the Court will excuse that deficiency. *See, e.g.*, *Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd.*, No. 07 Civ. 7983 (DAB) (HBP), 2017 WL 4129644, at *2 (S.D.N.Y. Sept. 18, 2017) ("Ordering the parties to meet and confer at this point would only 'further delay . . . resolving these issues on the merits.'" (quoting *Time Inc. v. Simpson*, 02 Civ. 4917 (MBM) (JCF), 2002 WL 31844914, at *2 (S.D.N.Y. Dec. 18, 2002)); *Gibbons v. Smith*, 01 Civ. 1224 (LAP), 2010 WL 582354, at *2 (S.D.N.Y. Feb. 11, 2010) (finding relief from the meet-and-confer requirement warranted where "any attempt to resolve the dispute informally would have been futile").

Marsh's second procedural objection to Defendants' motion is similarly unavailing. Marsh cites *Pegoraro v. Marrero*, 281 F.R.D. 122, 128 (S.D.N.Y. 2012),

6

for the proposition that courts have "no authority to compel witnesses . . . to attend any depositions which were neither noticed nor for which subpoenas were issued." (Pl. Ltr. at 2). But courts have distinguished *Pegoraro*, and ruled on the merits of the dispute even though a deposition notice had not been served, where the opposing party has lodged a blanket objection to the request. *See Full Circle Villagebrook GP, LLC v. Protech 2004-D, LLC*, No. 20 C 7713, 2022 WL 16646418, at *3 (N.D. Ill. Nov. 2, 2022); *Harvey v. THI of N. Mex. at Albuquerque Care Ctr.*, No. 12-CV_727 MCA/RHS, 2013 WL 12329870, at *3-4 (D.N.M. July 9, 2013). Here, Marsh has made its opposition to South's deposition sufficiently clear that it would be a needless formality to require service of a Rule 30 deposition notice.

## B. Apex Doctrine

### 1. Legal Standard

Although Rule 30 specifies that a party may depose "any person" without leave of court and does not have a specific carve out for top executives, "courts nevertheless have developed the so-called apex doctrine when evaluating objections to the deposition of a senior corporate executive." *GMO Gamecenter USA, Inc. v. Whinstone US, Corp.*, No. 22 Civ. 5974 (JPC) (KHP), 2024 WL 3833882, at *4 (S.D.N.Y. Aug. 14, 2024). Under this doctrine, a high-level executive is generally safeguarded from being deposed "absent a showing that the executive sought to be deposed 'has unique evidence, personal knowledge of the claims at issue,' and 'other witnesses are incapable of providing testimony about the conduct alleged.'" *Id*.

(quoting *Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 17 Civ. 6221 (KPF), 2020 WL 6273396, at *1 (S.D.N.Y. Aug. 28, 2020)).

In evaluating whether the apex doctrine applies, courts consider "the likelihood that the individual possesses relevant knowledge, whether another source could provide identical information, the possibility of harassment, and the potential disruption of business." *Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 122 (S.D.N.Y. 2015). While the apex doctrine provides an "additional layer of protection for senior corporate executives subject to depositions," *id.* (citation omitted), "senior executives are not exempt from deposition, and, because principles relating to apex witnesses are in tension with the broad availability of discovery, it is important to excuse a witness from giving testimony only in compelling circumstances," *Chevron Corp. v. Donziger*, No. 11 Civ. 691 (LAK) (JCF), 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013) (citation omitted).

The allocation of burden of proof on a motion to compel an apex deposition is not entirely clear. *Compare, e.g.*, *Chang v. Mizuho Sec. USA LLC*, No. 21 Civ. 3874 (MMG), 2024 WL 3824101, at *2 (S.D.N.Y. Aug. 15, 2024) (doctrine "insulates high-level company witnesses from testifying *unless the party seeking their testimony establishes* that the witness: (1) has unique, non-repetitive, firsthand knowledge of the facts at issue; and (2) that other less intrusive means have been exhausted without success") (emphasis added), *with Oakley v. MSG Networks, Inc.*, No. 17 Civ. 6903 (RJS), 2024 WL 4134903, at *3 (S.D.N.Y. Sept. 10, 2024) ("It is the [non-movant] *defendants* who must show that Dolan has nothing to contribute to this

8

litigation, and it is by no means clear that Dolan . . . only posses[es] information that duplicates the information that would be provided by lower-level MSG security officials." (emphasis in original; citations omitted)).  The Court need not determine who has the burden of proof here because, even assuming the burden is on Defendants, they have met their burden.[2]

### 2. Analysis

As an initial matter, although Marsh disputes that South's testimony would even be relevant, the Court rejects that argument.  The circumstances surrounding Defendants' move from Aon to Marsh in 2021 are plainly relevant, within the meaning of Fed. R. Civ. P. 26(b)(1), to the claims and defenses in this action.  *See, e.g.*, *DoorDash, Inc. v. City of New York*, 754 F. Supp. 556, 564 (S.D.N.Y. 2024) ("Relevance [under Rule 26(b)(1)] is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." (citations omitted)).  Defendants contend that South is among those at Marsh—indeed, the principal person at Marsh—who gave them guidance as to the rules of the road in switching firms, which Defendants claim they later relied on in leaving Marsh and is inconsistent with the positions taken by Marsh in this litigation.  (*See* Deft. Ltr. at 2; Tr. at 8:14-20; 13:10-14:25; 28:17-29:11).  Defendants are entitled to explore and develop evidence in support of that theory as part of discovery in this action.

---

[2] There is no dispute that South, as Marsh's CEO, qualifies for the protection of the apex doctrine.

Marsh protests that what happened in 2021 as no bearing on the central issue in dispute, which is whether Defendants breached the terms of their contracts with Marsh in 2025. (Pl. Ltr. at 2–3; Tr. at 44:5-12). Marsh asserts that Defendants' state of mind is irrelevant in determining their liability or breach of contract. (Tr. at 46:7-10). The Court is not prepared to agree, without further briefing, that the 2021 events are irrelevant (for discovery purposes) to Marsh's breach of contract claims. But even if it were to, Marsh's Complaint does not stop with its breach of contract claims. Marsh also asserts claims for unfair competition and breach of the faithless servant doctrine, and seeks punitive and exemplary damages, as well as injunctive relief. (Compl. ¶¶ 193-207; *id.* at pp. 50-51 (Prayer for Relief)). At a minimum, Defendants' state of mind and Marsh's own conduct may be relevant to Marsh's ability to establish those claims and obtain such relief.

Accordingly, South is a source of potentially relevant evidence in this case. This is not to say that the circumstances of Defendants' move from Aon to Marsh in 2021 necessarily will prove to be probative in this case or that evidence concerning those circumstances even will be admissible. The Court's task at this juncture is simply to decide whether such evidence meets the liberal standard for discovery under Rule 26(b)(1). The Court concludes that it does, and need go no further. *See DoorDash*, 754 F. Supp. at 564 ("'[I]t is not the function of this Court, in assessing relevance for purposes of discovery, to decide issues of admissibility or resolve potentially dispositive disputes,' because '[r]elevant information need not be

10

admissible'" (quoting *Favors v. Cuomo*, 285 F.R.D. 187, 218 (E.D.N.Y. 2012))); *see* Fed. R. Civ. P. 26(b)(1).

It is also clear that South has direct, personal knowledge of the relevant facts. Defendants assert without contradiction that they had direct communications with South, including a meeting in Florida. (Deft. Ltr. at 2; Tr. at 5:22-6:4; 25:19-26:11). Defendants also assert that it was South who, as their soon-to-be boss, gave them guidance as to how to navigate the move from Aon and helped them bring their clients from Aon to Marsh. (Def. Ltr. at 2; Tr. at 5:22-6:4). His testimony is unlikely to be cumulative or duplicative of that of other witnesses. Hence, South is uniquely positioned to provide relevant evidence based on his personal knowledge, satisfying this requirement of the apex doctrine. *See loanDepot.com, LLC v. CrossCountry Mortgage, LLC*, No. 22 Civ. 5971 (AS) (SLC), 2024 WL 2154189, at *3 (S.D.N.Y. Apr. 9, 2024) (finding that apex doctrine "does not warrant the extraordinary relief of precluding LD from deposing" defendant's COO where "[t]he parties do not meaningfully dispute that [the COO] had a role in CC's effort to recruit the individual Defendants" and he "is in the best position to answer" questions about those efforts).

Finally, Defendants have also adequately shown that other witnesses are not capable of providing the same testimony that South can provide. Notably, Marsh has not identified any other witnesses from whom Defendants can obtain the information they seek. (*See* Pl. Ltr. at 3; Tr. at 55:13-56:1). *See loanDepot.com*, 2024 WL 2154189, at *3 (rejecting apex-witness objection where party making the

11

objection "has not identified an alternative source from which LD can obtain the information"). Defendants' own declarations show that, in addition to South, a Marsh executive named Jeff Alpaugh, then the U.S. and Canada Growth and Industry Leader, initially approached Defendants to recruit them to come to Marsh. (Parrish Decl. ¶ 5; Lugones Decl. ¶ 6). Alpaugh, however, has since left Marsh, and is no longer within Marsh's control. (Tr. at 6:20-23; 24:1-4).

Thus, the Court finds that the apex doctrine does not present a basis for precluding Martin South's deposition in this case. This is not a situation where a party is trying to force a deposition of a CEO who has only a peripheral connection to the events at issue, without first attempting to obtain the information from other witnesses. South has direct and personal knowledge of the relevant events underlying a central defense, and there appears to be no one else at Marsh who has such knowledge. He is "a far cry from the prototypical apex witness, who sits removed from" the facts of the dispute. *Oakley,* 2024 WL 4134903, at *3.

To be clear, the Court is not directing that South's deposition take place by any particular date (other than the May 1, 2026 deadline for fact discovery in the Scheduling Order). (*See* Dkt. No. 146 at 1). Defendants have not sought to fix a date for South's deposition, and the parties are only beginning to discuss a schedule for depositions in the case, with document production still in its infancy. (Tr. at 18:6-13). When South's deposition will occur remains subject to the agreement of the parties. Further, the subjects about which South may be examined are limited to those set forth in Defendants' letter-motion and discussed above. Defendants

have not at this time demonstrated a basis for expanding the scope of the deposition to other topics.[3]

## CONCLUSION

For the reasons set forth above, Defendants' motion to compel the deposition of Martin South is **GRANTED**.

**SO ORDERED.**

DATED:   New York, New York
         December 17, 2025

_____
The Honorable Gary Stein
United States Magistrate Judge

---

[3] At oral argument, the Court asked Defendants' counsel whether they also intended to ask South questions relating to Defendants' departure from Marsh. Counsel responded in the affirmative, but could not proffer facts indicating that South has any unique, personal knowledge of those facts or that Defendants could not obtain this information from other witnesses at Marsh. (Tr. at 15:9-18:5). Instead, counsel speculated that South may have been directing other Marsh executives' dealings with Defendants during this period. (*See id.* at 15:23-24). This is insufficient to overcome apex doctrine protection. Consequently, at this juncture, Defendants will not be permitted to examine South about their departure from Marsh. Of course, Defendants may subsequently develop a factual basis for doing so, based on the testimony of other witnesses or information revealed in Marsh's document production.