

ATTORNEYS AT LAW

730 Third Avenue | 19th Floor
New York, New York 10017
212.785.2577 | fax 212.785.5203
www.carltonfields.com

February 26, 2026

The Honorable Gary Stein
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

   Re: *Marsh USA LLC v. Parrish et al.*, No. 1:25-cv-06208-GBD-GS
   **Motion to Compel Documents on Aon-Related Requests**

Dear Judge Stein:

   Pursuant to Federal Rule of Civil Procedure 37(a), Michael Parrish, Giselle Lugones, and Robert Lynn (the "Defendants") move to compel the production of documents regarding Aon Risk Services, Inc. ("Aon"). Defendants have requested documents related to Aon in their First Requests for Production of Documents, including in RFP Nos. 2, 3, 8, 13, 16-18, 26, 28, 29, and 32 (collectively, the "Aon-Related Requests," Ex. A). These Requests generally seek information regarding Marsh's recruitment of Defendants, clients, and employees from Aon, including Marsh's guidance and position on how to navigate Defendants' restrictive covenants with Aon. After the Court's ruling the parties exchanged numerous letters and engaged in good faith in several meet-and-confers to narrow their dispute but could not entirely resolve it.

   The Aon-related documents Defendants seek are central to claims and defenses in this case, including the positions that Marsh has adopted in recruitment efforts similar to those Howden has undertaken; Marsh's knowledge that certain clients are "personal clients" of the Defendants; Marsh's lack of any "protectible interest" in these relationships; and the industry standard for the movement of individuals and teams from one insurance broker to another. As this Court has previously held, "[t]he circumstances surrounding Defendants' move from Aon to Marsh in 2021 are plainly relevant, within the meaning of Fed. R. Civ. P. 26(b)(1), to the claims and defenses in this action." *See* Dec. 17, 2025, Order at 9, Dkt. No. 219. Further, this Court observed that Marsh's "claims for unfair competition and breach of the faithless servant doctrine, and. . . punitive and exemplary damages, as well as injunctive relief" demonstrate that "Marsh's own conduct may be relevant to Marsh's ability to establish those claims and obtain such relief." *Id.*

DISCUSSION

## I. The parties met and conferred and corresponded regarding Aon-related requests.

   Since the status conference hearing on December 1, 2025, the parties have found some common ground regarding the Aon-Related Requests but have again reached an impasse on certain requests. On December 9, 2025, the parties met and conferred regarding Defendants' Aon-related requests. On December 16, 2025, Marsh wrote a letter on the same subject and Defendants responded on January 8, 2026. Marsh then wrote a reply on January 29, 2026.

The Honorable Gary Stein
February 26, 2026
Page 2

**II.    Marsh's objections to the Aon-related requests oppose appropriate discovery.**

Marsh objects to Defendants' document request for communications involving or between John Doyle about the lift out from Aon to Marsh, including: the move of Defendants and the other Aon employees to Marsh, the move of clients from Aon to Marsh, the planning of the lift out, the financial aspects of the deal, the anticipated revenue gain, and how salaries and compensation were calculated for Parrish, Lynn, and Lugones based upon their expected business generation and book of business following them. *See* RFPs 2, 3, 8, 13, 26, 28, 29, 32. Marsh does not deny that Doyle may have such information (as it explicitly does for another person, Michelle Sartain). Marsh just asserts that Doyle, Marsh's CEO, is "an apex custodian," and that "Marsh will not consider including Mr. Doyle as a custodian" until Defendants identify "unique information in his possession."

In this District, the "apex witness doctrine" applies only to requests to depose senior executives, not requests to produce their communications. Concerns about apex depositions center on "the possibility of business disruption and the potential for harassment" of senior executives." *Chevron Corp. v. Donziger*, No. 11-cv-0691 (LAK) (JCF), 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013). Those concerns are not present with document collection and production because senior executives do not have to harvest or review their own emails in response to subpoenas or requests for production. *See Page v. Bragg Communities, LLC*, No. 5:20-CV-336-D, 2022 WL 17724407, at *3 (E.D.N.C. Dec. 15, 2022)(the so-called "apex doctrine,"… typically applies only to protect senior executives from attending costly and distracting depositions rather than from merely collecting and producing documents"); *but see In re: Facebook, Inc. Consumer Privacy User Profile Litigation*, 3:18-MD-02843-VC-JSC, 2021 WL 10282213 (N.D. Cal. Nov. 14, 2021) (order of special master referring to Mark Zuckerberg and Sheryl Sandberg as "apex custodians"). Moreover, it is likely that Doyle has relevant communications given his personal role in recruiting the Defendants and their colleagues.[1] Doyle met with Michael Parrish and Giselle Lugones at the Breakers resort in Palm Beach, Florida on or around May 19, 2021, as part of an effort to recruit them. Ex. B, Declaration of Giselle Lugones. Marsh has not shown why it should be exempt from collecting and producing Doyle's communications. *See Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 122 (S.D.N.Y. 2015)("Highly-placed executives are not immune from discovery."); *Haber v. ASN 50th Street, LLC,* 272 F.R.D. 377, 382 (S.D.N.Y.2011) ("no blanket prohibition on taking discovery from high-level executives," even where official denies personal knowledge).

Next, Marsh objects to the Defendants' request for "All Documents and Communications Regarding Communications between [Marsh] and the Defendants prior to the Defendants' resignations from Aon." RFP No. 16. Marsh has argued that the request for communications between Marsh and Defendants before they resigned from Aon is overbroad, unduly burdensome, and disproportionate. But there are only four defendants, their pre-resignation communications with Marsh did not span more than six months, and most of the communications can likely be found with a straightforward search for the Defendants' email domains or phone numbers (in text messages).

---

[1]    We are working through confidentiality issues with opposing counsel concerning the filing of documents in support of this letter but intend to supplement it soon.

The Honorable Gary Stein
February 26, 2026
Page 3

     Marsh also objects to Defendants' request for "Documents sufficient to identify each individual employed by [Marsh] who had knowledge Regarding the Defendants' move from Aon to Marsh prior to the Defendants' resignations from Aon, including but not limited to knowledge concerning client movement." RFP No. 17. Marsh argues that the request is overbroad, unduly burdensome, and disproportionate "because it seeks documents relating to *any* individual at Marsh who had *any* knowledge of Defendants' recruitment to Marsh, regardless of whether those individuals had meaningful knowledge or were involved in the recruitment." But the request seeks documents sufficient to identify individuals with knowledge, not the creation of a comprehensive list with the names of all such individuals. And it is a request that would inform Defendants of relevant custodians and potential witnesses. Marsh should not be permitted to further delay production of documents that respond to it.

     Finally, Marsh objects to Defendants' request for "All Documents and Communications that reflect [Marsh's] knowledge of any efforts to move customers or clients from Aon to Marsh prior to the Defendants' resignations from Aon." RFP No. 18. Marsh argues the request is overbroad, unduly burdensome, and disproportionate "because it sweeps in discovery relating to clients that had no relationship with Defendants or whose move to Marsh predated Defendants' recruitment to Marsh." But the request is not about competing for Aon's clients in general. Instead, it seeks information on efforts to move clients of Aon who worked with the Defendants. To the extent that the request as phrased would capture other Aon clients who came over to Marsh but were unrelated to Defendants, Defendants do not seek that information and agree to limit it to clients of Aon who worked with the Defendants. And what Marsh actually seeks is to rewrite the request in a different way: Marsh states that it "is willing to consider an alternative Request that identifies with specificity each client that Defendants are interested in and developing an appropriate scope of search to target those clients." But the request need not be limited to particular, named clients. Communications showing Marsh's efforts to move from Aon clients that Defendants worked with are relevant even if the communications are not about particular, named clients. As this Court noted at the hearing on Martin South's deposition, Marsh is alleging that Defendants "did precisely the same things that Marsh now claims was illegal and wrongful in moving away from Marsh to Howden that they did when they moved from Aon to Marsh, and lawyers and/or executives at Marsh told them at the time that those things were okay. That sounds relevant to me." Dec. 1, 2025, Hr'g Tr. 44:24–45:6 ("Hr'g Tr."). And Marsh's efforts to move customers and the individuals those customers work with speak to industry standards for the movement of individuals and teams from one insurance broker to another.

## CONCLUSION

     Defendants request an order compelling Marsh to produce documents responsive to Defendants' First Request for Production Nos. 2, 3, 8, 13, 16-18, 26, 28, 29, 32, or, in the alternative, a discovery conference with the Court to hear Defendants' motion to compel.

        Respectfully submitted,

        CARLTON FIELDS, P.A.

        *Michael L. Yaeger*

        Michael L. Yaeger