**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARSH USA LLC, <br><br>     *Plaintiff*, <br><br>   v. <br><br> PARRISH, ET AL. <br><br>     *Defendants*. | Case No. 1:25-cv-06208-GBD-GS |
| MARSH USA LLC, ET AL., <br><br>     *Plaintiffs*, <br><br>   v. <br><br> GRONOVIUS, ET AL. <br><br>     *Defendants*. | Case No. 1:25-cv-9130-JLR-GS |

**STIPULATED ORDER RE: PROTOCOL FOR THE PRODUCTION OF**
**ELECTRONICALLY STORED INFORMATION AND DOCUMENTS**

Plaintiffs Marsh & McLennan Companies, Inc., Marsh USA LLC, Mercer (US) LLC, and Marsh & McLennan Agency LLC, and Defendants Howden US Services, LLC, Howden US Specialty, LLC, Alfred Gronovius, Andrea Amodeo, Carlos Serio, Giovanni Perez, Janette Wilcox, Nathan Collins, and Richard Lennerth (hereinafter collectively referred to as the "Parties," or individually as a "Party"), by and through their undersigned counsel, hereby stipulate and agree as follows:

Pursuant to the Federal Rules of Civil Procedure, this Court's Local Rules, and the Protective Order in this action, the Parties agree to the following protocol for the production of discoverable documents and communications originating from hard copy sources and as electronically stored information ("ESI Protocol").

## I.    <u>Scope</u>

1.    This ESI Protocol will govern discovery of electronically stored information ("ESI") in the above-captioned litigation (the "Action") as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, this Court's Individual Practices, and any other applicable orders and rules.

2.    Nothing in this ESI Protocol is intended to alter or affect any Party's rights or obligations under any order by the assigned District Judge and Magistrate Judge, but shall be construed instead, wherever possible, as consistent with any order by the assigned District Judge and Magistrate Judge.

3.    Nothing in this ESI Protocol establishes any agreement regarding the subject matter or scope of discovery in this Action, or the relevance, authenticity, or admissibility of any documents.

4.      Nothing in this ESI Protocol shall be interpreted to require production or disclosure of irrelevant information or relevant information that is not proportional to the needs of the case or is protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  The Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents.

5.      The Parties acknowledge that multiple productions were made prior to agreement to this ESI Protocol or are being reproduced from prior actions (the "Pre-Protocol Productions"), and agree that deviations from the specifications set forth herein for Pre-Protocol Productions are not a violation of this ESI Protocol, and that the subsequent entry of this ESI Protocol is not an independently-sufficient basis to require any Party to bring a Pre-Protocol Production into compliance with this ESI Protocol.

## II.      Cooperation and Proportionality

6.      This ESI Protocol is subject to amendment or supplementation based upon the results of future meet and confers and by later agreement by the Parties, if necessary, in light of further developments.

7.      The Parties agree to use good faith efforts to resolve ESI issues and to the extent the Parties cannot agree, the Parties will present the issue to the Court consistent with Local Rule 37.2, as modified by Individual Rules of Practice.

## III.      Definitions

8.      "**Custodian**" is defined as a person who possesses a Document.  A Custodian often will be, but is not necessarily, the author of a Document.  For example, many Documents, such as messages transmitted to more than one person through electronic mail, will have more than one Custodian.

9. "**Document**" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Rule 26.3(c).

10. "**Electronically stored information**" or "**ESI**," as used herein has the same meaning as in Rules 26 and 34 of the Federal Rules of Civil Procedure. Electronically stored information shall not include information that is not reasonably accessible. The following types of data stores are presumed to be inaccessible, therefore are not ESI, and therefore are not subject to discovery absent a particularized need for the data as established by the facts and legal issues of the case:

    a. Random Access Memory and similar data that is difficult to preserve without disabling the operating system;

    b. back-up data that is reasonably believed to be duplicative of data that are more accessible elsewhere; and

    c. program files.

11. "**Hard-Copy Document**" means a document or record existing in paper or other tangible, non-electronic form, including any paper printout of electronically stored information. A printout of ESI is a duplicate of the ESI unless it contains additional handwritten notes, highlights, or other distinguishing markings or additions.

12. "**Native Format**" means and refers to the format of ESI in which it was generated and/or as used by the producing Party in the ordinary course of the Party's business and/or the Party's regularly- conducted activities.

13. "**Metadata**" means: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified

4

such native file and which describes the characteristics, origins, usage, and/or validity of the electronic file; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

14.    "**Optical Character Recognition**" or "**OCR**" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

15.    "**Hash Value**" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set.

16.    "**Confidentiality Designation**" means the legend affixed to Documents for Confidential or Highly Confidential Information as defined by, and subject to, the terms of the Parties' Protective Order in this Action.

17.    "**Load file**" means an electronic file provided with a production set of document images that facilitate the loading of such information into a receiving Party's document review platform, and the correlation of such data in the platform.

## IV.    Data Sources and Culling Criteria

18.    **Custodians**.  The Parties agree to meet and confer, upon request, regarding the custodians for whom each producing Party will collect and produce Documents that are responsive to the Parties' requests for production (subject to the Parties' objections to those requests for production).

19.     **Custodial Collections and Data Sources.**  The Parties agree to meet and confer, upon request, regarding data sources which may contain potentially responsive ESI.

20.     **Search Queries.**  The Parties agree to meet and confer, upon request, regarding the formulation of search queries.  As part of that meet and confer effort, the Parties agree to provide hit reports upon reasonable request.

21.     **Email Threading.**  The Parties agree that they may use email threading to narrow the universe of documents for review.  Where the most inclusive email (that is, the latest email in a chain) is responsive and non-privileged, the Parties may elect to produce only the most inclusive email.  However, where the most inclusive email contains only privileged or non-responsive information, the Parties may also elect to produce the latest email in the chain that contains all of the responsive, non-privileged information from the email chain.  This ESI Protocol does not change the Parties' obligation to produce responsive, non-privileged "branches" of an email chain that:  (i) are not included in the most-inclusive email; or (ii) contain at least one attachment that is different than the attachment(s) to the most-inclusive email.  Solely for purposes of identifying whether an email has at least one attachment that is different than the attachment(s) to the most-inclusive email, the Parties may disregard files that contain no substantive content (e.g., blank .htm files and files that contain only company logos).

22.     **Technology-Assisted Review**.  If a producing Party uses any sort of technology-assisted review, machine learning, or similar analytics tools to cull the document universe, the producing Party must disclose the tools used to the other Parties.  Upon request of the Party that propounded the relevant discovery, the Parties will meet and confer to discuss the use of such tools.  All Parties reserve the right to make reasonable objections to the use of such tools to cull the document universe.

23.    **Password Protected Files**.  The Parties agree to utilize commercially reasonable efforts to open password-protected or encrypted files, upon request.  A producing Party will identify password-protected documents that it has been unable to open by providing slipsheet indicating "Password-Protected File."

24.    **System Files**.  The Parties may exclude system-generated files and folders that are not likely to contain user-created files from their review (e.g., by DeNISTing).

25.    **De-Duplication Across Custodians**.  A Party is only required to produce a single copy of a responsive Document, and a Party shall make reasonable efforts to de-duplicate responsive ESI (based on MD5 values at the document level) across Custodians.  The producing Party will identify all Custodians a particular Document, including any that were eliminated through de-duplication.  If all recipient Custodians are documented, the producing Party need only produce a single copy of the particular Document.  For emails with attachments, the Hash Value shall be generated based on the parent-child document grouping, and only email messages in which the parent Document and all attachments are exactly the same will be considered duplicates.  The Parties will provide a Beginning Family Bates Number and Ending Family Bates Number for each produced attachment in the data load file.  Prior drafts of Documents will not be considered duplicates, although the Parties acknowledge that a draft of a Document may be responsive whereas a final copy is not, and vice-versa.  The Custodian and FilePath will be included (for all available copies of responsive ESI) in the respective CUSTODIAN(S) and FILEPATH(S) fields in the production load file.  In addition, if the email files were collected directly from the MS Exchange server, outlook.ost files may be excluded from processing as duplicative of outlook.pst files unless only the .ost file version is available.

7

26.     Upon reasonable request, the Parties will disclose any method employed to unitize ESI (e.g., based on passage of time or content of communications).  The Parties will confer in good faith about any objections to the unitization methods employed.

## V.     Hard-Copy Documents

27.     The Parties will produce Hard-Copy Documents as single-page, color TIFF images (minimum 300 DPI resolution) with coded data contained in a separate file.  The minimum fields for a scanned Hard-Copy Document record will be BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN indicating the beginning and ending Bates numbers, attachment ranges of all Documents, and the custodian information.  Hard-Copy Documents shall be OCR'd and the OCR text provided as .txt files (one per Document), to the extent practicable.

28.     If a Hard-Copy Document consists of more than one page, the Unitization of the Document and any attachments shall be maintained as it existed in the original Document, so that each Document will not be split, but instead the pages thereof shall be sequenced and saved together, as they existed in the original.  Separate documents should not be merged into one document.

## VI.     Electronically Stored Information

29.     Except for those Documents noted in Paragraphs 31 and 34, the Parties will produce Documents originating as ESI in TIFF format with extracted text, along with the below-listed Metadata fields when available.  The Parties will provide a standardized .DAT Load File, which will include a Bates Number field to match text and Metadata with TIFF images.  With respect to ESI, data on the Load File will include the following fields; to the extent the fields in the Load File are named differently, the Parties will confirm the relationship between the produced fields and the fields in the below list:

a) Beginning Document Bates Number
b) Ending Document Bates Number
c) Beginning Family Bates Number or Begin Attach (begins with 1st page of parent)
d) Ending Family Bates Number or End Attach
e) Custodian or Source
f) Duplicate Custodians or All Custodians
g) Confidentiality Designation
h) Page Count
i) Redaction (Y/N)
j) Chat or message participants (if available), including display name and number
k) Document Creation Date (if available)
l) Document Last Modified Date (if available)
m) Document Last Modified Time (if available)
n) File Author (if available)
o) File Name (including extension)
p) File Extension
q) Document Type
r) From
s) To
t) CC
u) BCC
v) Subject
w) Email Date Received (UTC or GMT)
x) Email Time Received (UTC or GMT)
y) Email Date Sent (UTC or GMT)
z) Email Time Sent (UTC or GMT)
aa) File Path (which shall include either the name of the folder which contained the original document, if available, or the email folder, if available)
bb)
cc) File Size
dd) Nativelink (A relative path to the native file (native files only))
ee) Textpath (A relative path to the text file (text files only))
ff) Timezone (Time zone in which the document was processed)
gg) MD5 Hash Values

30.     For purposes of production under this Protocol: (i) Microsoft Word documents will be processed/rendered in a manner that reflects tracked changes and comments (e.g., "Final Showing Markup"), to the extent reasonably feasible; (ii) Microsoft PowerPoint presentations will include speaker notes and any hidden slides; and (iii) Microsoft Excel spreadsheets produced in Native Format will preserve formulas, pivot tables, and macros, and any responsive hidden rows/columns/sheets will be included (or unhidden) prior to production.  Unless otherwise agreed,

all date and time Metadata fields will be produced in standard format (MMDDYYYY for dates; HH:MM:SS for times) and normalized to UTC (GMT); the Timezone field will identify the time zone applied in processing.

31.    The Parties may redact (i) information that is privileged or protected from discovery as work product or by reason of any other applicable privilege or immunity; and (ii) information subject to non-disclosure obligations imposed by governmental authorities, law, or regulation (e.g., protected personal information).  The Parties will produce redacted Documents in TIFF format with corresponding searchable OCR text and the associated Metadata for the document, ensuring the redacted content is fully protected from disclosure.

32.    The Parties will produce spreadsheets (e.g., Microsoft Excel) in Native Format, accompanied by a placeholder TIFF bearing the Bates number and Confidentiality Designation. Where a spreadsheet contains redactions, the producing Party may choose to produce either: (a) a redacted native that does not reveal redacted content (including through formulas, hidden cells/sheets, comments, Metadata, or prior versions); or (b) the spreadsheet in non-Native Format, as an image with redactions.  If a Party elects to produce a redacted spreadsheet in non-Native Format under subsection (b), the following procedures will govern:

- The receiving Party retains the right to request, and the producing Party shall provide, a natively redacted version of any such spreadsheet (redacted consistently with subsection (a)), up to a total of 100 de-duplicated spreadsheets.

- Beyond those 100 de-duplicated spreadsheets, any receiving Party may make reasonable additional requests for a producing Party to make production of a natively redacted version of any spreadsheet produced in non-Native format.  The producing Party's election to produce in non-Native Format in the first instance shall not be cited, referenced, or

otherwise relied upon—whether as to burden, proportionality, cost-shifting, waiver, timeliness, or any other objection—to refuse, condition, or delay production of the natively redacted version, and the producing Party bears the burden of any such production.

33.    The Parties shall assign a Bates Number to individual pages of TIFF Documents and a Bates Number to each Document produced in native format.  Bates Numbers shall be unique across the entire document production and sequential within a given Document.

34.    The Parties acknowledge that nothing in this ESI Protocol waives, restricts or eliminates the Parties' respective obligations prescribed in Rule 26(e) of the Federal Rules of Civil Procedure.

35.    The Parties will produce in Native Format those Documents that do not convert well to TIFF images (e.g., oversized drawings, picture files, audio and video files), or will ask the receiving Party to meet and confer regarding a reasonable alternative form of production.  The file name for the Documents produced in Native Format will consist of a Bates Number and a Confidentiality Designation if available.  The Parties will provide a corresponding placeholder TIFF image for native files included in a production.

### VII.    Privilege Log and Work Product Claims

36.    The Parties may withhold Documents from production by designating the Documents privileged pursuant to a claim of attorney-client privilege, work product protection, or other applicable privilege or immunity in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court, including Local Civil Rule 26.2.  The parties will meet and confer regarding the scope of documents to be included in a privilege log.  Nothing in this protocol should be interpreted as a waiver of any party's rights with respect to any dispute over the scope of documents to be included in a privilege log.

37.     The Parties agree that they will provide, at minimum, the author, document date, file name, email subject, sender, recipients, and record type information, as applicable, for documents over which a claim of privilege—in whole or in part—is made.  Such information may be redacted for privilege but must be clearly labeled as such (e.g., "[email subject redacted for privilege]") and an appropriate claim for privilege made.

38.     The Parties agree that they will respond promptly and in good faith to inquiries regarding the volume of documents set aside for further privilege review and potential logging.

39.     Pursuant to Rule 502(d) of the Federal Rules of Evidence, the production or disclosure of any documents protected from discovery, including under the attorney-client privilege, work product doctrine, the joint defense or common interest privilege, privacy laws and regulations, or any other immunity from discovery (collectively "privilege or protection"), and accompanying Metadata, does not result in the waiver of any privilege or protection, including subject matter waiver, associated with such documents or information as to the receiving Party or any third parties in this or in any other state or federal proceeding regardless of the circumstances of the disclosure.  Federal Rule of Evidence 502(b) does not apply to any disputes regarding such materials, and instead this stipulation governs all disputes regarding such documents and materials produced in this litigation.  This paragraph provides the maximum protection allowed by Federal Rule of Evidence 502(d) with regard to such documents or information.  Nothing contained herein requires the production of privileged documents.

40.     To the extent any party is aware that it has obtained privileged documents, has received a claw-back notice, or it is reasonably apparent that the party has obtained, privileged or protected information through production, disclosure, or communications, such documents and/or information may not be submitted to the Court, presented for admission into evidence, or sought

12

in discovery in this proceeding or in any other proceeding or action. The party must immediately notify the opposing party of its possession of such privileged information and certify the return or destruction of the documents and/or information.

### VIII.  Security

41.     Any media on which Documents are produced may be encrypted by the producing Party. In such cases, the producing Party shall transmit the encryption key or password to the requesting Party under separate cover upon service of the encrypted media.

### IX.     Non-Party Discovery

42.     The issuing Party is responsible for producing any Documents obtained under a subpoena to all other Parties as soon as practicable, but in no event later than five (5) business days after receipt. Any Documents the issuing Party receives may be disseminated to all other Parties in the format in which such Documents are received by the issuing Party.

43.     Nothing in this ESI Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or any third party to object to a subpoena.

### X.      Miscellaneous

44.     To the extent the Parties determine, in the course of preparing productions of Documents, that complying with any term of this ESI Protocol is impossible or not feasible, the Parties will work together in good faith to reach agreement on how to address the issue. If the forms of production allowed by this ESI Protocol present an undue burden or cost for a Party, the Parties shall meet and confer to try to agree on a reasonable, alternative form of production. Conversely, if the form of production allowed by this ESI Protocol is not adequate for usability and searchability of Documents, the Parties shall meet and confer to try to agree on a reasonable, alternative form of production. Nothing in this ESI Protocol prohibits a Party from seeking relief

from this ESI Protocol pursuant to the Federal Rules of Civil Procedure and this Court's Local Rules.

45.    This Stipulation may be modified by an amended Stipulation signed by all Parties or by the Court for good cause shown.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

SO STIPULATED AND AGREED:

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Amanda C. Machin*
Harris Mufson
Lee R. Crain
Amanda L. LeSavage
200 Park Avenue New York,
NY 10166 Tel.: 212.351.3805
Fax: 212.817.9505
hmufson@gibsondunn.com
lcrain@gibsondunn.com
alesavage@gibsondunn.com

Jason C. Schwartz (pro hac vice)
Ryan C. Stewart (pro hac vice)
Amanda C. Machin (pro hac vice)
Catherine McCaffrey
Nicole Santora
1700 M Street, NW
Washington, D.C. 20036
jschwartz@gibsondunn.com
rstewart@gibsondunn.com
amachin@gibsondunn.com
mccaffrey@gibsondunn.com
nsantora@gibsondunn.com

Karl G. Nelson (pro hac vice)
Rachel W. Robertson (pro hac vice)
Brian Richman
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
knelson@gibsondunn.com
rrobertson@gibsondunn.com
brichman@gibsondunn.com

*Attorneys for Plaintiffs*

CARLTON FIELDS, P.A.

By */s/ Michael Yaeger (by permission)*
Kevin P. McCoy (admitted pro hac vice)
David R. Wright (admitted pro hac vice)
4221 W. Boy Scout Blvd., Ste. 1000
Tampa, FL 33603
Telephone: 813-223-7000
Fax: 813-229-4133
Email: kmccoy@carltonfields.com
      dwright@carltonfields.com

Michael L. Yaeger
730 3rd Ave., 19th Fl.
New York, NY 10017
Telephone: 212-785-2577
Fax: 212-785-5203
Email: myaeger@carltonfields.com

Steven J. Brodie
700 NW 1st Avenue, Ste. 1200
Miami, FL 33136
Telephone: 305-539-7302
Fax: 305-530-0055
Email: sbrodie@carltonfields.com

*Attorneys for Defendant Alfred Gronovius,*
*Michael Parrish, Giselle Lugones, Robert Lynn*

DORSEY & WHITNEY LLP

By */s/ Kathryn A. Johnson (by permission)*
Jeremy E. Deutsch
Krista E. Bolles
51 West 52nd Street
New York, NY 10019
(212) 415-9238
deutsch.jeremy@dorsey.com
bolles.krista@dorsey.com

-and-

Kathryn A. Johnson (pro hac vice)
Ryan E. Mick (pro hac vice)
50 South 6th Street, Suite #1500
Minneapolis, MN 55402
(612) 492-6613
johnson.kate@dorsey.com
mick.ryan@dorsey.com

15

*Attorneys for Defendants Andrea Amodeo, Carlos Serio, Giovanni Perez, Janette Wilcox, Nathan Collins, and Richard Lennerth, Julie Layton*

AKIN GUMP STRAUSS HAUER & FELD LLP

By: */s/ Richard J. Rabin (by permission)*
Richard J. Rabin
Michael Kahn
Katherine Porter
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
rrabin@akingump.com
mkahn@akingump.com
kporter@akingump.com

Robert G. Lian, Jr. (pro hac vice admission)
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4358
Facsimile: (202) 887-4288
blian@akingump.com

Laura P. Warrick (pro hac vice admission)
2300 N. Field St., Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
lwarrick@akingump.com

*Attorneys for Defendants Howden US Services, LLC and Howden US Specialty, LLC*

**FOR GOOD CAUSE SHOWN, IT IS SO ORDERED**.

DATED:<u>  May 15, 2026  </u>

Hon. Gary Stein
United States Magistrate Judge

16