UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARSH USA LLC, | |
| Plaintiff, | |
| v. | Case No. 1:25-cv-06208-GBD-GS |
| MICHAEL PARRISH, GISELLE LUGONES, ROBERT LYNN, and JULIE LAYTON, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO JULIE LAYTON'S
MOTION TO MODIFY THE PRELIMINARY INJUNCTION ORDER**

Plaintiff Marsh USA LLC ("Marsh") opposes Defendant Julie Layton's request that the Court modify its preliminary injunction order, ECF No. 129, to "expressly provide" that the employee and client non-solicitation restrictions the order imposes on her are subject to a one-year limit, expiring July 21, 2026. ECF No. 252 at 3. The preliminary injunction contains no expiration regarding Layton's non-solicitation obligations. If any expiration is to be applied, it should account for the period of time that Layton violated her legal and contractual obligations to Marsh. Any other result rewards Layton for her misappropriation of Marsh's confidential information to help Howden[1] unfairly compete for clients and her solicitation of Marsh employees to depart for Howden while she remained employed by Marsh. Specifically, if modified to include an expiration of the non-solicitation period, the injunction as applied to Layton should expire one year *and* 67 days from the date of her resignation.[2] The Court has the equitable authority to extend the duration

---

[1] "Howden" is used interchangeably to refer to Howden US Services, LLC, Howden US Specialty, LLC, and Howden Group Holdings Limited, as applicable.

[2] Document discovery remains in the early stages in this case. Marsh expects that additional evidence of Layton's contractual breaches and disloyal service may come to light and reserves the right to seek additional tolling in the future. Defendants Michael Parrish, Giselle Lugones, and Robert Lynn have not moved to modify the preliminary injunction as applied to them. To the extent they do, their restrictive periods should also be tolled to account for their

1

of Layton's restrictive covenants to reflect the period of her misconduct and disloyal service, and should modify its preliminary injunction order only to that extent.[3]  *See Marsh USA Inc. v. Karasaki*, 2008 WL 4778239, at *21 (S.D.N.Y. Oct. 31, 2008) (enforcing entirety of one-year term of non-solicitation agreement beginning from the date preliminary injunction issued due to defendant's "flagrant breach"); *N.Y. Real Estate Inst., Inc. v. Edelman*, 42 A.D.3d 321, 322 (1st Dep't 2007) (recognizing a court's equitable power to extend the duration of a restrictive covenant "for the length of time that the offending party was in violation of the agreement").

As the Court recounted in its preliminary injunction order, Layton's contract forbid her from soliciting Marsh employees and clients.  Specifically, Layton was forbidden from directly or indirectly soliciting Marsh employees and clients with whom she came into contact for business purposes or about whom she obtained Marsh confidential information and trade secrets during the last two years of her employment.  ECF No. 16-20 §§ 2–3.  Her employee non-solicitation restrictions applied "both during employment with [Marsh] and for a period of twelve (12) months thereafter." *Id.*  Her client non-solicitation restrictions applied for the same "period of twelve (12) months." *Id.*  In granting Marsh's motion for a preliminary injunction, the Court found that Defendants (including Layton) solicited Marsh employees by "contacting [them] to announce their departure to Howden, sharing higher compensation and promotions being offered by Howden, and offering to connect them to Howden." ECF No. 130 at 3.  The Court also found a likelihood that Marsh would suffer irreparable harm from the "damage" caused by Defendants to its client

---

disloyal service and contractual breaches.  Marsh reserves the right to address these Defendants' applicable tolling periods through the submission of evidence as to their unlawful conduct.

[3] Elsewhere in her motion, Layton also requests that the Court modify its order to "explicitly state" that "only the confidentiality restrictions . . . remain in effect." ECF No. 252 at 2.  Any change to these restrictions is unnecessary given her Confidentiality Agreement with Marsh is not similarly time-limited. *See* ECF No. 16-21.  The fact that those restrictions remain in effect is all the more critical given the flagrant violations of this Court's preliminary injunction order Marsh identified in its pending motion for contempt and sanctions. ECF No. 163.

relationships and their "use and/or disclosure" of Marsh's confidential information. *Id.* at 5. Specifically as to Layton, the Court found that her use of Marsh's confidential client information "a month before the departure of clients and employees . . . bolster[ed] the likelihood of Marsh's success" on a breach of contract claim. *Id.* at 4.

In a separate lawsuit involving Howden and several of Defendants' top lieutenants, Judge Rochon similarly recounted in her own preliminary injunction order how Howden worked hand in glove with Layton to carry out this raid. *Marsh USA LLC et al. v. Gronovius et al.*, No. 25-cv-9130 (S.D.N.Y.), ECF No. 181 at 21–22. Judge Rochon specifically noted that "in connection with Layton's solicitation of a Marsh employee, Howden sent an offer letter to that employee's personal email offering increased compensation to persuade her to join Howden." *Id.* As Judge Rochon observed, Defendants' and their top lieutenants' misconduct "facilitated Howden's entry into the United States market with clients and staff." *Id.* at 6.

It is precisely this misconduct that warrants tolling of Layton's contractual obligations.

### 1. Layton Flagrantly Violated Her Contract and Duty of Loyalty Starting No Later Than May 20, 2025.

The evidence confirms that for at least 67 days (from approximately May 20, 2025 to July 25, 2025), Layton worked to solicit numerous Marsh employees while she remained on Marsh's payroll as one of the senior-most employees in its Florida Zone. She did so arm-in-arm with Mark Karrenbauer, Marsh's former Chief of Staff for the Florida Zone—now Howden's Chief Human Resources Officer in the U.S. Mufson Decl. ¶ 2. Karrenbauer was one of the very first Marsh employees to act as Howden's agent in this raid, ████████████████████ ████████████████████. Mufson Decl. Exs. 3; 5. Layton soon followed, receiving her own Howden offer letter on June 30 and resigning from Marsh on July 21. Mufson Decl. Ex. 7; ECF No. 81 ¶ 2. As Layton herself later stated, ████████████████████

████████████████████████████████. Mufson Decl. Ex. 19. Beginning on May 20 and continuing through the date that Karrenbauer joined Howden and Layton received her Howden offer, they maintained constant communication. *See, e.g.*, Mufson Decl. Exs. 1; 2; 6; 8. Their communications culminated in the concerted execution of Howden's scheme to solicit Marsh's employees.

With Karrenbauer as her conduit to and partner at Howden, Layton launched a focused effort, lasting at a minimum until July 25, to solicit numerous employees to leave Marsh and join Howden, all behind Marsh's back. ████████████████████████████

████████████████████████████████████████████

████████████████████. Mufson Decl. Exs. 10; 13; 14; 20. Layton informed one of her targets on July 10 that she was leaving "for a better opportunity," told her that she would "increase [her] salary by 40% if she joined her," "asked for [her] personal email address and said that [she] would receive an email," and "told [her] not to speak with anyone or text anyone about [their] conversation." ECF No. 109 ¶ 4. That is textbook solicitation and disloyal service. *Karasaki*, 2008 WL 4778239, at *20.

Her unabashed solicitation continued in the ensuing days. On July 18, for instance, Layton informed another of her targets "that the entire group was leaving to join Howden," "instructed [him] to provide her with [his] letter of resignation," "asked [him] for [his] personal email address" so he could receive an employment offer, and "told [him] not to talk to anyone else about this conversation." ECF No. 23 ¶ 6. ████████████████████████████

████████████████████ telling Karrenbauer to "make sure offer letters" are not "contingent on backgrounds," which he refused, █████████████████████████████████,

████████████████████████████████████████████ Mufson

4

Decl. Exs. 9; 13; 15; 21. When one of Layton's targets communicated to her on July 21 that she intended to remain at Marsh, Layton pushed Karrenbauer for a revised offer with increased compensation to be issued to her. ECF No. 109 ¶ 10; Mufson Decl. Ex. 15. ███████████ ████████████████████████████████████████, confirming with Karrenbauer on July 21, for instance, that "[a]ll mine resigned[.]" Mufson Decl. Exs. 15; 21.

For much of the May 20-to-July 25 period, Layton's employee solicitation went hand-in-hand with her solicitation alongside Howden of Marsh clients. Layton began collecting Marsh client information ahead of her departure as early as June 13. That day, she requested that a Marsh employee whom she later successfully solicited to join Howden send her "a listing of all the accounts you are currently on," without providing any business rationale. Mufson Decl. Ex. 4. On June 26, she then instructed her direct reports, including those she later solicited, to upload confidential Marsh client information to a newly-created SharePoint, something that she had "never before directed [her] team" to do and which was "atypical of her management style." ECF No. 23 ¶¶ 3–5, Ex. A; ECF No. 109 ¶ 11. That information "includ[ed] how much each client account generated, the names of the Marsh employees responsible for servicing each account, and particulars of policy management." ECF No. 23 ¶ 4. Layton accessed this SharePoint site on at least June 27 and June 30, and continued to access files on the SharePoint system related to Marsh employees and clients between July 7 and July 17. ECF No. 115 ¶¶ 11–14. Armed with this Marsh information—and still a Marsh employee—███████████████████████████ ██████████████████████████████████ Mufson Decl. Ex. 11. ██████████████████████ █████████████████████████████████████████████████████████████████ ███████████████. Mufson Decl. Ex. 11; 12. ████████████████████████████████ █████████████████████████████████████████████████████████████████

██████████████████████  Mufson Decl. Ex. 16; 17.  ████████████

██████████████████████  Mufson Decl. Ex. 18.

### 2. Layton's Disloyal Service and Contract Breaches Clearly Warrant in Favor of Tolling Her Solicitation Restrictions.

Layton's conduct on behalf of Howden before and after her resignation from Marsh plainly violated her contractual obligations and duty of loyalty. Layton's Non-Solicitation Agreement with Marsh prohibited her from soliciting Marsh employees "both during employment with [Marsh] and for a period of twelve (12) months thereafter" and Marsh clients for the same "period of twelve (12) months." ECF No. 16-20 §§ 2–3. At the same time, Layton's duty of loyalty to Marsh required her "to act solely for the benefit of [Marsh] in all matters connected with [her] employment." *Schanfield v. Sojitz Corp. of America*, 663 F. Supp. 2d 305, 349 (S.D.N.Y. 2009) (cleaned up). Layton's rank disloyalty in soliciting Marsh employees to join Howden and facilitating Howden's solicitation of Marsh clients warrants that the Court invoke its equitable authority to toll the one-year period of her contractual restrictions for the length of time of her misconduct—from May 20 to July 25, or 67 days. *See Karasaki*, 2008 WL 4778239, at *21; *Edelman*, 42 A.D.3d at 322; *J.H. Goldberg Co. v. Stern*, 53 A.D.2d 246, 252 (4th Dep't 1976) (extending the duration of a restrictive covenant for the period of violation in "the interests of justice" and because a wrongdoer "should not profit from his misdeed"). Tolling the restrictions will ensure that Layton is not rewarded for her misconduct with a shorter restrictive period and that Marsh receives the full benefits of its bargain and protections the solicitation restrictions were supposed to have afforded.

\* \* \*

For these reasons, the Court should at most modify its preliminary injunction order only to the extent that it states that the employee and client non-solicitation restrictions it imposes on

Layton expire one year *and* 67 days from the date of her resignation from Marsh—or as of September 26, 2026.

Dated: August 07, 2026

Respectfully submitted,

*/s/ Harris M. Mufson*

Harris M. Mufson
Lee R. Crain
Sharon I. Grysman
Amanda LeSavage
Julia T. Ross
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel.: 212.351.3805
hmufson@gibsondunn.com
lcrain@gibsondunn.com
sgrysman@gibsondunn.com
alesavage@gibsondunn.com
jross@gibsondunn.com

Jason C. Schwartz (*pro hac vice*)
Ryan C. Stewart (*pro hac vice*)
Amanda C. Machin (*pro hac vice*)
Cate McCaffrey
Nicole Santora
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036-4504
jschwartz@gibsondunn.com
rstewart@gibsondunn.com
amachin@gibsondunn.com
cmccaffrey@gibsondunn.com
nsantora@gibsondunn.com

Karl G. Nelson (*pro hac vice*)
Rachel W. Robertson (*pro hac vice*)
Brian Richman
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
knelson@gibsondunn.com
rrobertson@gibsondunn.com

7

brichman@gibsondunn.com

*Attorneys for Plaintiff Marsh USA LLC*

## **WORD COUNT CERTIFICATION**

I, Harris M. Mufson, an attorney duly admitted to practice law before this Court, hereby certify pursuant to this Court's Local Civil Rule 7.1 and Individual Rule 3.C. that this memorandum complies with the word limit set forth in this Court's Local Civil Rule 7.1 and Individual Rule 3.C. because it contains 1,996 words, excluding the parts of the memorandum exempted from the word limit by Local Civil Rule 7.1. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

Dated: New York, New York
      August 07, 2026

/s/ *Harris M. Mufson*
Harris M. Mufson
