UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARSH USA LLC,<br><br>                    Plaintiff,<br>        v.<br><br>MICHAEL PARRISH ET AL.,<br><br>                    Defendants. | Civ. No. 1:25-cv-06208 |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF LAYTON'S MOTION TO MODIFY THE PRELIMINARY INJUNCTION ORDER**

Defendant Julie Layton respectfully submits this Reply Memorandum in further support of her request that this Court exercise its inherent authority to modify the Preliminary Injunction Order, Dkt. 129 (the "Order") to state explicitly what already is implicit – *i.e.*, that as of the twelve (12)-month anniversary of Ms. Layton's separation from Plaintiff Marsh USA LLC ("Marsh"), (i) her non-solicitation restrictions, as set forth in paragraphs 1 and 2 of the Order, have expired, coterminous with the terms of the underlying Non-Solicitation Agreement, Dkt. 20-21 (the "NSA"), and (ii) only paragraph 3 of the Order, regarding Marsh's confidential information, remains in effect.[1]

Marsh's Opposition[2] largely concedes these points. Having previously assured this Court that its requested preliminary injunction sought only to require Ms. Layton to "adhere to [her] contractual obligations *for one year*" (Dkt. 158, 19:20-23 (emphasis added)), Marsh now observes

---

[1] Capitalized terms that are used but not otherwise defined herein shall have the meanings set forth in Defendant Julie Layton's Memorandum in Support of Her Motion to Modify the Preliminary Injunction Order (Dkt. 252).

[2] Plaintiff's Memorandum of Law in Opposition to Julie Layton's Motion to Modify the Preliminary Injunction Order (or "Opp. Mem.").

only that the text of the Order "contains no expiration" (Memo Opp. p. 1).  Marsh then quickly pivots to an argument that an additional 67 days should be added to Ms. Layton's twelve (12) month non-solicitation period such that it would expire September 26, 2026 (*Id*. at 1).  Marsh seeks this relief both for Ms. Layton's "employee and client non-solicitation restrictions" (*Id*. at 6).

Marsh's position is untenable.  It finds no support in Ms. Layton's NSA, this Court's Memorandum Decision in connection with the Order, or the governing case law.  Even the few cases Marsh offers in its Opposition are readily distinguishable, both factually and procedurally.  Ms. Layton's motion thus should be granted in full.

## I.    <u>TOLLING NOT SUPPORTED BY THE GOVERNING CONTRACT</u>

As an initial matter, the NSA – as drafted by Marsh and executed by the parties – omits any reference to the concept of tolling.  To the contrary, the NSA establishes a fixed post-employment non-solicitation period lasting for "a period of twelve (12) months following [Ms. Layton's] separation" (NSA §§ 2(b), 3) *i.e.*, until July 21, 2026.  In the event of a breach, the contract is explicit regarding the remedies Marsh can seek, including its ability for Marsh to seek an injunction (*Id.* § 6(a)), liquidated damages (*Id*. § 7), and its attorneys' fees and costs (*Id*. § 6(b)).  But any right to seek "equitable tolling" is conspicuously absent.  Moreover, the NSA provides that its terms cannot be modified to Ms. Layton's detriment absent "a written or electronic instrument signed by both parties hereto."  NSA § 8.

Under basic tenets of contractual interpretation, this Court should decline Marsh's invitation to re-write the parties' agreement to add a tolling provision that the parties omitted.  *Chimart Assoc. v. Paul,* 66 N.Y.2d 570, 574 (1986) ("freedom to contract would not long survive courts' ready remaking of contracts that parties have agreed upon"); *George Backer Mgmt. Corp. v. Acme Quilting Co.,* 46 N.Y.2d 211, 219 (1978) (same).

## II.     TOLLING NOT SUPPORTED BY CASE AUTHORITY

This contractual principle is particularly important in the context of a preliminary injunction, where the defendant has not had an opportunity to defend herself at a trial on the merits. *See Sutherland Glob. Servs., Inc. v. Crowley*, 867 N.Y.S.2d 874, 877–78 (N.Y. Sup. Ct. 2008). This is true because "judicial reformation of a contract, even in the exercise of the court's equitable powers is an extraordinary act," that should be considered – if at all – on a "fuller record." *Id.* at 876, 878. Courts thus are generally careful to ensure that any preliminary injunctive relief they issue is directly supported by the agreements supporting such relief. *See, e.g., Wolf A. Popper, Inc. v. Kaiden,* 69 A.D.2d 800, 801 ( 1st Dep't 1979) (reducing scope of preliminary injunction that was "substantially broader than the restrictive covenant that the defendant had signed," as "the preliminary injunction should be congruent with the restrictive covenant."); *Spinal Dimensions Inc. v. Chepenuk*, 16 Misc.3d 1121(A), 1121(A) n.6 (N.Y. Sup. Ct. 2007) ("[T]he scope of any issued injunction generally should not exceed the underlying covenant upon which such relief is based."); *accord TomGal LLC v. Castrano,* No. 22-cv-9516 (JGK), 2022 WL 17822717, at \*6 (S.D.N.Y. Dec. 19, 2022) (declining to issue preliminary injunction following expiration of contractual non-compete period, as an "injunction would at this point serve no purpose other than to punish the defendants for their alleged misbehavior.").

The Second Department's decision in *Ingenuit, Ltd. v. Harriff*, 33 A.D.3d 589 (2d Dep't 2006), is instructive. There, the lower court granted a preliminary injunction enforcing the one (1)-year client non-solicitation provision in the applicable employment agreements, but did not include an explicit end date for the covenants. On appeal, the Second Department modified the order to explicitly provide for the expiration of the injunction at the end of the one (1)-year period provided in the underlying contracts:

3

> The plaintiffs allege that the defendant breached two employment contracts that each contained a promise that he would not solicit their clients for a period of one year following the termination of his employment relationship with them. Although the plaintiffs were entitled to a preliminary injunction, the Supreme Court should have provided that the provision of the preliminary injunction that enjoined the defendant from soliciting the plaintiffs' clients expired on July 15, 2006, which is one year after the defendant left the plaintiffs' employment.

*Id.* at 589–90.

Moreover, as the Western District of New York recently noted, the New York Court of Appeals has not yet offered firm guidance regarding whether courts applying New York law even have the authority to "extend the terms of a contractually bargained for restrictive covenant based on the breach of that covenant." *Research Am., Inc. v. Simpson*, No. 23-cv-320 (LJV) (HKS), 2024 WL 4633423, at *5 n.7 (W.D.N.Y. Oct. 31, 2024). In *Simpson*, the court declined to extend a preliminary injunction beyond the contractually agreed two (2)-year post-transaction restricted period, finding such a remedy to be inappropriate:

> [E]ven though, when it first brought suit, RAI faced the imminent loss of client relationships and customer good will that the non-compete clause was designed to protect, the two-year period covered by the restrictive covenants has now passed. So RAI has gotten the benefit of its bargain, and any injury from any alleged breach—including injury that might continue as a result of the breach—can be addressed by damages.

*Id.* at *6.

Here, with Ms. Layton's twelve (12)-month non-solicitation period having expired, any purported "breaches" Marsh alleges can and should be addressed at the damages phase of the proceedings, after a full trial on the merits.

### III.    MARSH'S CASE AUTHORITY IS INAPPOSITE

The sparse authority Marsh musters in support of equitable tolling, meanwhile, is readily distinguishable and unavailing.

4

As an initial matter, the cases Marsh cites all involve alleged breaches that occurred after the termination of employment (and/or after the sale of a business), during a fixed, contractually-agreed restricted period, thus effectively depriving the plaintiff of a portion of the agreed period. *See Marsh USA Inc. v. Karasaki*, No. 08-cv-4195 (JGK), 2008 WL 4778239 (S.D.N.Y. Oct. 31, 2008) (finding the defendant to have breached his covenants in the months following his resignation, thus eating into this agreed fixed period, and enforcing the twelve (12) month period covenant from the date of the court's order); *N.Y. Real Estate Inst., Inc. v. Edelman*, 42 A.D.3d 321, 321–22 (1st Dep't 2007) (extending the two (2)-year non-competition period following the sale of defendant's business based the defendant's breaches throughout the "entire" two (2)-year period and his acts of deception to cover his tracks).  Here, the allegations against Ms. Layton focus on her alleged conduct during her employment with Marsh, and not on alleged breaches during the agreed twelve (12)-month post-employment non-solicitation period.  Because Marsh has now received the full benefit of that twelve (12)-month period, there is no legal or logical basis for tolling it.[3]

The cases Marsh cites also are otherwise distinguishable:

The covenant in *Edelman* arose in the context of the sale of a business, through which the plaintiff had purchased the defendant's real estate school and the "accompanying goodwill."  42 A.D. 3d at 321.  As a matter of law, covenants in connection with the sale of a business are treated differently – and far more deferentially – than employment-related covenants.  *N.W. Ayer & Son, Inc. v. Deare*, No. 98-cv-7867 (JSM), 1998 WL 811873, at *2 (S.D.N.Y. Nov. 18, 1998).  Moreover, the court's decision to extend the non-competition covenant in *Edelman* was based on

---

[3] The only purported breaches Marsh's alleges following Ms. Latyon's July 21, 2025 resignation occurred over the ensuing four (4) days, ending on July 25, 2025.  (Opp. Mem. p. 4).  Even assuming Marsh could prove such breaches, and that the Court found such activity sufficient to warrant "tolling," the such tolled period would have expired July 25, 2026 and thus would no longer be in effect in any event.

the defendant's acts of deception throughout the agreed post-transaction non-competition period, including by concealing his ownership of a competing business. Here, by contrast, Ms. Layton made no secret of her employment with Howden.

The Fourth Department's decision in *J.H. Goldberg Co. v. Stern*, 53 A.D.2d 246 (4th Dep't 1976), meanwhile, is procedurally distinguishable. *Stern* extended the parties' twelve (12)-month non-compete provision only after a trial on the merits, in which the defendant had the opportunity to fully and fairly defend himself against the plaintiff's allegations. Because the trial showed that the defendant had repeatedly breached this restricted period over a two (2)-week period, the court extended the restriction for an additional two (2) weeks. In Ms. Layton's case, of course, no trial has occurred, and Ms. Layton has yet to have the opportunity to fully defend herself against Marsh's allegations.

*Sutherland Glob. Servs., Inc. v. Crowley*, 867 N.Y.S.2d 874 (N.Y. Sup. Ct. 2008) makes precisely this point. There, the court declined to grant tolling of a non-compete period at the pre-trial stage, emphasizing that such decisions should await a fuller record developed through discovery. After considering the same precedent Marsh cites in its Opposition, the court noted that absent undisputed evidence of deception or active solicitation of customers, it would be premature to extend a restrictive covenant's term, and that doing so would amount to judicial reformation of the parties' contract in contravention of "ample Court of Appeals precedent which directs the lower courts not to rewrite the parties' contract at variance with its terms, particularly for the purpose of affording one party broader relief than it had bargained for," such as extending a term of a restrictive covenant. *Id.* at 875; *see also JA Apparel Corp. v Abboud*, 591 F. Supp. 2d 306, 344 (S.D.N.Y. 2008) (declining to impose a period of restriction beyond the contract).

## IV.    NO EVIDENCE SUPPORTS TOLLING OF CLIENT NON-SOLICIT

6

Finally, even if the Court were to entertain the notion of judicially extending Ms. Layton's employee non-solicitation provision beyond the one (1) year period in her NSA (which it should not do), there is no evidence whatsoever supporting a tolling of her non-solicitation period with respect to *clients*. Neither the Order nor the Memorandum Decision make any mention of any alleged improper solicitation by Ms. Layton of any Marsh clients. Marsh's Opposition similarly offers no details of its contentions that Ms. Layton solicited Marsh clients or provides the name of a single client purportedly solicited by Ms. Layton.

Instead, Marsh attempts to recycle its stale allegations from last summer regarding Ms. Layton's use of the Marsh SharePoint system, to which she lost access more than a year ago. Ms. Layton debunked the allegations against her in her August 19, 2025 declaration (ECF No. 81) submitted in opposition to Marsh's Application for Injunctive Relief and Expedited Discovery ("August 19 Layton Decl." ¶¶ 20–29) and, now, one year later, Marsh has still failed to support its allegation that she took, converted, downloaded, stole, or misused any client information. No forensic support has been presented on this or any other motion. Nothing offered by Marsh contradicts the unequivocal denial by Ms. Layton that she solicited any Marsh clients (August 19 Layton Decl. ¶¶ 28, 36). Marsh cannot, on the record it has created on this or any other motion, contend that Ms. Layton has violated any duty, either in contract or in common law, pertaining to the solicitation of Marsh clients.

As to the solicitation of Marsh employees, Ms. Layton has largely disputed this in her prior declaration (August 19 Layton Decl. ¶¶ 13-14). This is a matter that will be litigated at trial in this action, and it would not be appropriate to determine here and now whether Ms. Layton violated or did not violate any contract or duty. It is indisputably premature for such a determination.[4]

---

[4] *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981) ("[T]he findings of fact and conclusions of law made" at the preliminary injunction stage "are not binding at trial on the merits."); *accord*

V.    **CONCLUSION**

For the foregoing reasons and the reasons set forth in her moving brief, Ms. Layton respectfully requests that the Court modify its Order to expressly provide that paragraphs 1 and 2 of the Order expired on the twelve (12)-month anniversary of Ms. Layton's July 21, 2025 resignation from Marsh.

Dated:    New York, New York
          August 13, 2026

**DORSEY & WHITNEY LLP**

Jeremy E. Deutsch
Krista E. Bolles
1301 Avenue of the Americas,
13th Floor
New York, NY 10019
(212) 415-9238
deutsch.jeremy@dorsey.com
bolles.krista@dorsey.com

-and-

Ryan E. Mick (*pro hac vice*)
Kathryn A. Johnson (*pro hac vice*)
50 South 6th Street, Suite #1500
Minneapolis, MN 55402
(612) 492-6613
mick.ryan@dorsey.com
johnson.kate@dorsey.com

*Attorneys for Defendant Julie Layton*

---

(citation omitted)". *Marsh & McLennan Co. v Howden US Servs., LLC*, No. 1:25-cv-09130 (JLR), 2026 WL 508603, at *17 (SDNY Feb. 24, 2026); *RiseandShine Corp. v Pepsico Inc.*, No. 21-cv-6324 (LGS), 2023 WL 4936000, at *12-13 (S.D.N.Y. Aug. 2, 2023).

8

9

## CERTIFICATION

I hereby certify that this Memorandum of Law was produced on a computer using Microsoft Word 365 and contains 2,282 words, as determined by the computer software's word-count function, excluding the caption, any indices, table of contents, table of authorities, signature blocks, or any required certificates, pursuant to Local Civil Rule 7.1(c).

Dated: August 13, 2026
      New York, New York

By: */s/ Jeremy E. Deutsch*
      Jeremy E. Deutsch